| | |
|---|---|
| 1 | BRUCE A. WAGMAN (CSB No. 159987) |
| | BWagman@schiffhardin.com |
| 2 | SCHIFF HARDIN LLP |
| | One Market, Spear Street Tower |
| 3 | Thirty-Second Floor |
| | San Francisco, CA 94105 |
| 4 | Telephone: (415) 901-8700 |
| | Facsimile: (415) 901-8701 |
| 5 | |
| | J. SCOTT BALLENGER *(pro hac vice pending)* |
| 6 | Scott.ballenger@lw.com |
| | LATHAM & WATKINS LLP |
| 7 | 555 Eleventh Street, NW, Ste. 1000 |
| | Washington, D.C. 20004 |
| 8 | Telephone: (202) 637-2145 |
| | Facsimile: (202) 637-2201 |
| 9 | |
| | PETER A. BRANDT (CSB No. 241287) |
| 10 | pbrandt@humanesociety.org |
| | REBECCA CARY (CSB No. 268519) |
| 11 | rcary@humanesociety.org |
| | THE HUMANE SOCIETY OF THE |
| 12 | UNITED STATES |
| | 2100 L Street, NW |
| 13 | Washington, D.C. 20037 |
| | Telephone: (202) 452-1100 |
| 14 | Facsimile: (202) 676-2357 |

*Counsel for Proposed Defendant-Intervenor
The Humane Society of the United States*

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

THE STATE OF MISSOURI, ex rel., Chris Koster, Attorney General; THE STATE OF NEBRASKA, ex rel. Jon Bruning, Attorney General; THE STATE OF OKLAHOMA, ex rel. E. Scott Pruitt, Attorney General; THE STATE OF ALABAMA, ex rel. Luther Strange, Attorney General; THE COMMONWEALTH OF KENTUCKY, ex rel. Jack Conway, Attorney General; and TERRY E. BRANSTAD, Governor of the State of Iowa,

        Plaintiffs,

  v.

Case No. 2:14-cv-00341-KJM-KJN

**PROPOSED DEFENDANT-INTERVENOR'S NOTICE OF MOTION AND MOTION TO INTERVENE AND MEMORANDUM OF LAW IN SUPPORT**

Date: April 25, 2014
Time: 10:00 a.m.
Judge: Kimberly J. Mueller

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 2:14-CV-00341-KJM-KJN

PROPOSED DEFENDANT-INTERVENOR'S NOTICE OF MOTION
AND MOTION TO INTERVENE AND MEMORANDUM OF LAW IN SUPPORT

| | |
|---|---|
| 1<br>2<br>3<br>4 | KAMALA D. HARRIS, in her official capacity as Attorney General of California; KAREN ROSS, in her official capacity as Secretary of the California Department of Food and Agriculture,<br><br>            Defendants. |

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 2:14-CV-00341-KJM-KJN
PROPOSED DEFENDANT-INTERVENOR'S NOTICE OF MOTION
AND MOTION TO INTERVENE AND MEMORANDUM OF LAW IN SUPPORT

# TABLE OF CONTENTS

|     | Page |
| --- | ---: |
| NOTICE OF MOTION AND MOTION | 1 |
| MEMORANDUM OF POINTS AND AUTHORITIES | 2 |
| I. INTRODUCTION | 2 |
| II. BACKGROUND | 3 |
| III. ARGUMENT | 5 |
|     A. Proposed Defendant-Intervenor Is Entitled to Intervene As of Right | 5 |
|         1. The Motion to Intervene Is Timely | 6 |
|         2. HSUS Has Significant Protectable Interests in The Subject Matter of The Litigation | 7 |
|         3. The Disposition of this Action May Impair HSUS' Interests | 8 |
|         4. California May Not Adequately Represent HSUS' Interests | 9 |
|     B. In the Alternative, This Court Should Permit HSUS to Intervene Under Rule 24(b) | 12 |
| IV. CONCLUSION | 14 |

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- i -

Case No. 2:14-cv-00341-KJM-KJN

PROPOSED DEFENDANT-INTERVENOR'S NOTICE OF MOTION
AND MOTION TO INTERVENE AND MEMORANDUM OF LAW IN SUPPORT

# TABLE OF AUTHORITIES

**Page**

## CASES

*Asian Am. Rights Comm. v. Brown,*
  No. 12-517723 (Cal. Super. Ct. Apr. 2, 2012) ........................................................................ 3

*Association of California Egg Farms v. State,*
  No. 12-CECG-03695-DSB (Cal. Super. Ct. Mar. 13, 2013) .................................................... 3

*California Dump Truck Owners Ass'n v. Nichols,*
  275 F.R.D. 303 (E.D. Cal. 2011) .............................................................................. 7, 8, 13, 14

*Chinatown Neighborhood Ass'n v. Brown,*
  No. CV-12-3759-PJH, 2012 WL 4059896 (N.D. Cal. Sept. 14, 2012) ........................... 3, 6, 14

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
  647 F.3d 893 (9th Cir. 2011).................................................................................... 6, 9, 11, 12

*Cramer v. Brown,*
  2:12-CV-3130-JFW-JEM (C.D. Cal. June 4, 2012) ............................................................... 3

*Freedom from Religion Found., Inc. v. Geithner,*
  644 F.3d 836 (9th Cir. 2011).............................................................................................. 12, 13

*Idaho Farm Bureau Fed'n v. Babbitt,*
  58 F.3d 1392 (9th Cir. 1995).................................................................................... 6, 7, 8, 10

*JS West Milling Co., Inc. v. State,*
  No. 10-CECG-04225 (Cal. Super. Ct. Oct. 14, 2011) ............................................................ 3

*League of United Latin Am. Citizens v. Wilson,*
  131 F.3d 1297 (9th Cir.1997)................................................................................................. 6

*Modesto Irrigation Dist. v. Gutierrez,*
  No. CV-F-06-00453-OWW-DLB, 2007 WL 164953 (E.D. Cal. Jan. 18, 2007).................. 8, 10

*Nat'l Ass'n of Home Builders v. San Joaquin Valley Unified Air Pollution Dist.,*
  No. 1:07cv0820 LJO DLB, 2007 WL 2757995 (E.D. Cal. Sept 21, 2007) ............................ 10

*Newdow v. Cong. of the U.S.,*
  No. CV-S05-2339-FCD-PAN, 2006 WL 47307 (E.D. Cal. Jan. 6, 2006).......................... 8, 10

*Picayune Rancheria of Chukchansi v. Rabobank,*
  No. 13-cv-609-LJO-MJS, 2013 WL 2603954 (E.D. Cal. June 11, 2013) ............................. 11

*Pickup v. Brown,*
  No. 2:12-CV-02497-KJM-EFB, 2012 WL 6024387 (E.D. Cal. Dec. 4, 2012) .......... 7, 9, 13, 14

*Prete v. Bradbury,*
  438 F.3d 949 (9th Cir. 2006).......................................................................................... 6, 7, 8

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- i -

Case No. 2:14-cv-00341-KJM-KJN

PROPOSED DEFENDANT-INTERVENOR'S NOTICE OF MOTION
AND MOTION TO INTERVENE AND MEMORANDUM OF LAW IN SUPPORT

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Sagebrush Rebellion, Inc. v. Watt,*
   713 F.2d 525 (9th Cir. 1983) .................................................................................... 7, 10

*San Jose Mercury News, Inc. v. U.S. Dist. Court,*
   187 F.3d 1096 (9th Cir. 1999) ......................................................................................... 12

*Spangler v. Pasadena City Bd. of Educ.,*
   552 F.2d 1326 (9th Cir. 1977) ......................................................................................... 12

*Sw. Ctr. for Biological Diversity v. Berg,*
   268 F.3d 810 (9th Cir. 2001) ............................................................................................. 9

*Trbovich v. United Mine Workers,*
   404 U.S. 528 (1972) ........................................................................................................... 9

*Tucson Women's Ctr. v. Ariz. Med. Bd.,*
   No. CV-09-1909-PHX-DGC, 2009 WL 4438933 (D. Ariz. Nov. 24, 2009) ................... 7, 8, 10

*U.S. E.E.O.C. v. Cent. Cal. Found. for Health,*
   No. 1:10-CV-1492-LJO-JLT, 2011 WL 149831 (E.D. Cal. Jan. 18, 2011) ............................ 6

*Wilderness Soc'y v. U.S. Forest Serv.,*
   630 F.3d 1173 (9th Cir. 2011) ......................................................................................... 10

**STATUTORY AUTHORITIES**

Cal. Health & Safety Code §§ 25990-91 ............................................................................. 4, 5
Cal. Health & Safety Code § 25996 ......................................................................................... 5

**RULES AND REGULATIONS**

Fed. R. Civ. P. 24 .............................................................................................................. *passim*

**ADDITIONAL AUTHORITIES**

*An HSUS Report: Food Safety and Cage Egg Production*,
   http://www.humanesociety.org/assets/pdfs/farm/report_food_safety_eggs.pdf. (May, 2011) ........................................................................................................................... 13

*European Commission, Scientific Veterinary Committee Animal Welfare Section, The*
   welfare *of laying hens, p.*, available at
   http://ec.europa.eu/food/fs/sc/oldcomm4/out33_en.pdf. (1996) ........................................ 4

HSUS Website, About Us: Overview: http://www.humanesociety.org/about/overview/ ........... 3

Sara Shields and Ian J.H. Duncan, *An HSUS Report: A Comparison of the Welfare of*
   *Hens in Battery Cages and Alternative Systems*, p. 1, *available at*
   http://www.humanesociety.org/assets/pdfs/farm/hsus-a-comparison-of-the-welfare-of-
   hens-in-battery-cages-and-alternative-systems.pdf ............................................................ 3, 13

**TABLE OF AUTHORITIES**
(continued)

**Page**

HSUS, Scientists and Experts on Battery Cages and Laying Hen Welfare:
  http://www.soc.iastate.edu/sapp/soc415p2cages.pdf ...................................................................... 4

Paul Solotaroff, "Animal Cruelty is the Price We Pay for Cheap Meat," Rolling Stone,
  available at http://www.rollingstone.com/feature/belly-beast-meat-factory-farms-
  animal-activists (Dec. 10, 2013) ................................................................................................ 4

Schiff Hardin LLP
Attorneys At Law
San Francisco

- iii -   Case No. 2:14-cv-00341-KJM-KJN
PROPOSED DEFENDANT-INTERVENOR'S NOTICE OF MOTION
AND MOTION TO INTERVENE AND MEMORANDUM OF LAW IN SUPPORT

# NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on April 25, 2014, at 10 a.m., or as soon thereafter as the matter may be heard before the Honorable Kimberly J. Mueller in Courtroom 3 of the United States District Court for the Eastern District of California, located at 501 I Street, Sacramento, California, Proposed Defendant-Intervenor the Humane Society of the United States ("HSUS") will move this Court to allow its intervention in this action under Rule 24 of the Federal Rules of Civil Procedure. HSUS is entitled to intervene as of right pursuant to Rule 24(a) because it was one of the primary supporters of AB 1437 and has significant organizational interests at stake in this litigation, which may not be adequately represented by the current Defendants. In the alternative, this Court should grant HSUS permissive intervention pursuant to Rule 24(b) because it shares common claims with the named Defendants and its intervention will not delay or prejudice this litigation.[1]

---

[1] Counsel for HSUS has contacted all parties with respect to their position on this motion. Defendants do not oppose this motion, and Plaintiffs do oppose this motion.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 24, The Humane Society of the United States ("HSUS") moves to intervene in support of Defendants Attorney General Kamala Harris and Secretary of the California Department of Food and Agriculture Karen Ross (collectively "California") in this lawsuit, which seeks to invalidate the anti-cruelty law AB 1437. AB 1437, which goes into effect on January 1, 2015, will prohibit the sale of eggs from hens confined to "battery cages" so small that they cannot turn around, stand up, lie down, or extend their limbs. This Court should find that HSUS is entitled to intervene as of right under Rule 24(a), or permit HSUS to intervene under Rule 24(b).

HSUS was one of the primary supporters of AB 1437, and the architect of Proposition 2 ("Prop 2"), the anti-cruelty ballot initiative that spurred AB 1437's passage. Declaration of Jennifer Fearing ("Fearing Decl.") at ¶¶ 5-10. HSUS staff testified before the Legislature in support of AB 1437, and HSUS members lobbied their legislators and mobilized grassroots support for the law. *Id*. at ¶ 8. An adverse decision for California in this lawsuit would undo those efforts and impair HSUS' broader interests in preventing cruelty to egg-laying hens. Invalidation of AB 1437 would impede HSUS' efforts to support state laws banning the sale of other cruelly produced goods, including shark fins, foie gras, and horse meat—all of which HSUS has repeatedly defended in public campaigns and court. Declaration of Peter A. Brandt ("Brandt Decl.") at ¶ 5. And a loss here for California would require HSUS to expend considerable financial and human resources promoting substitute legislation or administrative action at the federal level to address these concerns. HSUS thus has direct and substantial interests in the outcome of this litigation.

HSUS' interests in the subject matter of this litigation may not be adequately represented by California, which represents all stakeholders, including the agricultural industry, in a state that is one of the largest agricultural exporters in the nation and a large purchaser of eggs. California must balance competing political and economic constraints in defending the law. For example, California may not want to argue that selling eggs from battery cages is inherently unsafe or

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

cruel, since the State is allowing the sale of those eggs until the end of this year. By contrast, HSUS will bring two unique interests to this litigation: in bolstering the right of states to restrict the sale of cruelly produced goods and in preventing cruelty to egg-laying hens. While HSUS' entry into the case will not in any way enlarge the issues before the Court, HSUS will likely make arguments that California will not make. As an advocate for all animals for sixty years, HSUS will also bring a wealth of expertise in animal welfare and hen welfare issues to this litigation.[2]

For these reasons, HSUS has been an active participant in three constitutional challenges to Prop 2, the ballot initiative that codified the standards used in AB 1437. *See Cramer v. Brown*, 2:12-CV-3130-JFW-JEM (C.D. Cal. June 4, 2012) (HSUS granted intervention); *Association of California Egg Farms v. State*, No. 12-CECG-03695-DSB (Cal. Super. Ct. Mar. 13, 2013) (same); *JS West Milling Co., Inc. v. State*, No. 10-CECG-04225 (Cal. Super. Ct. Oct. 14, 2011) (HSUS sued, along with California, as defendant). Additionally, HSUS and two other groups were entitled to intervene in two separate constitutional challenges to a California law that HSUS helped pass to ban the sale of cruelly produced shark fins. *Chinatown Neighborhood Ass'n v. Brown*, No. CV-12-3759-PJH, 2012 WL 4059896, at *2 (N.D. Cal. Sept. 14, 2012); *Asian Am. Rights Comm. v. Brown*, No. 12-517723 (Cal. Super. Ct. Apr. 2, 2012). This Court should follow this pattern and hold that HSUS can intervene in this case.

## II. **BACKGROUND**

HSUS is a nonprofit animal protection organization headquartered in Washington, D.C., with millions of supporters, including over 1,450,000 in California. Fearing Decl. ¶ 2. For many years, HSUS has advocated against inhumane practices that harm farm animals, including those raised for meat, milk, and eggs. *Id.* at ¶ 4. This litigation concerns one such practice.

About ninety-five percent of American egg-laying hens are confined to battery cages, wire contraptions so small that hens cannot flap their wings, nest, roost, or often even turn around.[3]

---

[2] *See* HSUS Website, About Us: Overview: http://www.humanesociety.org/about/overview/ (last visited Mar. 3, 2014).

[3] Sara Shields and Ian J.H. Duncan, *An HSUS Report: A Comparison of the Welfare of Hens in Battery Cages and Alternative Systems*, p. 1, *available at* http://www.humanesociety.org/assets/pdfs/farm/hsus-a-comparison-of-the-welfare-of-hens-in-battery-cages-and-alternative-systems.pdf.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HSUS investigations have documented hens trampled, starved, and crushed to death by the extreme over-crowding found in battery cages.[4] The European Commission's Scientific Veterinary Commission has determined that "battery cage systems provide a barren environment for the birds" with "severe disadvantages for the welfare of hens."[5] "The worst torture to which a battery hen is exposed is the inability to retire somewhere for the laying act," said Nobel Prize winning scientist Dr. Konrad Lorenz.[6] "For the person who knows something about animals it is truly heart-rending to watch how a chicken tries again and again to crawl beneath her fellow cage mates to search there in vain for cover." *Id.*

In 2008, HSUS sponsored Prop 2, a California ballot initiative to ban the extreme confinement of farm animals in cages so small that they cannot lie down, stand up, turn around, or fully extend their limbs. Fearing Decl. at ¶¶ 5-6; Cal. Health & Safety Code §§ 25990-91 (codifying Prop 2). Prop 2 resulted from many years of work by HSUS to prevent routine cruelties to farm animals, including the use of battery cages for egg-laying hens. Fearing Decl. at ¶ 4. HSUS launched undercover investigations, and corporate outreach and consumer awareness campaigns, to publicize the cruelties of battery cages. *Id.* HSUS sponsored Prop 2 to eliminate battery cages in California. *Id.* at 5. HSUS and its supporters drafted the Prop 2 language; coordinated and gathered more than 700,000 signatures of registered voters throughout California; collected endorsements from hundreds of individuals, groups, and businesses; served as the primary media sources and spokespeople for Prop 2; and, with the Yes on Prop 2 campaign, contributed over $10 million in support of Prop 2's passage. *Id.* at ¶¶ 5-6.

HSUS then supported the law challenged by this action, AB 1437, which requires that all eggs sold in California come from hens who were raised in Prop 2-compliant conditions. *Id.* at

---

[4] *See*, *e.g.*, Paul Solotaroff, "Animal Cruelty is the Price We Pay for Cheap Meat," *Rolling Stone* (Dec. 10, 2013), *available at* http://www.rollingstone.com/feature/belly-beast-meat-factory-farms-animal-activists (reporting on HSUS undercover investigations at battery cage facilities).

[5] European Commission, Scientific Veterinary Committee Animal Welfare Section, *The welfare of laying hens*, p. 109 (1996), *available at* http://ec.europa.eu/food/fs/sc/oldcomm4/out33_en.pdf.

[6] HSUS, Scientists and Experts on Battery Cages and Laying Hen Welfare: http://www.soc.iastate.edu/sapp/soc415p2cages.pdf (last visited Mar. 25, 2014) (citing Konrad Lorenz, "Animals are sentient beings: Konrad Lorenz on instinct and modern factory farming," *Der Spiegel* (Nov. 17, 1980).)

¶ 8. For approximately two years prior and up until the bill's passage in 2010, HSUS staff and members actively campaigned for the bill's passage for the purpose of ensuring that all California grocers, food companies, and other egg sellers would only sell humanely produced whole eggs. *Id*. HSUS worked with Assemblyman Jared Huffman to advance the bill; lobbied legislators; testified at bill hearings; proposed amendments; urged newspaper editorial boards to support the bill; submitted official comments in support; utilized email lists to generate support; and served as media sources and spokespeople regarding AB 1437. *Id*. HSUS staff and members spent hundreds of hours in furtherance of AB 1437's passage, and made AB 1437 their top legislative priority to ensure its passage through the California legislature and to ensure Governor Schwarzenegger would sign it. *Id*. at ¶ 9. In 2010, as a result of the efforts by HSUS and other supporters, AB 1437 passed the California Assembly by 65 votes to 9 and the California Senate by 23 votes to 7. *Id*. at ¶ 10. AB 1437 provides that:

> Commencing January 1, 2015, a shelled egg shall not be sold or contracted for sale for human consumption in California if the seller knows or should have known that the egg is the product of an egg-laying hen that was confined on a farm or place that is not in compliance with animal care standards set forth in Chapter 13.8 (commencing with Section 25990) [codifying Prop 2].

Cal. Health & Safety Code § 25996. AB1437 thus extends the humane protections that HSUS secured through Prop 2 to all eggs sold in California. AB 1437 gave egg sellers almost five years from its 2010 enactment to ensure that only AB 1437-compliant eggs will be sold in California: it will only go into effect on January 1, 2015. *Id*. But on February 3, 2014, Plaintiffs, the State of Missouri and its Attorney General, Chris Koster, brought this action seeking to invalidate the law. *See* No. 2:14-cv-00341-KJM-KJN, Dkt. 2. Plaintiffs have since amended their complaint to add five more Plaintiffs. *See id*., Dkt. 13 (First Amended Complaint).

### III. ARGUMENT

#### A. Proposed Defendant-Intervenor Is Entitled to Intervene As of Right.

HSUS is entitled to intervention as of right because its significant interests in AB 1437 and in preventing cruelty to egg-laying hens may be impaired by this litigation and may not be

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 5 -    Case No. 2:14-cv-00341-KJM-KJN
PROPOSED DEFENDANT-INTERVENOR'S NOTICE OF MOTION
AND MOTION TO INTERVENE AND MEMORANDUM OF LAW IN SUPPORT

adequately represented by California. Ninth Circuit case law makes clear that a "public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995); *see also Chinatown Neighborhood Ass'n*, 2012 WL 4059896 (allowing HSUS and other groups to intervene as of right in a challenge to a state ban on the sale and possession of shark fins that HSUS supported).

> Ninth Circuit courts grant intervention as of right when four requirements are met: (1) [T]he intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,* 647 F.3d 893, 897 (9th Cir. 2011) (quoting *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)). These requirements are "broadly interpreted in favor of intervention," *id.*, and HSUS easily satisfies them.

### 1. The Motion to Intervene Is Timely.

This motion is timely because HSUS is filing it within weeks of Plaintiffs commencing this action and before California has filed a responsive pleading. Courts determine if a motion to intervene is timely based on "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir.1997) (internal citation omitted). Here, HSUS seeks to intervene at the earliest possible stage of the proceeding. Granting intervention will not prejudice any parties. HSUS' entrance will not delay any orders: it has submitted its proposed answer to the complaint and motion to dismiss with this motion to intervene. And there has been no delay in HSUS' filing of this motion: as soon as HSUS learned of this lawsuit it began contacting counsel. Brandt Decl. at ¶ 3. *See U.S. E.E.O.C. v. Cent. Cal. Found. for Health,* No. 1:10-CV-1492-LJO-JLT, 2011 WL 149831, at *3 (E.D. Cal. Jan. 18, 2011) (holding motion to intervene timely when filed almost four months after filing of complaint).

### 2. HSUS Has Significant Protectable Interests in The Subject Matter of The Litigation.

HSUS has two significant protectable interests in the subject of this action, which are both sufficient to support intervention: as one of the primary supporters of AB 1437, and as an organization dedicated to preventing cruelty to egg-laying hens.

HSUS' status as one of the primary supporters of AB 1437 is alone grounds for intervention in this Circuit. The Ninth Circuit has repeatedly held that "a public interest group that has supported a measure (such as an initiative) has a 'significant protectable interest' in defending the legality of the measure." *Prete*, 438 F.3d at 954; *accord Idaho Farm Bureau Fed'n*, 58 F.3d at 1397; *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) ("[T]here can be no serious dispute in this case concerning . . . the existence of a protectable interest on the part of" wildlife group seeking to defend an administrative order it advocated for).

As one of the primary supporters of AB 1437, HSUS thus has a significant protectable interest in the subject of this action. HSUS supported AB 1437 by working with Assemblyman Jared Huffman to advance the bill. Fearing Decl. ¶ 8. HSUS staff testified in support of AB 1437 at bill hearings. *Id.* HSUS lobbied legislators, proposed amendments, urged newspaper editorial boards to support the bill, submitted official comments in support, utilized email lists to generate support, and served as media sources and spokespeople regarding AB 1437. *Id.* HSUS staff then spent hundreds of hours to ensure the bill's passage through both houses of the California Legislature and its signature by Governor Schwarzenegger. *Id.* at ¶ 9. These facts are sufficient to show HSUS has a significant protectable interest in this case. *See, e.g.*, *Pickup v. Brown*, No. 2:12-CV-02497-KJM-EFB, 2012 WL 6024387, at *1 (E.D. Cal. Dec. 4, 2012) (proposed-intervenor's "sponsorship of [challenged law] SB 1172 is sufficient to show it has a protectable interest in this case"); *California Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 306-07 (E.D. Cal. 2011) (group that "advocated both the Regulation's adoption and strengthening" had significant interest in intervening to defend it); *Tucson Women's Ctr. v. Ariz. Med. Bd.*, No. CV-09-1909-PHX-DGC, 2009 WL 4438933, at *4 (D. Ariz. Nov. 24, 2009) (group that "supported the Act by providing testimony before the Arizona House Health Committee . . . has a sufficient

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 7 -  Case No. 2:14-cv-00341-KJM-KJN
PROPOSED DEFENDANT-INTERVENOR'S NOTICE OF MOTION
AND MOTION TO INTERVENE AND MEMORANDUM OF LAW IN SUPPORT

legal interest [in intervening to defend Act] under *Idaho Farm Bureau*").

HSUS also has a protectable organizational interest in preventing cruelty to egg-laying hens, and in supporting state sales bans on cruelly produced products. And HSUS members in California have an interest in eating eggs that are humanely produced and safe from pathogens associated with battery cage egg production. This Court has frequently found that an organization's mission provided a "significant protectable interest" in litigation. *See, e.g.*, *Modesto Irrigation Dist. v. Gutierrez*, No. CV-F-06-00453-OWW-DLB, 2007 WL 164953, at *1 (E.D. Cal. Jan. 18, 2007) (groups "dedicated to the conservation of wild salmonids" had a significant protectable interest in litigation challenging threatened species listing); *Newdow v. Cong. of the U.S.*, No. CV-S05-2339-FCD-PAN, 2006 WL 47307, at *3 (E.D. Cal. Jan. 6, 2006) (group advocating religious freedom had a significant protectable interest in litigation challenging "In God We Trust" motto). HSUS' mission is to prevent cruelty to animals, including cruelty to egg-laying hens. Fearing Decl. at ¶ 3. HSUS has invested substantial resources in educating the public about the cruelty of confining egg-laying hens to battery cages, and in advocating for states, corporations, and consumers to stop buying eggs from battery cage facilities. *Id.* at ¶ 4. HSUS also advocates for sales bans on cruelly produced shark fins, foie gras, horse meat, and dogs from puppy mills, and litigates to defend those laws. Brandt Decl. at ¶ 5.

### 3. The Disposition of this Action May Impair HSUS' Interests.

Plaintiffs seek a judgment invalidating AB 1437 and enjoining enforcement of the law and accompanying regulations. Such a judgment would impair both of HSUS' protectable interests, as one of the primary supporters of AB 1437, and as an organization dedicated to preventing cruelty to egg-laying hens.

First, as one of the primary supporters of AB 1437, an adverse judgment in this constitutional challenge to the measure would clearly impair or impede HSUS' interest in the law's continued viability. *See Prete*, 438 F.3d at 954; *Nichols*, 275 F.R.D. at 307. It would undo all of HSUS' extensive work to pass AB 1437, and it would leave HSUS with "no other avenue" to protect its interest in AB 1437. *Tucson Women's Ctr.*, 2009 WL 4438933, at *5.

Second, an adverse judgment in this action would impair HSUS' organizational interest in

- 8 -  Case No. 2:14-cv-00341-KJM-KJN
PROPOSED DEFENDANT-INTERVENOR'S NOTICE OF MOTION
AND MOTION TO INTERVENE AND MEMORANDUM OF LAW IN SUPPORT

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

preventing cruelty to egg-laying hens, and the interests of HSUS' 1.4 million California supporters in eating humanely produced, safe eggs. It would impair HSUS' interest in protecting egg-laying hens from cruel treatment, and in preventing the sale of cruelly produced products, because it would allow eggs from hens confined in battery cages to be sold in California, thus causing tens of millions of hens to suffer needlessly. It would also make it harder for HSUS to help farm animals in other states, by ending the momentum started by AB 1437 and hindering the campaign to persuade egg producers and food retailers to stop the use of battery cages; making it more difficult for HSUS to stop the sale of other cruelly produced goods, including shark fins, foie gras, horse meat, dog meat, and dogs from puppy mills; and requiring HSUS to expend additional resources to seek compensating legislation or administrative action at the federal level. Thus, an adverse judgment in this case would impair HSUS' interests in preventing the sale of cruelly produced products. *See Pickup*, 2012 WL 6024387, at *2 ("[Proposed Defendant-Intervenor Equality California's] interests would be impaired by a ruling that [the challenged law] is unconstitutional because it would undercut [Equality California's] mission of protecting LGBT youth from harmful therapies.").

### 4. California May Not Adequately Represent HSUS' Interests.

HSUS' interests diverge in important respects from those of California, and existing parties do not adequately represent those interests. Fed. R. Civ. P. 24(a)(2). The burden of showing inadequacy is "minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). The applicant "need only show that representation of its interests by existing parties '*may be*' inadequate." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001) (quoting *Trbovich,* 404 U.S. at 538 n.10) (emphasis added); *see also Mont. Wilderness Ass'n*, 647 F.3d at 900 ("We stress that intervention of right does not require an absolute certainty that . . . existing parties will not adequately represent its interests.").

> The Ninth Circuit considers three factors to determine if the present party may not adequately represent the proposed intervenor's interest:
>
> (1) [W]hether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such

arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Id.* at 898 (internal citations omitted). Under this test, the Ninth Circuit has repeatedly held that the government may not adequately represent the interests of environmental groups in defending government actions because their interests diverge. *See Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (noting the Ninth Circuit's "consistent approval of intervention of right on the side of the federal defendant in cases asserting violations of environmental statutes other than NEPA"); *see, e.g.*, *Sagebrush Rebellion, Inc.*, 713 F.2d at 528–29; *Idaho Farm Bureau*, 58 F.3d at 1398. And all three factors favor HSUS' intervention here.

First, California will not "undoubtedly" make all of HSUS' arguments. As this Court has recognized, even when state and municipal defendants and nonprofit advocates share the same ultimate objective, they "may take different positions on both the merits and any appropriate remedy." *Modesto Irrigation Dist.*, 2007 WL 164953, at *2. Government actors have "a much broader interest in balancing the need for regulations with economic considerations." *Nat'l Ass'n of Home Builders v. San Joaquin Valley Unified Air Pollution Dist.,* No. 1:07cv0820 LJO DLB, 2007 WL 2757995, at *5 (E.D. Cal. Sept 21, 2007). And these "competing interests" must be considered "in asserting arguments and defenses." *Newdow*, 2006 WL 47307, at *4. As such, government actors "cannot necessarily be counted on to make the same arguments as" private advocates unbridled by the same concerns. *Id.* Here too, California has much broader interests than HSUS, and must balance animal welfare concerns with economic, political, and resource constraints. For example, California represents large numbers of egg retailers and wholesalers, who may oppose implementation of AB 1437. Indeed, California government agencies are themselves large purchasers of eggs, and thus may perceive a financial incentive in restricting the implementation of AB 1437. *See, e.g.*, *Tucson Women's Ctr.*, 2009 WL 4438933, at *5 (granting intervention where "Defendants may not share the same ultimate objective as [the advocacy groups seeking intervention]. All seek to have the Act held constitutional, but Defendants may accept a limiting interpretation unacceptable to [the groups].").

Second, California may not be willing to make some of HSUS' arguments. For one,

California is unlikely to argue that selling eggs from hens confined in battery cages is inherently unsafe or cruel, since these eggs can still be sold in California until the end of this year, and the State would likely not welcome the political ramifications of admitting to allowing acknowledged animal cruelty, or the sale of unsafe eggs. But HSUS *will* make that argument, as that was the basis for its support of both Prop 2 and AB 1437. Additionally, HSUS seeks to defend *every* state's right to ban the sale of *all* cruelly produced goods, where California has a different focus. California is, for example, one of the nation's largest agricultural exporters, heavily reliant on open access to the agricultural markets of other states. It therefore may favor a narrower ruling that could not provide the basis for sales bans in other states, and may not be willing to make broader arguments that HSUS would find important. *See*, *e.g.*, *Mont. Wilderness Ass'n*, 647 F.3d at 899 (affirming the right to intervene where "[a]pplicants seek to secure the broadest possible restrictions on recreational uses in the Study Area to protect its [sic] interest in the wilderness character, while the Forest Service has made clear its position that . . . much narrower restrictions would suffice to comply with its statutory mandate").

Third, HSUS adds a necessary element to the proceedings that would otherwise be neglected. In *Picayune Rancheria of Chukchansi v. Rabobank*, this Court recently held that a tribe could intervene as of right even though the current defendant had the same ultimate objective and the tribe's leaders were already named defendants. No. 13-cv-609-LJO-MJS, 2013 WL 2603954 (E.D. Cal. June 11, 2013). This Court reasoned that the bank-defendant was (1) "unlikely to have the same interest in the sovereignty issues underlying the dispute," (2) "the same motivation or desire to commit time and funds necessary to seek final resolution of disputes underlying this case," or (3) "the depth of knowledge of the facts, history, and . . . law that ultimately may come to bear on the issues presented." *Id.* at *4.

HSUS offers all the necessary elements that this Court found sufficient in *Picayune Rancheria*. HSUS has a greater interest than California in the hen welfare issues underlying this dispute, and a greater motivation to commit the time and funds necessary to seek final resolution of the disputes underlying this case. HSUS also has a unique and deep knowledge of the facts, history, and science surrounding and supporting the legislation at issue in this litigation. As one of

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PROPOSED DEFENDANT-INTERVENOR'S NOTICE OF MOTION
AND MOTION TO INTERVENE AND MEMORANDUM OF LAW IN SUPPORT

1    the primary supporters of AB1437, HSUS can best explain to the Court the humane interests that

2    drove passage of AB1437.  As an established animal welfare organization, HSUS can present this

3    Court with the necessary expertise on the animal welfare and public health effects of the relevant

4    egg production practices.  And as a litigant in three separate lawsuits over Prop 2, the ballot

5    initiative that led to AB1437, HSUS can assist the Court by explaining the underlying facts and

6    legal issues in this case.  HSUS therefore more than meets the "minimal" burden of showing that

7    existing parties may not adequately represent its interests in this litigation.

8    Because HSUS meets all requirements under Rule 24(a)(2), this Court should grant its

9    motion to intervene as of right.

### B. In the Alternative, This Court Should Permit HSUS to Intervene Under Rule 24(b).

If this Court does not grant HSUS intervention as of right under Rule 24(a), it should grant HSUS permissive intervention under Rule 24(b). Under Rule 24(b), "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." I n the Ninth Circuit, "permissive intervention requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (internal quotation marks and citations omitted). Once these threshold requirements are met, the decision on permissive intervention "is directed to the sound discretion of the district court." *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1100 (9th Cir. 1999).  In exercising that discretion, the Court should consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).  The court may also consider whether the applicant's participation will "contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

HSUS easily meets the threshold requirements for permissive intervention.  First, "the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 12 -    Case No. 2:14-cv-00341-KJM-KJN

PROPOSED DEFENDANT-INTERVENOR'S NOTICE OF MOTION
AND MOTION TO INTERVENE AND MEMORANDUM OF LAW IN SUPPORT

question cases when the proposed intervenor is not raising new claims." *Freedom from Religion Found.,* 644 F.3d at 844. Plaintiffs assert federal question jurisdiction, and HSUS is not raising new claims. Second, this motion is timely. HSUS is moving to intervene almost immediately after the filing of Plaintiffs' amended complaint and before any responsive pleading or other proceeding has occurred in the action. Third, HSUS shares a common question of law or fact with California's defense: namely, whether AB 1437 is constitutional. *See Pickup*, 2012 WL 6024387, at *4 (holding that a proposed intervenor "shares a common question of law with the current action because it plans to defend the constitutionality of [a state law], the subject of the dispute between plaintiffs and the state defendants").

This Court should exercise its sound discretion to permit HSUS to intervene. HSUS' participation will not unduly delay this lawsuit because HSUS is moving to intervene before California has responded to the lawsuit and HSUS will not assert new claims. *See id.* (finding that allowing a nonprofit group to intervene to defend the constitutionality of a state law "will not delay the proceedings"). Nor will HSUS' participation prejudice Plaintiffs, given the timely nature of this motion and the focus solely on the claims raised by Plaintiffs. *See, e.g.*, *Nichols*, 275 F.R.D. at 309.

Moreover, HSUS' participation will help ensure a complete consideration of the issues raised in this case and the best opportunity to serve the ends of justice. A s detailed above, *see supra* at 7-14, HSUS brings a unique perspective to this litigation that will aid this Court's adjudication. HSUS will also bring substantial expertise in animal welfare to this litigation, as an advocate for the humane treatment of animals for sixty years. In particular, HSUS has published extensive research on hen housing and animal welfare that will be relevant to this litigation.[7] And as a defendant in three lawsuits over Prop 2, HSUS will bring knowledge of the legal and factual issues unique to this litigation. California district courts, including this Court, have repeatedly granted permissive intervention to nonprofit groups in similar circumstances. *See, e.g.*, *Pickup*, 2012 WL 6024387, at *4 (finding that the court would benefit from the intervenor's "helpful,

---

[7] *See e.g.* Shields and Duncan, *supra* note 2; An HSUS Report: Food Safety and Cage Egg Production (May, 2011), http://www.humanesociety.org/assets/pdfs/farm/report_food_safety_eggs.pdf.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

alternative viewpoint"); *Chinatown Neighborhood Ass'n*, 2012 WL 4059896, at *2 (finding HSUS' intervention was "clearly warranted" to protect a California law banning the sale of shark fins for which HSUS had advocated); *Nichols*, 275 F.R.D. at 309 ("[T]he NRDC has shown that it will bring a unique perspective and expertise to this action. . . .").

## IV. CONCLUSION

HSUS has a significant protectable interest in upholding the validity of AB 1437, a law that it championed, and will be directly affected by this Court's ruling. For the reasons set forth above, this Court should grant HSUS' motion to intervene, both as of right and as a matter of permissive intervention.

Dated: March 26, 2014

SCHIFF HARDIN LLP

By: */s/ Bruce A. Wagman*
    Bruce A. Wagman

J. SCOTT BALLENGER
Scott.ballenger@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Ste. 1000
Washington, D.C. 20004
Telephone: (202) 637-2145
Facsimile: (202) 637-2201

PETER A. BRANDT
pbrandt@humanesociety.org
REBECCA CARY
rcary@humanesociety.org
THE HUMANE SOCIETY OF THE UNITED STATES
2100 L Street, NW
Washington, D.C. 20037
Telephone: (202) 452-1100
Facsimile: (202) 676-2357

*Counsel for Proposed Defendant-Intervenor The Humane Society of the United States*

35026-0014
SF\320997346.1

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 14 -    Case No. 2:14-cv-00341-KJM-KJN
PROPOSED DEFENDANT-INTERVENOR'S NOTICE OF MOTION
AND MOTION TO INTERVENE AND MEMORANDUM OF LAW IN SUPPORT