latimes.com/business/la-fi-eggs8-2010apr08,0,2255620.story

# latimes.com

**AGRICULTURE**

# Egg-farm video is latest salvo in Humane Society's animal-rights campaign

## The footage showing chickens in cramped cages and being slammed into bins is part of an escalating war with the food sector.

By P.J. Huffstutter

8:48 PM PDT, April 7, 2010

The Humane Society of the United States has released undercover video footage shot at two of the nation's largest egg farms showing workers slamming chickens into metal bins and dead birds littering cages -- the latest salvo in an escalating war between the food sector and the country's leading animal-rights organizations.

At stake, both sides said, is regulating how livestock are treated and how Americans' food is produced.

Since California voters passed Proposition 2 in 2008, Humane Society officials have ramped up their campaigns to alter state laws regarding animal welfare. They're reaching out to young people, including a presentation at last month's National 4-H Conference in Washington, where they encouraged teenage future farmers to treat livestock with respect.



**Drivers From California Wanted!**
New changes allow residents of California to get 50% or more off car insurance. Enter your vehicle's information. Read More



**State of California Residents**
New changes allow California residents to get 50% or more off auto insurance. Enter your vehicle's information to see if you qualify! Read More

The organization has also been buying chunks of stock in publicly traded food companies, in part to be able to introduce shareholder resolutions and pressure company executives to alter their purchasing decisions.

The strategy has worked. Companies including Wendy's, Sonic Corp. and the parent company of the IHOP and Applebee's restaurant chains have all started shifting to using cage-free eggs, according to Humane Society officials. Wal-Mart Stores Inc., the nation's largest grocer, said in February that the eggs sold under its store label were now cage-free.

"Companies generally don't want graphic information about how their suppliers abuse animals for their products sent to every investor and the media," said Paul Shapiro, head of the group's Factory Farming campaign.

But the farmers are fighting back. In recent months, agribusiness lobbyists and farm groups have bombarded companies sympathetic to the Humane Society with letters asking them to halt donations to

**RJN - 315**
04/08/2010

the group.

"HSUS seeks to remove meat from our dinner tables, leather goods from our closets, animals from zoos and circuses and eventually -- pets from our families," Kansas Farm Bureau President Steve Baccus wrote in a letter to Bank of America Corp. posted on the bureau's website. The Humane Society, he wrote, is "a powerful, well-funded activist organization pursuing what most reasonable observers would consider an extreme anti-animal agenda."

In Missouri, livestock farmers are worried that a Humane Society-backed ballot initiative to curtail so-called puppy mills could lead to attacks on livestock interests. They have spurred a bid for a constitutional amendment that would ensure the public's right "to raise animals in a humane manner . . . without the state imposing an undue economic burden on their owners."

And in Ohio, a state animal welfare standards board was created in an effort by farm interest groups and lawmakers to block future ballot measures that might affect livestock operations. But that hasn't deterred the Humane Society. The group is collecting signatures to put a bill before voters this November that's similar to the one passed in California.

"They are huge. They are influential, and they are our biggest concern on the impact of our ability to domestically produce food," said Kay Johnson Smith, executive vice president of the Animal Agriculture Alliance, a trade group that represents livestock farmers and ranchers.

The egg-farm footage released Wednesday was shot surreptitiously over the last two months inside Iowa facilities owned by Rose Acre Farms and Rembrandt Enterprises. It was taken by a Humane Society volunteer, who had landed work at four Iowa hen operations.

Among other things, the video footage showed chickens crammed into cages so crowded that the animals couldn't move and their talons couldn't touch the floor; chickens held in battery cages above manure pits that allegedly hadn't been regularly cleaned; and a worker stuffing birds into a euthanizing chamber with such force that the thunk of the animals' heads hitting the metal exterior could be heard.

One worker, whose face was blacked out on the footage, told the undercover videographer that disease had killed many birds at one location: "It was nothing to pull 5,000 out of there a day," the worker is filmed as saying. "And that's all we did for about two weeks straight, is just pull dead birds."

Tony Wesner, executive vice president of Rose Acre Farms in Seymour, Ind., said Wednesday morning that the company "doesn't condone inhumane treatment" of its livestock. "Anyone violating our standards would be immediately terminated," Wesner said.

Representatives of Rembrandt Enterprises, based in Rembrandt, Iowa, could not be reached for comment.

Similar clandestine videos of farm operations have led to national changes in food-safety policy. An undercover video of a Chino slaughterhouse, where workers were shown using chains and forklifts to drag cows too injured or ill to stand, led to the largest beef recall in the country's history and prompted the federal government -- intent on preventing mad cow disease and other contaminants from entering the nation's food supply -- to permanently ban the slaughter of such cattle.

"We're not asking for an end to the confinements of animals in buildings. We're asking they not be crammed into cages and crates barely larger than their bodies," said Humane Society President Wayne Pacelle at a news conference in Des Moines on Wednesday.

**RJN - 316**

That's a message that Pacelle has been pushing far more aggressively since California's Prevention of Farm Animal Cruelty Act was signed into law. The measure, which passed by more than 63% of the vote, banned small, confining crates or cages for veal calves, egg-laying hens and pregnant sows. Farmers have until January 2015 to phase out their existing structures and build new facilities.

The bill's success created a ripple effect, putting pressure on other states to pass similar reforms.

Pacelle said the Humane Society and Farm Sanctuary -- the biggest farm-animal-rights groups in the U.S., which co-sponsored Proposition 2 -- first started introducing ballot measures for farm animals in 2000. Their first shot: pig farmers in Florida. They won in November 2002, when the first ban on gestation crates was passed. After that, Pacelle and the Humane Society moved onward. To date, seven states have passed laws banning various animal confinement systems.

"People know what happened in California, and they know it can happen again and again," Pacelle said. "They know that no group has passed more ballot measures than we have. They know we have a focused strategy. They know we have a budget of $150 million a year. And they know we're ready for a fight."

p.j.huffstutter@latimes .com

Copyright © 2010, The Los Angeles Times

**RJN - 317**

Case 2:14-cv-00341-KJM-KJN   Document 37-2   Filed 04/09/14   Page 4 of 79

# Los Angeles Times  LOCAL


*1 Rule to a Flat Stomach*
Lose 25lbs of stomach fat in 3 weeks
READ HOW

# L.A. Unleashed

ALL THINGS ANIMAL IN SOUTHERN
CALIFORNIA AND BEYOND

**Stay connected:**

RSS   twitter   facebook

advertisement

« Previous Post | L.A. Unleashed Home | Next Post »

## Idaho, others prepare for California egg exodus

February 8, 2010 |  2:32 pm




**From California and Driving?**
New changes allow California residents to get up to 70% off car insurance. See if you qualify.


**Acai Berry Exposed (Official Test)**
Want to use Acai berry? Do not use. Read this warning now.


**Sacramento - Mom Lost 46lbs Following 1 Rule**
I cut down 46lbs of stomach fat in a month by obeying this 1 rule

Idaho is among several states watching to see if a California animal cruelty law drives flocks of big egg farms there to fly the coop.

California voters in 2008 approved Proposition 2, banning cramped cages for laying hens by 2015.

Neither Idaho nor Nevada, where officials are aggressively courting the Golden State egg industry, have restrictions on "battery cages" that leave chickens little room to spread their wings.

Idaho Sen. Tim Corder has no desire to change that in his state. Industry should decide, Corder insists.

Still, the Senate Agriculture Committee chairman does want to revamp rules governing where and how giant poultry farms are operated to skirt pitfalls that accompanied explosive growth of Idaho's dairy industry. His state went from 180,000 cows in 1990 to 530,000 in 2009 to become the third-biggest milk producer after California and Wisconsin, but the arrival of mega-dairies caught regulators flat-footed and prompted environmentalists to call foul.

"The time when agriculture can sweep in and do whatever it wants and nobody will say anything about it until it's too late, that time is past," said Corder, R-Mountain Home. "If we're going to do this, let's do it right from the start."

Corder, whose poultry plan is due for discussion in the Idaho Capitol this week, isn't alone in thinking henpecked California egg producers may come calling.

**RJN - 318**

Case 2:14-cv-00341-KJM-KJN   Document 37-2   Filed 04/09/14   Page 5 of 79

Following Prop 2, Nevada officials want to poach their share of a possible egg exodus.

"We've contacted various members of poultry associations, especially in the California market," said Kathy Johnson, Pershing County's economic development director. "We're not trying to play predator. We're simply offering an option."

One University of California-funded study before the 2008 ballot measure concluded costs would rise 20 percent, including equipment investments and use of more feed, and result in virtually all egg production leaving after six years. Only 5 percent of U.S. egg production comes from non-caged hens.

California is the nation's fifth-largest egg producer, with 5 billion eggs annually. Iowa is tops, with 14.3 billion. Idaho and Nevada aren't even close.

So far, Debbie Murdock, executive director of the Assn. of California Egg Farmers, hasn't heard of any impending relocations to Idaho, Nevada or elsewhere.

Still, Prop 2 has her members' feathers ruffled.

"We have 20 million hens in this state," Murdock said. "It's a huge expense for us to have to move. It's a huge expense for us to change our housing. A move like this, especially in this economic climate, can be very scary."

The Humane Society of the United States, which backed Prop 2, says the industry is claiming the sky is falling to frighten other states from pursuing similar measures. And similar measures are coming: Michigan's governor signed legislation in October requiring more room for hens, while Ohio plans a vote next November.

Even without new laws, retailers like Bentonville, Ark.-based Wal-Mart Stores Inc. are independently demanding suppliers treat their chickens humanely, said Paul Shapiro, the Humane Society's factory farm campaign director.

"You see a shift in the marketplace, not because they are compelled to do so by law, but because they don't want to be selling a product that's criminally cruel to produce," Shapiro said.

Pam Juker, an Idaho Department of Agriculture chief of staff, concedes Idaho regulators struggled to keep pace when big dairies began targeting cheap Idaho land to build 5,000-cow dairies two decades ago. Air and water pollution concerns emerged, as did a backlash over smells. Today, a legal stink lingers between the Idaho Dairymen's Assn. and counties over power to regulate feedlots.

"The laws and rules had to be developed alongside the industry growth," Juker said. "With this (Corder's) proposed legislation, it will help to have the regulatory structure in place before a new industry settles in."

The Idaho Conservation League has highlighted nitrate threats to southern Idaho groundwater from millions of tons of dairy manure. Justin Hayes, a spokesman in Boise, said poorly regulated poultry farms could make things worse. He hasn't endorsed Corder's bill.

"There's not currently enough oversight of where we place dairy manure," Hayes said.

Even if California poultry operations don't find Idaho, Corder is sure others will.

Des Moines, Iowa-based Hy-Line North America last year opened a new facility in Burley, in southern Idaho, that hatches million of hens to be shipped elsewhere. And last month, commissioners there approved zoning changes to allow a broiler chicken plant to house up to 4 million birds. One thousand employees would process some 13,000 birds an hour.

"They aren't just coming," Corder said. "They're already here."

-- Associated Press

**Animal news on the go: Follow Unleashed on** Facebook **and** Twitter.

*Photo: Dave Getzschman / for the Times*

More in: Birds, Farm Animals, HSUS, Law & Government



Permalink
Comments (2)
ShareThis

10 tweets
retweet

Share

California Proposition 65
Testing, risk mgt, consulting, product assessments & screening
www.intertek.com/prop65

Eatwell Farm Box
Organic produce and pasture raised eggs delivered to your neighborhood
www.eatwell.com

ADS BY GOOGLE

## Your Morning Adorable



The best way to start your day, in our opinion, is with a great animal photo or video.

## Animal Lovers' Calendar



Upcoming pet-friendly and animal-related events around L.A.

## Ask a Vet



Dr. Heather Oxford of L.A. veterinary hospital California Animal Rehabilitation answers your questions about your pet's health.

## Photos: Four-Legged Friends



What's so funny about peace, love and understanding? Nothing, if you ask these animals.

## About the Bloggers

Tony Barboza
Lindsay Barnett
Carla Hall
Mark Milian
Patt Morrison
Steve Padilla
Tony Pierce
Kelsey Ramos
Alice Short

## Pet Adoption Resources

L.A. City Animal Services    GO

## Recent Posts

Former 'Flipper' trainer says animal parks such as SeaWorld provide a 'bad education' to visitors | *March 3, 2010, 2:01 pm »*

15 grocery bags of dead animals found in Kentucky car wash | *March 3, 2010, 12:16 pm »*

Newly released witness statements offer more details on SeaWorld trainer's orca death | *March 2, 2010, 4:35 pm »*

Endangered wild foxes of Santa Catalina Island are rebounding | *March 2, 2010, 2:44 pm »*

Sea lions starting to return to San Francisco's Pier 39 | *March 2, 2010, 12:20 pm »*

## Recent Comments

RJN - 319

Case 2:14-cv-00341-KJM-KJN   Document 37-2   Filed 04/09/14   Page 6 of 79

**boston.com**

THIS STORY HAS BEEN FORMATTED FOR EASY PRINTING

# Grape growing, fish protection clash in California

*AP Associated Press*

**By Jason Dearen, Associated Press Writer | January 29, 2010**

HEALDSBURG, Calif. --Grape growers in Northern California's cool, fertile Sonoma County wine region are stomping mad at a new plan to limit the amount of water vineyards can pump from local rivers and streams to protect crops from frost -- a proposed regulation meant to safeguard coho salmon, a species on the brink of local extinction.

Vineyard acreage in Sonoma County, adjacent to the Napa Valley, has increased 30 to 40 percent during the past decade and the county estimates the businesses generate about $2 billion annually.

But the growth has run up against federal protections for coho salmon, an endangered species that once filled streams and rivers along California's central and northern coasts.

When hibernating vines are coming to life in the spring, temperatures can still drop below freezing overnight and destroy young grapes. During those frigid nights, growers spray river water onto the vines, encasing them in a protective frozen shell.

Farmers say one bad night when temperatures quickly drop 5 to 10 degrees below freezing could wipe out huge percentages of their crop.

"Down here in the bottom, if we don't have the water, it's not going to get it done," said vineyard manager Paul Foppiano, standing in a low-lying field of pinot noir vines near the Russian River. Sprinklers hovered over the gnarled vines in a part of his family's 140 acres, which have been producing wine in Sonoma County since 1896.

"The problem with frost is one year you might have to run 15 to 20 nights like we did a couple of years ago," he said. "Last year we only ran three or four nights so you're not using a whole lot (of water)."

Foppiano is not against the state managing river water use to help protect fish, but believes accurate accounting of use by other county growers is needed before any regulatory decisions are made.

"If the state is willing to work with us, we're willing to work with anybody," he said. "But there's got to be some answer to it other than to completely cut us off. It's going to be a problem."

At issue is the continued existence of the hook-mouthed coho salmon and the threatened steelhead trout that spawn in coastal streams and rivers -- a habitat that stretches from Alaska to central California. While coho still thrive in Alaska, their once plentiful stocks in California and Oregon are under threat, federal fisheries managers say.

Under the state's proposed regulation, any pumping would be illegal unless approved by the State Water Board's management program. The new rule could be in effect by 2011.

State water regulators say using river water for frost protection is currently legal, but they are seeking a middle ground that will protect fish and grapes while ensuring some oversight.

"The goal is not to shut (pumping) down, but to make sure it's done in a responsible manner with an eye to making sure the resources are protected," said Vicky Whitney, deputy director for the State Water Board.

In 2008 and 2009, both drought years, vineyard pumping resulted in the deaths of hundreds of coho and steelhead as creek levels dropped, stranding the fish. The kills spurred outrage from environmentalists and

**RJN - 320**

concern from federal fisheries managers.

State water officials and federal regulators said it is likely many more fish were killed in undocumented incidents, underscoring the need for quick action. Growers have challenged that notion.

"I question the validity of their assertions of there being several incidents," said Lex McCorvey, executive director of the Sonoma County Farm Bureau, an advocate for the county's wine industry. "(Regulators) have a responsibility to step forward with that information; that way the problems can get fixed. In 2008, there were two incidents, both have been fixed so they won't happen again."

Federal studies show pumping during cold snaps, especially in recent dry years when river levels are low, dramatically affects the river and its tributaries. A study presented by NMFS found pumping for frost protection in 2004 and 2005 resulted in a 97 percent reduction in surface flow of one of the Russian River's key tributaries, Maacama Creek, and the water diversion's effects were seen throughout the watershed.

In April, after documented fish kills, federal fishery biologists at NMFS urged the State Water Board to take control of vineyard pumping. The water board gave the growers six months to come up with their own management plan, but after seeing it, decided to draft their own regulations.

"The agriculture industry is not necessarily wanting to self regulate; we want to self-monitor and educate growers so they're using either no water out of the Russian River or (conservation techniques)," McCorvey said.

Meanwhile, no regulation governs pumping from the Russian River this year.

"It is problematic for us to not have regulatory coverage, because we view the threat of frost protection activities as widespread and significant," said David Hines, a federal fishery biologist and water rights specialist for NMFS.

Grape growers say an entire year's crop could be wiped out if temperatures drop below freezing and they're unable to spray. Environmentalists say the regulations might be too little too late for the area's coho.

"The state board started looking at frost pumping issues in 1997. They've had over a decade to evaluate this issue," said Jeff Miller of the Center for Biological Diversity, one of the environmental groups that filed an intent to sue in an effort to spur action.

"We can't have more fish kills, that can't happen," Miller said. "If there are further fish kills this spring, we'll probably go to court." ■

© Copyright 2010 The New York Times Company

RJN - 321



# New rules for caged hens ambiguous under Prop. 2

By Jill Benson

Updated: 06/18/2009 05:40:42 PM PDT

FOR four generations, my family has produced eggs in this state. In fact, the vast majority of the state's egg farms are family-owned operations like ours. We proudly provide a local, healthy and affordable product for California consumers.

As many recall, Proposition 2, approved in November 2008j by California voters, places new mandates on how we house our

egg-laying hens.

We heard voters clearly. Californians asked us to give hens more space, a decision California egg farmers respect. But the initiative's new mandates for hen housing are so vague that the state's egg farmers don't know how to comply with them. We're left with the ambiguous question, how much is "more space?"

Contrary to what people may believe, the initiative does not ban the use of cages to house egg-laying hens. Instead, it tells us that we can't confine an egg-laying hen "for all or the majority of any day, in a manner that prevents" the hen from "lying down, standing up, and fully extending" her "limbs" and "turning around freely."

It also says the hens must be able to fully extend their limbs without touching the side of an enclosure or another hen. And it says the hens must be able to fully turn around without touching the side of a cage, crate or enclosure.

The goal, of course, is the humane treatment of egg-laying hens - a goal to which California egg farmers have long subscribed. We already comply with the most stringent animal protection and egg safety standards in the country. And, we want to work collaboratively to ensure the continued production of fresh and affordable eggs that meet the food safety and animal care standards customers expect.

But how do we know exactly what size enclosure is now permitted for egg-laying hens? Do we need to measure each and every hen to determine just how much space the hen needs to lie down, stand up, fully extend her limbs and turn around freely without touching another hen or the sides of an enclosure? Can we use or modify their current housing systems? How many hens may be housed together in any given "cage-free" enclosure?

We have to know exactly what housing systems are required under Proposition 2 so we can continue to humanely produce eggs in the state and get any financing we may need to build new housing for our hens.

We can't afford to make a mistake. The initiative imposes fines of up to $1,000 and up to six months in jail for each violation, and it applies to farmers as well as their employees.

Advertisement



‡USF — End-to-End Training as It Should Be: 100% ONLINE!

UNIVERSITY of SAN FRANCISCO

**RJN - 322**

dailynews.com

The state Legislature is currently considering legislation that would also require out-of-state producers to comply with Proposition 2. We commend AB 1437, which would ensure California's consumer expectations for animal care and food safety are met, no matter where the eggs are produced.

But how can California require producers in other states to comply with the initiative if its own farmers don't know what we need to do to comply? We need AB 1437 to include those clarifying standards.

The state's egg farmers have long been an essential part of California's economy and food supply, generating thousands of jobs and humanely producing billions of eggs a year. Egg production in the state topped $300 million in 2007, and California is the nation's fifth-largest egg producer.

My family and all California egg farmers want to continue this proud tradition of providing a safe, fresh, affordable and nutritious source of food for the state's residents. To do that, we need enforceable legislation that provides clear-cut standards.

**Jill Benson is vice president of the Modesto-based JS West Company, a family-owned farm in operation for four generations.**

Advertisement



Case 2:14-cv-00341-KJM-KJN   Document 37-2   Filed 04/09/14   Page 10 of 79

THE SACRAMENTO BEE   sacbee.com

# So, how much space does a chicken need?

## Proposition 2 not specific; egg industry wants to know

### Published Wednesday, Jun. 17, 2009

Leaders in the state's egg industry are asking lawmakers to define just what kind of hen housing they will be able to use.

The Association of California Egg Farmers said state Proposition 2, approved by voters in November, is unclear on what housing will be allowed once it takes effect in 2015.

"California egg farmers respect the voters' desire to give egg-laying hens more space," said Debbie Murdock, the group's executive director, in a news release. "Our farmers need clear-cut housing standards to determine how they can comply with the law and to continue to humanely produce fresh, local and affordable eggs in California under Proposition 2."

The measure took aim at standard industry cages with as little as 67 square inches of floor space per hen. It said enclosures would have to have enough room for hens to stretch and turn around without touching the walls or other hens, but no specific dimensions were included.

_- cages_

Merced County accounts for about 40 percent of the state's egg production. Stanislaus County produces 10 percent and San Joaquin 8 percent.

The industry group is asking that this be accomplished in an amendment to state Assembly Bill 1437. This measure, awaiting state Senate action, would apply Proposition 2 to out-of-state producers selling eggs in California.

The Humane Society of the United States, a leading sponsor of the ballot measure, has said the industry can comply by following its own definition of "cage-free" housing.

This standard, adopted by United Egg Producers, requires at least 216 square inches of floor space per hen. Such systems usually are inside a barn or other large structure.

The industry group contends that Proposition 2 does not require going to cage-free systems. It also says new housing will be costly.

The new bill was introduced by Assemblyman Jared Huffman, D-San Rafael. It aims to deal

**RJN - 324**

Case 2:14-cv-00341-KJM-KJN   Document 37-2   Filed 04/09/14   Page 11 of 79

with complaints that Proposition 2 will put California egg producers at a disadvantage versus out-of-state companies that can still use the smaller cages.

The industry group said it will oppose the bill unless it is amended to include detailed standards for hen housing.

© Copyright The Sacramento Bee. All rights reserved.

**RJN - 325**

Tuesday, June 3, 2008   The Sacramento Bee   A13

# VIEWPOINTS

sacbee.com

**WRITING FOR VIEWPOINTS**
The Bee is interested in your commentary on local, state or Western regional issues. Use our online form to submit your piece.
sacbee.com/sendoped

**THE SWARM**
Mix it up with members of The Bee's editorial board on their blog.
sacbee.com/swarm

**DEBBIE MURDOCK**   Special to The Bee

# Hen initiative has hatched only confusion



Sirlin

*Debbie Murdock is the executive director of the Association of California Egg Farmers, a nonprofit statewide trade association representing the state's egg producers.*

The message from Proposition 2 came through loud — but not very clear. Last year California passed a broad principle of giving egg-laying hens more space, a "meal" that California egg farmers saw as the initiative's new mandate. But the housing rules are so vague that California egg farmers don't know how to comply with them.

Herein lies the common misperception that the initiative bans the use of cages to house egg-laying hens. It does not.

Instead, it tells farmers and farm employees that they can't confine egg-laying hens "for all or the majority of any day in a manner that prevents the hen from lying down, standing up and fully extending" her limbs and "turning around freely."

It also says the hens must be able to spread their limbs without touching the side of an enclosure or another hen, and it says the hens must be able to fully turn around and spread the "most of a cage."

But how do they know exactly what size enclosure is now permitted for egg-laying hens? Do the farmers need to measure each and every hen

California egg farmers want to continue this proud tradition of providing a safe, fresh, affordable and nutritious source of food for the state's residents. To do that, they need enforceable legislation that provides clear-cut standards for complying with Proposition 2.

to determine just how much space the hen needs to lie down, stand up, fully extend her limbs and turn around freely without touching another hen or the sides of an enclosure? Can they use or modify their current housing systems? How many hens may be housed together in any given "cage-free" enclosure?

This list of questions could go on. But that's enough to clearly identify the problem – and it's a big problem for California egg farmers.

They have to know exactly what housing systems are required under Proposition 2 so they can continue to humanely produce eggs in the state and get any financing they may need to build new housing for their hens.

They can't afford to make a mis-

take – either financially or personally. The initiative imposes fines of up to $1,000 and up to six months in jail for each violation of Proposition 2.

The state Assembly has already approved legislation that would require out-of-state producers to comply with Proposition 2. California egg farmers are grateful to Assemblyman Jared Huffman, D-San Rafael, for introducing the legislation. But how can California require producers in other states to comply with the initiative if its own farmers don't know what they need to do to comply?

We first need to know exactly how much space to provide an egg-laying hen and what housing systems will comply with the initiative. Until then, we regretfully oppose that legislation.

The state's egg farmers have long been an essential part of California's economy and food supply, generating thousands of jobs and hundreds producing 5.9 billion eggs a year. That is enough eggs to provide 133 eggs annually to each and every Californian.

Egg production in the state topped $300 million in 2007. California is the nation's fifth-largest egg producer, and the vast majority of the state's egg farms are family-owned operations.

California egg farmers want to continue this proud tradition of providing a safe, fresh, affordable and nutritious source of food for the state's residents. To do that, they need enforceable legislation that provides clear-cut standards for complying with Proposition 2.

With legislation that provides clear-cut standards for implementing the initiative, our farmers can continue to humanely produce safe, fresh and affordable eggs in the state and they can continue to play a vital role in California's economy and food supply.

RJN 326

**THE SACRAMENTO BEE**  sacbee.com

# Bill would extend Prop. 2 protections for chickens

**jdowning@sacbee.com**

**Published Wednesday, Jun. 03, 2009**

*Editor's note: This story and headline were modified to make clear that Proposition 2 does not explicitly ban cages. However, it requires that hens have room to extend their wings without touching another bird or the side of a cage.*

California voters freed the state's egg-laying hens last fall, but Proposition 2 left a big loophole: Supermarkets could still sell eggs laid by caged birds in other states.

Now, animal-welfare advocates are backing legislation requiring every egg sold in California to be from a cage-free hen.

Assembly Bill 1437 would greatly expand the scope of the proposition, which is scheduled to take effect in 2015.

Economists predict Proposition 2, on its own, will drive up imports of cheap, conventionally produced eggs, pushing many in-state farms out of business.

If AB 1437 passes, though, it would make the entire California market – about 10 percent of the nation's eggs – essentially cage-free. That huge demand, backers hope, would support California farms as they convert their production and drive some big egg farms elsewhere in the country to scrap their cages as well.

California now buys about a third of its eggs from other states.

The Humane Society of the United States, the force behind Proposition 2, says it hopes the California egg industry remains viable so that other states won't see a switch to cage-free hens as an industry-killer.

"This is an effort that we fully intend to extend to the rest of the country," said Jennifer Fearing, the group's chief economist.

No other state has restricted hen cages. Cage-free eggs are about 6 percent of the national market.

It's not clear how AB 1437 would alter egg prices.

**RJN - 327**

Cage-free systems add a penny or two to the cost of producing an egg, according to a University of California study last year. The retail price difference between caged and cage-free eggs, though, averages well over $1 a dozen, according to the U.S. Department of Agriculture.

If cage-free eggs were the only type available in California, that spread would likely narrow to roughly the difference in production costs, said Daniel Sumner, an agricultural economist at the University of California, Davis.

California's egg industry has yet to take a position on AB 1437. The Association of California Egg Farmers is now focused mainly on getting state regulators to clarify what hen housing will be legal, spokeswoman Fiona Hutton said.

Proposition 2 requires only that hens have room to stand up, turn around and extend their wings without touching another bird. Farmers need more detail before investing in new equipment, Hutton said.

Cage-free systems give hens three main things: a nest, a perch and a place to take a dust bath. According to animal-behavior experts, hens act stressed when they don't have those basics.

A 60,000-square-foot barn with stacked cages can hold as many as 150,000 hens. Cage-free hens still live in crowded, indoor conditions, with as many as 30,000 birds in the same size barn.

While cage-free systems meet basic needs, they also tend to be more perilous. Hens get sick and injured more often, and die at roughly twice the rate of birds in cages, according to studies of egg farms in Europe.

AB 1437, authored by Assemblyman Jared Huffman, D-San Rafael, passed 65-12 in the Assembly last month. It's likely to be heard next in the Senate Food and Agriculture Committee, which is chaired by Sen. Dean Florez, D-Shafter, one of Huffman's co-authors on the bill.

© Copyright The Sacramento Bee. All rights reserved.

Call The Bee's Jim Downing, (916) 321-1065.

jholland@modbee.com" />

THE SACRAMENTO BEE   sacbee.com

# Bill seeks to extend Prop. 2 rules

## Published Friday, May. 15, 2009

A state Assembly bill aims to expand the reach of Proposition 2, which will ban small hen cages at California egg farms as of 2015.

The bill, endorsed by some of the opponents of the November ballot measure, would extend the ban to out-of-state farms for eggs they sell in California.

This would get around one of the main complaints about Proposition 2 — that California's industry will suffer if companies elsewhere can use the less expensive small-cage production.

The bill was introduced by Assemblyman Jared Huffman, D-San Rafael, and has support from animal-rights groups that were behind the ballot measure.

Co-authors include Assemblyman Tom Berryhill, R-Modesto, who had opposed Proposition 2. He could not be reached by The Bee on Friday, but he told the Riverside Press-Enterprise that the bill would "keep our folks competitive."

The bill has passed that chamber's Agriculture and Appropriations committees and awaits a floor vote.

Assemblywoman Cathleen Galgiani, D-Livingston, another opponent of the ballot measure, voted for the new bill as chairwoman of the Agriculture Committee.

The two lawmakers represent a region that is one of the top egg producers in the state. Industry leaders here fought hard against the ballot measure, arguing that the small cages are humane and that a changeover would mean high costs for hen housing, labor and other needs.

### Egg industry neutral

The state's egg industry is neutral on the new bill. Jill Benson, a vice president at J.S. West & Cos., a major producer based in Modesto, said the attention for now is on just what Proposition 2 will require of her company and others.

The measure, backed by the Humane Society of the United States and other groups, took aim at cages that, under industry standards, can have as little as 67 square inches of floor space per hen. Each cage typically has six hens.

The ballot wording requires that the birds be able to "turn around freely, lie down, stand up and fully extend their limbs."

RJN - 329

Benson and other industry leaders said it's unclear whether all the hens in a cage must be able to do this at once. That would require 720 square inches of cage space per hen, an expensive change.

*what is the intent?*

Jennifer Fearing, chief economist for the Humane Society, said that was not the intent of the measure. She said companies can comply by simply meeting the United Egg Producers standard for "cage-free" systems — at least 216 square inches of floor space per hen.

Fearing said Assembly Bill 1437 could help California egg producers compete against out-of-state companies, but the main goal was the well-being of the hens.

"While this is distinct from Proposition 2, it still allows even more hens to engage in these basic behaviors," she said.

**Bee staff writer John Holland can be reached at jholland@modbee.com or 578-2385.**

© Copyright The Sacramento Bee. All rights reserved.

RJN - 330

# Veal Crates, Gestation Crates and Battery Cages Banned in California

**November 5, 2008**



A happy day for farm animals. © HSI

On Tuesday, November 4, California voters approved a historic ballot measure to halt the inhumane confinement of animals on factory farms—by an overwhelming margin of 63.3 to 36.7 percent.

繁體中文

简体中文

español

português

## What Proposition 2 Does

Proposition 2 ends the practice of confining breeding pigs, veal calves, and egg laying hens in crates and cages so small the animals can barely move. Prop 2 requires that factory farms provide enough space for animals to stand up, turn around and extend their limbs. It goes into effect in January of 2015, giving factory farms six years to shift to different housing systems.

## Its Significance

By so strongly supporting this ballot measure, California voters have taken a stand for decency and compassion. They have said that the systemic mistreatment of animals on factory farms cannot continue and that all animals deserve humane treatment, including animals raised for food.

Prop 2 is widely regarded as the most ambitious ballot measure for animals ever undertaken in the United States. Its passage will make life better for 20 million farm animals.

## Building Momentum

The historic victory for farm animals builds on momentum established in other U.S. states. Colorado and Arizona are phasing out the use of gestation crates and veal crates, and the states of Florida and Oregon have similar measures phasing out gestation crates.

Throughout North America, producers are changing the way they house and care for animals in response to this momentum.  Smithfield Foods, the world's largest pig producer, and Maple Leaf, the largest pig producer in Canada, are phasing out gestation crates.  The American Veal Association voted to urge the entire US veal industry to phase out veal crates.

By adopting these measures, the United States is moving in the same direction as Europe. The entire European Union is phasing out barren battery cages by 2012 and gestation crates by 2013, and has already banned veal crates. Several European countries already have enacted protections for farm animals that exceed the European Union's measures.

HSUS >> Factory Farming > > Campaigns >> No Battery Eggs

# The HSUS's Campaign to Ban Battery Cages



Arguably the most abused animals in all agribusiness, nearly 280 million laying hens in the United States are confined in barren, wire battery cages so restrictive the birds can't even spread their wings. With no opportunity to engage in many of their natural behaviors, including nesting, dust bathing, perching, and foraging, these birds endure lives wrought with suffering.

Because of animal welfare concerns, countries such as Germany, Switzerland, Sweden, and Austria have banned battery cages. The entire European Union is phasing out conventional cages by 2012.



Victory! California Bans Battery Cages

Nation's top ag state says "yes" to better treatment of laying hens.

The HSUS is working to free egg-laying hens from the confines of battery cages:

### In the Courtroom and in Legislatures

The HSUS routinely supports bills in state legislatures that would ban battery cages. Bills relating to battery cage confinement have been introduced in states as varied as Arizona, New Hampshire, Vermont, and Washington.

In 2008, The HSUS was a primary sponsor of California's Prop 2—the Prevention of Farm Animal Cruelty Act—which passed by a landslide vote of more than 63%. This new law makes it a criminal offense (with a phase-out period) to confine hens in battery cages, pigs in gestation crates and calves in veal crates.

At the local government level, we've worked with Cambridge, Mass., Takoma Park, Md., West Hollywood, Calif., New Port Richey, Fla., Winter Springs, Fla., Berkeley, Calif., Santa Cruz, Calif., West Palm Beach, Fla., Hollywood, Fla., Tampa, Fla., and San Francisco, Calif. to pass resolutions opposing the cruelty inherent in battery cage egg production and urging city residents not to buy battery eggs.

RJN - 333

# CAA

## CALIFORNIA ANIMAL ASSOCIATION

June 30, 2009

*Joe Parra*

American Society for the
Prevention of Cruelty to Animals

Senator Elaine Alquist
State Capitol
Sacramento, CA 95814

Animal Place

**RE: Support for AB 1437, as introduced**

Born Free USA

Dear Senator Alquist,

Food Empowerment Project

On behalf of the California Animal Association, a coalition of state and national animal protection groups representing approximately 1.5 million Californians, collectively, we want to encourage you, as Chair of the Senate Health committee, to move AB 1437 as introduced by Assemblymember Jared Huffman.

By requiring all shelled eggs sold in California to meet the animal care standards set forth in the Prevention of Farm Animal Cruelty Act, AB 1437 recognizes the significant animal welfare and human health risks posed by extreme intensive confinement of egg-laying hens.

The Humane Society
of the United States

League of Humane Voters

Studies have shown that egg-laying hens subjected to stress are more likely to have higher levels of pathogens in their intestines, and poor conditions increase the likelihood that consumers will be exposed to higher levels of food-borne pathogens.

Orange County
People for Animals

Further, the prestigious Pew Commission on Industrial Farm Production found that food animals that are provided with at least minimum accommodation of their natural behaviors and physical needs are healthier and safer for human consumption.

The Paw Project

The overwhelming support for Proposition 2 confirms that Californians condemn the cruelty associated with the confinement of egg-laying hens in tiny wire cages. More than 8 million California voters, including majorities in 47 of 58 counties, approved this measure to give animals raised for food basic, humane treatment.

People for the Ethical
Treatment of Animals

We understand that the industry groups that opposed Proposition 2 have proposed amendments to the author that would seriously undermine the will of the voters and put the Legislature in the position of pursuing an unconstitutional amendment to a citizen initiative. We strongly urge you not to allow this to happen.

San Diego Animal Advocates

United Animal Nations

Our organizations will work to help pass AB 1437, a precedent-setting measure, as long as it continues to advance the will of California voters.

Sincerely,

Barbara Schmitz
*on behalf of the*
California Animal Association

RJN - 334

**Association of California
Egg Farmers**

June 11, 2009

The Honorable Dean Florez, Chair
Senate Committee on Food and Agriculture
State Capitol, Room 314
Sacramento, CA 95814

**RE:    AB 1473 (Huffman) – Oppose, Unless Amended**

Dear Senator Florez,

Regretfully, we must inform you that the Association of California Egg Farmers, a statewide trade association representing California egg farmers, must oppose AB 1437 unless it is amended to include statutory housing standards that provide clear standards for housing space for egg-laying hens.

We commend Mr. Huffman for authoring legislation that would ensure California's consumer expectations for animal care and food safety are met, no matter where the eggs are produced.  But first, we need to know exactly how much space to provide an egg-laying hen and what housing systems will comply with the initiative. How can California require farmers in other states to comply with the initiative if its own farmers don't know what they need to do to comply?

Last November, when they approved Proposition 2, Californians embraced a broad principle to give egg-laying hens more space, a decision California egg farmers respect. The question is how much space?

Clarity on the housing standards issue is even more important now, due to the shifting representations by the proposition's sponsors.  We have met with the authors of Proposition 2 on several occasions, even traveling across country to their headquarters in Washington D.C, to try to determine how much space must be provided to egg-laying hens. This only resulted in further confusion because, while during the campaign their theme was that this was a "moderate measure" designed to give hens a little more space, they now maintain only cage-free housing would meet the initiative's standards (see attached letter dated May 29, 2009 from Humane Society of the United States). As you know, Proposition 2 does not ban cages. In fact, Proposition 2 specifically defines an "enclosure" as being "any cage, crate, or other structure" which is "used to confine" a hen.

Proposition 2 tells farmers and the farmers' employees they cannot confine an egg-laying hen "for all or the majority of any day, in a manner that prevents" the hen from "lying down, standing up, and fully extending" her " limbs" and "turning around freely."

*[handwritten notes in right margin:]* must be approved by voters? No - does not amend Prop. 2 prov. non preemption of other state laws → Colony cages (Europe)

RJN - 335

The initiative also says a hen must be able to fully extend "all limbs without touching the side of an **_enclosure_**, including, in the case of egg-laying hens, fully spreading both wings without touching the side of an **_enclosure_** or other egg-laying hens." (Emphasis added). By defining an enclosure as "any cage, crate, or other structure," they clearly anticipated a variety of modern hen houses would be adapted and meet the specifications of the law.

The goal, of course, is the humane treatment of egg-laying hens – a goal to which California egg farmers have long subscribed. California egg farmers already comply with the most stringent animal protection and egg food safety standards in the country.

But how do they know exactly what size enclosure is now permitted for egg-laying hens? Do the farmers need to measure each and every hen to comply? Can they use or modify their current housing systems? How many hens may be housed together in any given "cage-free" enclosure?

Since our first meeting with you on this issue, we have continually discussed how the directives in Proposition 2 are so vague that California egg farmers don't know how much space they need to provide to egg-laying hens to comply with the initiative.  As you know, a farmer or his employee who violates any provision of the new law faces fines of up to $1,000 per violation and/or a jail sentence of up to six months.

California's egg farmers need clear, legally enforceable standards in this legislation because of the substantial financial requirements they may face to comply with Proposition 2, the time and expense involved in obtaining permits and modifying enclosures, the potential for severe criminal penalties and the alterations in husbandry practices that may be necessary.

The state's egg farmers have long been an essential part of California's economy and food supply, generating thousands of jobs and humanely producing 4.9 billion eggs a year.

California egg farmers want to continue this proud tradition of providing a locally-grown, safe, fresh, affordable and nutritious source of food for the state's residents. To do that, they need enforceable legislation that provides clear-cut standards for complying with Proposition 2.

We look forward to continuing to work with you, the author and the bill's supporters to further discuss the standards and how to proceed with AB 1437.  Please feel free to contact our advocate, Dennis Albiani, or me at (916) 441-1064 to discuss how to include these standards in this legislation.

Sincerely,

Debra J. Murdock

Debra J. Murdock
Executive Director

Enclosure

**RJN - 336**

The documents following this page were

photocopied from the

Governor's Chaptered Bill File

on this legislation.

RJN - 337

## Enrolled Bill Memorandum To Governor

**BILL:** AB 1437   **AUTHOR:** Huffman          **DATE:** 6/23/10   **DUE:** 7/6/10

**ASSEMBLY:** 65-12  **SENATE:** 23-7           **CONCURRENCE:** 65-9

**PRESENTED BY:** Mike Webb                     **RECOMMEND:** Sign ☐ Veto ☐

### SUMMARY
This bill prohibits, beginning January 1, 2015, the sale of shelled eggs for human consumption in California that are from hens housed in environments that do not meet the animal care standards set forth in the Prevention of Farm Animal Cruelty Act.

**SPONSOR:**     Author

**SUPPORT:**     Department of Food and Agriculture
                 Department of Public Health
                 Department of Finance
                 American Society for the Prevention of Cruelty to Animals
                 Turlock Dairy & Refrigeration, Inc.
                 United Animal Nations

**OPPOSITION:**  Heath and Human Services Agency
                 California Animal Voters Alliance

### FISCAL IMPACT
The Department of Public Health and the Department of Food and Agriculture do not estimate any additional costs to implement this bill as it does not specify any additional workload to state entities.

### PREVIOUS ACTION/SIMILAR LEGISLATION
None provided.

### NOTES
In 2008, California passed Proposition 2, the Prevention of Farm Animal Cruelty Act (Act). The Act requires that beginning in January 1, 2015, egg-laying hens be confined only in ways that would allow them to lie down, stand up, fully extend their limbs and turnaround freely.

LEGISLATIVE
COUNSEL
BUREAU

June 28, 2010

Honorable Arnold Schwarzenegger
Governor of California
Sacramento, CA 95814

## ASSEMBLY BILL NO. 1437

Dear Governor Schwarzenegger:

Pursuant to your request, we have reviewed the above-numbered bill authored by Assembly Member Huffman and, in our opinion, the title and form are sufficient and the bill, if chaptered, will be constitutional. The digest on the printed bill as adopted correctly reflects the views of this office.

Very truly yours,

Diane F. Boyer-Vine
Legislative Counsel

By
Jeff Thom
Principal Deputy

JT:slw

Two copies to Honorable Jared Huffman,
pursuant to Joint Rule 34.

cdfa

CALIFORNIA DEPARTMENT OF
FOOD AND AGRICULTURE

## ENROLLED BILL REPORT

| CONFIDENTIAL-Government Code §6254(l) | | |
|---|---|---|
| **Department/Board**<br>Food and Agriculture | **Author:**<br>Huffman | **Bill Number/Version Date:**<br>AB 1437 / 5-26-2010 |
| **Sponsor:**<br>HSUS | **Related Bills** | **Chaptering Order (if known)** |
| ☐ Admin Sponsored    **Proposal No.** | | ☐ Attachment |
| **Subject:**<br>Shelled eggs: sale for human consumption: compliance with animal care standards | | |

## SUMMARY

Commencing January 1, 2015, this bill would prohibit the sale of shell eggs for human consumption if it is the product of an egg-laying hen that was caged or confined on a farm or place that is not in compliance with animal care standards as mandated in Proposition 2. Furthermore, violations of this provision would be a crime.

## RECOMMENDATION AND SUPPORTING ARGUMENTS

**SIGN.** In November 2008, voters passed Proposition 2, requiring California farm animals, including egg-laying hens, have room to move freely. Approximately 35% of shell eggs consumed in California are imported from out of state. California is the fifth largest producer behind Iowa, Ohio, Indiana and Pennsylvania, in that order. This will ensure a level playing field for California's shell egg producers by requiring out of state producers to comply with the state's animal care standards.

This bill would not affect the operations of the Department's Egg Quality Control Program. The purpose of the Egg Quality Control Program is to monitor shell egg quality at production, wholesale and retail levels. The goal is to provide California consumers with eggs that are wholesome, properly labeled, refrigerated, and of established quality and grade, while maintaining fair and equitable marketing standards in the California egg industry. This bill would allow the program to continue its purpose and goals.

| Departments That May Be Affected | | | | |
|---|---|---|---|---|
| CDFA, DPH | | | | |
| ☐ New / Increased Fee | ☐ Governor's Appointment | ☐ Legislative Appointment | ☐ State Mandate | ☐ Urgency Clause |

| Dept/Board Position | Agency Secretary Position |
|---|---|
| ☒ Sign | ☒ Sign |
| ☐ Veto | ☐ Veto |
| ☐ Defer to: | ☐ Defer to: |
| Greg Aghazarian, Deputy Secretary    Date<br>6/28/10 | A.G. Kawamura, Agency Secretary    Date<br>6/28/10 |

RJN - 340

## PURPOSE OF THE BILL

Prohibit the sale of shell eggs for human consumption if it is the product of an egg-laying hen that was caged or confined on a farm or place that is not in compliance with animal care standards. .

Any person who violates this chapter is guilty of a misdemeanor upon conviction.

## ANALYSIS

- Existing law enacted as Proposition 2, an initiative measure approved by state wide general election, establishes, commencing January 1, 2015, specified farm animal treatment standards for animal production in California.

- Shell eggs for human consumption are the product of egg-laying hens that are not confined on a farm or other place whether produced in California or imported into the state.

This bill would:

- Prohibit the sale of shell eggs for human consumption if they are produced from confined egg-laying hens and would make violations of these provisions a crime.

- Commencing January 1, 2015, a shelled egg may not be sold or contracted for sale for human consumption in California if it is the product of an egg-laying hen that was confined on a farm or place that is not in compliance with animal care standards set forth in Chapter 13.8 (commencing with Section 25990),

## LEGISLATIVE HISTORY

Introduced February 27, 2009

## PROGRAM BACKGROUND

The Egg Quality Control Program has the regulatory authority on shell egg issues concerning labeling, quality, size, grade, non retail refrigeration, and inspects eggs at production, wholesale and retail outlets. Annually, the program carries out hundreds of egg quality and grade inspections at these facilities through out the state and has written violations to those who have not been in compliance of its laws.

## OTHER STATES' INFORMATION

At this time, no other state has an existing law that is similar to Proposition 2. Ohio has a November ballot measure which would require their State Board of Agriculture to implement "Animal Welfare Guidelines" for their industry.

## FISCAL IMPACT

The Department is not aware of the potential fiscal implications associated with this bill. However, this bill will ensure a level playing field for California's shell egg producers by requiring out of state producers to comply with the state's animal care standards.

## ECONOMIC IMPACT

This bill may have a positive effect on the regulated shell egg industry in California. It may provide the industry with fair and equitable marketing standards with shell eggs that are imported into California by prohibiting the sale of shell eggs from confined egg-laying hens. Currently, greater than 90% of California produced eggs are from conventional caged systems. When Proposition 2 requirements are implemented in 2015, these producers will no longer be economically competitive with out-of-state producers. Without a level playing field with out-of-state producers, companies in California will no longer be able to operate in this state and will either go out of business or be forced to relocate to another state. This will result in a significant loss of jobs and reduction of tax revenue in California.

## OUTSTANDING ISSUES

### Enforcement
Without the development of regulations, there is no way to know of eggs being imported into California that meet Proposition 2 requirements. Currently, the department's enforcement authority is specific to out-of-state audits to verify compliance with assessment reports submitted by the out-of-state egg handlers (Food and Agricultural Code (FAC) Sections (27863- 27685). CDFA investigators audit paper records to ensure that out of state registrants selling eggs into California pay the appropriate fees. The department does not have current authority to conduct on-sight inspections of physical condition of out-of-state facilities.

### Precedential Implications
Passing legislation that appears to exclude imports that do not meet California animal husbandry standards may mislead the public into thinking that imposing standards that put California farmers and ranchers at a cost disadvantage related to how they house, feed and care for their animals will not negatively impact their ability to survive economically. If the public is lead to believe that laws that restrict interstate trade can be imposed and enforced by California, they may be more inclined to support future laws that make it very difficult for California farmers to offer products that can price compete with products from farmers in other states and nations.

### Trade Implications
At this point in time it is difficult to assess the potential trade implications resulting from passage of this bill. However, there are currently situations where California has different standards than other states which pose no negative implications. For example the Department's Egg Quality Control Program requires a 30 day sell by date from the date on which the eggs were packaged (FAC Sections 27510), other states have a 45 day sell by

Author: Huffman

date. California requires specific labeling requirements (30 day sell by date, refrigeration, date and size) if other states are packing eggs to be shipped into California; they pack those eggs into cartons that meet our labeling requirements. Like California, every state requires their eggs be refrigerated at 45 degrees Fahrenheit; therefore refrigeration would not pose an issue with other states. Currently 35 % of the eggs consumed in California are from other states, of which Iowa is the largest producer.

Similarly it is difficult to assess potential foreign trade implications. For example, Mexico would have to meet all our requirements (labeling, refrigeration, grade, and size) to import eggs into this state. However, at this time we are not aware of foreign eggs being imported into California other than a de minimis amount of eggs imported from New Zealand.

## LEGAL IMPACT

AB 1437, as amended in the Senate on May 26, 2010, prohibits anyone from selling, or contracting for sale, shelled eggs for human consumption if it is the product of egg-laying hens confined in a manner that does not comply with the animal care standards set forth in Health and Safety Code section 25990. Section 25990 specifically states:

"Prohibitions. In addition to other applicable provisions of law, a person shall not tether or confine any covered animal, on a farm, for all or the majority of any day, in a manner that prevents such animal from:
  (a) Lying down, standing up, and fully extending his or her limbs; and
  (b) Turning around freely."

Both AB 1437 and Section 25990 take effect on January 1, 2015. Consistent with section 25990, anyone who violates AB 1437 is guilty of a misdemeanor, and shall be punished with a fine not to exceed $1,000, or imprisonment in the county jail for period of 180 days, or both. AB 1437 would create an additional disincentive for confining egg-laying hens in violation of section 25990 by making it illegal to sell the eggs that they produce.

As with section 25990, there are a number of significant legal issues associated with its application and enforcement. Three of them are addressed in this opinion: (1) federal commerce clause concerns; (2) due process issues associated with criminal prosecution; and (3) the potential for retaliation by other states.

In regard to the commerce clause, the fact that AB 1437 treats in state and out of state producers equally is not dispositive. State restraint of the national market, even under the guise of local health and safety pursuits may be invalidated if a less burdensome alternative exists. *Dean Milk Co. v. City of Madison* (1951) 340 U.S. 349, provides some essential guidance. In *Dean Milk*, the city of Madison, Wisconsin passed an ordinance that made it illegal to sell milk as pasteurized within the city unless pasteurized at an approved pasteurization plant within 5 miles of the city's central square. The Court threw out the ordinance on the ground that less restrictive alternatives to protect public health existed, such as inspecting distant milk sources and charging the producer the reasonable costs of such inspections. (*Dean Milk Co., supra*, at pp. 354-355.)

Accordingly, in this instance, the State will have to satisfy two requirements in order to preserve AB 1437 if enacted. First, it will have to establish that there is a public health justification for limiting the confinement of egg-laying hens as set forth in section 25990. This will prove difficult because, given the lack of specificity as to the confinement limitations; it will invariably be hard to ascribe any particular public health risk for failure to comply. To date, no regulations have been adopted to clarify section 25990. Even if such regulations existed the State would have to draw upon extensive scientific evidence to support the conclusory findings of the Legislature in regard to the spread of pathogens, specifically salmonella. While we have not researched the question, we doubt that the federal judiciary will allow the State to rely exclusively upon the findings of the Legislature, such as they are, to establish a public health justification for section 25990.

Second, the State will have to assert that the imposition of a criminal penalty for selling shell eggs produced by egg producers who have failed to comply with section 25990 is the least restrictive means to address the public health issues established by the evidence. To the extent the evidence is stronger, it will be in a more persuasive position, to the extent that it is weaker, less so. Given that a criminal prosecution is the most harsh form of a deterrent, it is possible that, even under a best case scenario, that a court would rule negatively. A court might well find that the overall adverse impact upon interstate commerce as a consequence of such intimidation would invalidate it, despite its lack of discrimination against out of state commerce. Pertinent evidence might include the overall percentage of eggs consumed in California, and the possible decline in the production and sales from other states that might result.

In regard to the second issue associated with criminal prosecutions, Terrance W. Flanagan of the The Flanagan Law Firm has highlighted them in a letter to the Governor on behalf of The Egg Farmers Association. He asserts that it is impossible for egg producers to establish that they are in compliance with section 25990, and, hence, also renders it impossible for anyone to sell eggs with the assurance that they are section 25990 compliant as required by AB 1437. In the absence of clarifying regulations, his argument has merit. Even though the California criminal courts permit a simplified form of pleading when it comes to alleging criminal offenses, it is doubtful whether it is possible to plead a violation of AB 1437 that fulfills the constitutional due process requirement of placing defendants on notice of the charges against them and thus enabling them to prepare a defense. (*In re Hess* (1955) 45 Cal 2d 171, 175.) Pleading in the language of the statute is not sufficient when the statute does not define the offense. (*In re Jamil H.* (1984) 158 Cal.App.3d 556, 560-561.)

A brief inquiry into the factual circumstances of *Jamil H.* provide some insight into this situation. In *Jamil H.*, a juvenile was charged with entering a school "without lawful business", but the juvenile petition did not identify the statutory prohibition that he intended to violate. Accordingly, the Court of Appeal ruled that the petition was too vague to enable him to prepare a defense against it. Here, any criminal prosecution would allege in the indictment or information that the seller had sold shell eggs produced in violation of section 25990, but there are no recognized standards, no safe harbor, in effect, so any such defendant would likewise be unable to prepare a defense. Such a defendant would be unable to understand the essential elements of the prosecution's case as constitutionally required. (*People v.*


*Swinney* (1975) 46 Cal App 3d 332.) Clearly, this is a rare circumstance, as most criminal prohibitions are readily understandable within the context of everyday life, but the rarity of it does not render it any less problematic. Flanagan also suggests that it is impossible to establish any standards for the implementation of section 25990 so as to render both egg producers and sellers legally compliant, and provide them with necessary notice. In the absence of any attempt to adopt standards through a publicly noticed regulatory approval process, this is a premature conclusion.

Lastly, there is the concern of retaliation through statutory enactments by other states. Given that individual states already possess the legal authority to protect public health and safety through reasonable measures that reach products and production processes in other states, it is not possible to quantify whether the enactment of AB 1437 creates an additional risk of such activity. There is always a chance that people and economic enterprises in states affected by AB 1437 may respond by seeking the adoption of measures that would adversely affect California eggs or other products, but they, too, must conform to the constraints of the commerce clause of the United States Constitution. Of course, even constitutionally permissible measures may create burdens that have not heretofore existed, but, as with Flanagan's assertion that it is not possible to establish regulatory standards of compliance for section 25990, the issue remains speculative.

## APPOINTMENTS

None.

## SUPPORT/OPPOSITION *(Verified as of 6/25/10)*

Support:   2nd Chance for Pets
Alpha Canine Sanctuary
Animal Acres Place
Animal Protection and Rescue League
Animal Welfare Advocacy
ASPCA
Avian Welfare Coalition
Bay Animal Hospital
Blackberry Farm
Bon Appétit Management Company
California Animal Association
Center for Food Safety
Center for Science in the Public Interest Community
Market Natural Foods
Compassionate Carnivores
Dr. Bauer's Advanced Wellness
East Bay Animal Advocates
Farm Animal Protection Project
Farm Sanctuary Finance Tree, Inc
G Town G Ranch

RJN 345

Green Star Solution
Here's Looking at You Baby
Humane Society of Louisiana
Humane Society of the United States
Veterinary Medical Association
Internal Medicine
Le Fort's Organic Crops
League of Humane Voters
Loving Touch Animal Massage
Marin Humane Society
Marin Vegetarian Education Group
Middleton Farm
Mt. Barnabe Farm
Natural Pet
Noah's Ark Veterinary Hospital
North Star Pet Assistance Orange County
People for Animals
PAW PAC
Paw Project Physicians
Committee for Responsible Medicine
Planning and Conservation League
Positively Pets!
Restaurant Soltan Banoo
Rocket Dog Rescue
Sausalito Animal Hospital
Sugar Beat Sweets
Tamalpais Pet Hospital
TCM, Inc.
The Grand Slam Diet.com
The New School of Cooking
Tree Axis
Turner's Portable Welding
Urban Cat Project
Vreseis Limited (organic farm)
World Society for the Protection of Animals
102 Individuals

Neutral:     Association of California Egg Farmers

Opposition: Egg Farmers Association

## ARGUMENTS

Pro:         Provides fair and equitable marketing standards in the California egg industry by
             requiring that all shell eggs sold in California are from non-confined egg-laying
             hens.

Without the "playing field leveling" proposed by 1437, other states may use Proposition 2 as a tool to lure California Egg Producers out of California

Con:    Approximately 35% of shell eggs consumed in California are imported from out-of-state, mostly from commercial cage production. Enactment of this bill could limit the volume of shell eggs imported for consumption.

There is no verification or regulatory process to assure that out-of-state eggs imported into California are from non-confined egg-laying hens.

Furthermore, there are outstanding legal questions regarding the constitutionality of this measure

## VOTES

**Senate**
Third Reading                          23-7          June 17, 2010
Food and Agriculture Committee         4-1           June 16, 2009

**Assembly**
Third Reading                          65-9          June 21, 2010
Third Reading                          65-12         May 26, 2009
Appropriations Committee               10-3          May 13, 2009
Agriculture Committee                  8-0           April 29, 2009

## LEGISLATIVE STAFF CONTACT

| Contact | Work |
|---|---|
| A.G. Kawamura, Secretary | 654-0433 |
| Greg Aghazarian, Deputy Secretary for Legislation | 654-0433 |
| Carla Sanchez, Legislative Manager | 654-0321 |

RJN - 347

Case 2:14-cv-00341-KJM-KJN   Document 37-2   Filed 04/09/14   Page 34 of 79

# ASSEMBLY SIGNING MESSAGE

To the Members of the California State Assembly:

I am signing Assembly Bill 1437 which would level the playing field for California's shell egg producers by requiring out-of-state producers to comply with the state's animal care standards.

Currently, greater than 90% of California produced eggs are from conventional caged systems. When Proposition 2 requirements are implemented in 2015, these producers will no longer be economically competitive with out-of-state producers. Without a level playing field with out-of-state producers, companies in California will no longer be able to operate in this state and will either go out of business or be forced to relocate to another state. Furthermore, this will result in a significant loss of jobs and reduction of tax revenue in California.

Sincerely,

Arnold Schwarzenegger

## ASSEMBLY VETO MESSAGE

To the Members of the California State Assembly:

I am returning Assembly Bill 1437 without my signature.

The provisions of AB 1437 fail to include standards for housing and space for egg-laying hens. Proposition 2 specifies that egg-laying hens may not be confined for a majority of the day in a manner that prevents the hen from lying down, standing up, fully extending their limbs, and turning around freely.

Due to the lack of specificity, AB 1437 is unenforceable. AB 1437 fails to address clear standards given that it is predicated upon provisions of Proposition 2

Sincerely,

Arnold Schwarzenegger

CHHS

Case 2:14-cv-00341-KJM-KJN   Document 7-1   Filed 04/09/14   Page 36 of 79

**CONFIDENTIAL-Government Code §6254(l)**

| Department/Board: | Author: | Bill Number: |
|---|---|---|
| Public Health | Huffman | AB 1437 |

| Sponsor: | Related Bill(s) | Chaptering Order (if known) |
|---|---|---|
| ☐ Admin Sponsored    Proposal No. | | ☐ Attachment |

Subject:
Shelled eggs: Sale for human consumption: compliance with animal care standards

## SUMMARY

Assembly Bill (AB) 1437 would prohibit, beginning January 1, 2015, the sale of shelled eggs for human consumption in California that are from hens housed in environments that do not meet the animal care standards set forth in the Prevention of Farm Animal Cruelty Act.

## RECOMMENDATION AND SUPPORTING ARGUMENTS

**SIGN** – AB 1437 implements Proposition 2 (Initiative of 2008 General Election) by prohibiting the sale of eggs laid by hens that were housed in environments that do not meet the animal care standards set forth. Some informal reports claim that food animals, such as egg-laying hens, are healthier and safer for human consumption if the animals are provided with at least a minimum accommodation of their natural behaviors and physical needs.

## PURPOSE OF THE BILL

The purpose of the bill is to protect California consumers from increased exposure to disease pathogens, including salmonella, by improving living conditions and overall health of egg-laying hens.

---

| Departments That May Be Affected | |
|---|---|
| California Department of Food and Agriculture | |

| ☐ New or Increased Fee | ☐ Governor's Appointment    ☒ State Mandate    ☐ Urgency Clause | ☐ Legislative Report |
|---|---|---|
| | ☐ Legislative Appointment | ☐ Regulations Required |

| Dept/Board Position | Agency Secretary Position |
|---|---|
| ☒ Sign | ☐ Sign |
| ☐ Veto | ☒ Veto |
| ☐ Defer to: | ☐ Defer to: |

| Director/Chair | Date | Agency Secretary | Date |
|---|---|---|---|
| | 23 June 2010 | | 6/15/10 |

RJN 350

Case 2:14-cv-00341-KJM-KJN   Document 37-2   Filed 04/09/14   Page 37 of 79

## ANALYSIS

Existing law:

- Prohibits the confinement of an egg-laying hen in situations where the hen does not have the ability to stand up, turn around, and spread her wings, pursuant to Health and Safety (H&S) Code, Sections 25990 to 25994.
- Establishes misdemeanor penalties for violation of the provisions of the H&S Code, Sections 25990 to 25994.

This bill would:

- Make it illegal, beginning January 1, 2015, to sell any shelled eggs for human consumption in California laid from hens that are not maintained in compliance with existing animal care standards.
- Specify penalties for violation of this legislation.

Discussion:

California passed Proposition 2, the Prevention of Farm Animal Cruelty Act (H&S Code, Sections 25990 to 25994), in 2008. Proposition 2 requires that, beginning January 1, 2015, egg-laying hens be confined only in ways that would allow them to lie down, stand up, fully extend their limbs and turn around freely. It was in part intended to improve the safety of shelled eggs based on some informal reports that the stress of intensive confinement would compromise immune systems of egg-laying hens and thus, make hens and their eggs more susceptible to infection by pathogens, such as *Salmonella*. This bill would implement Proposition 2 by prohibiting the sale of eggs laid by hens that were housed in environments that do not meet the animal care standards set forth in H&S Code, Section 25990 et Seq.

Past salmonellosis outbreaks were associated mostly with external fecal contamination of egg shells with *Salmonella*. According to the U.S. Centers Disease Control and Prevention, these types of outbreaks have became rare because of stringent procedures for cleaning and inspecting eggs which have been implemented since the 1970s. The current outbreaks of salmonellosis are different from the previous cases and are primarily related to the infection of hens themselves with *Salmonella enteritidis*, which lives in the intestinal tract of egg-laying hens and infects the ovaries before the egg shells are formed. Supporters of Proposition 2 claimed that giving egg-laying hens more space may prevent this type of salmonellosis by reducing the intestinal infection with *Salmonella enteritidis* via reducing the stress of intensive confinement. Scientific evidence does not definitively support this conclusion. Proposition 2 was passed by California voters in 2008 and this bill would simply implement that law.

This bill does not specifically designate any agency responsible for enforcing the bill's requirements. The author's office stated that it was their intent that, upon receiving complaints from the public, the State Attorney General or the District Attorney's offices would investigate the complaints and assess the penalties specified in this bill where appropriate.

## LEGISLATIVE HISTORY

AB 1437 implements the Prevention of Farm Animal Cruelty Act, which was passed by California voters in the November 2008 general election as Proposition 2. This bill seeks to

make the standards imposed on California egg producers applicable to all eggs sold in California for human consumption.

## PROGRAM BACKGROUND

CDPH's Food and Drug Branch (FDB) is responsible for assuring the safety of all foods produced, held for sale, or distributed in California. FDB has authority to embargo adulterated and/or misbranded foods and seek condemnation of the adulterated and/or misbranded foods. FDB conducts general inspections of food processors in California. FDB also works closely with the United States Food and Drug Administration on public health issues concerning food in interstate commerce.

## OTHER STATES' INFORMATION

No states currently prohibit the use of cages for egg-laying hens that do not meet the animal care standards as set forth in the Prevention of Farm Animal Cruelty Act (Proposition 2, 2008).

## FISCAL IMPACT

None

## ECONOMIC IMPACT

The cost of producing eggs in compliance with the requirements of this bill would be higher than that under the current practice. Thus, the cost of eggs to California consumers may be increased to some extent if this bill is enacted. Economic impact to egg producers would be proportionate to the size of their operations.

## LEGAL IMPACT

Unknown

## APPOINTMENTS

None

## SUPPORT/OPPOSITION

Support:
2nd Chance for Pets
Alpha Canine Sanctuary
Animal Acres Animal
Animal Place
Animal Protection and Rescue League
Animal Welfare Advocacy
ASPCA
Avian Welfare Coalition
Bay Animal Hospital
Blackberry Farm

RJN - 352

Bon Appetit Management Company
California Animal Association
Center for Food Safety
Center for Science in the Public Interest
Community Market Natural Foods
Compassionate Carnivores
Dr. Bauer's Advanced Wellness
East Bay Animal Advocates
Farm Animal Protection Project
Farm Sanctuary
Finance Tree, Inc
G Town G Ranch
Green Star Solution
Here's Looking at You Baby
Humane Society of Louisiana
Humane Society of the United States
Humane Society Veterinary Medical Association
Internal Medicine
Le Fort's Organic Crops
League of Humane Voters
Loving Touch Animal Massage
Marin Humane Society
Marin Vegetarian Education Group
Middleton Farm
Mt. Barnabe Farm
Natural Pet
Noah's Ark Veterinary Hospital
North Star Pet Assistance
Orange County People for Animals
PAW PAC
Paw Project
Physicians Committee for Responsible Medicine
Planning and Conservation League
Positively Pets!
Restaurant Soltan Banoo
Rocket Dog Rescue
Sausalito Animal Hospital
Sugar Beat Sweets
Tamalpais Pet Hospital
TCM, Inc.
The Grand Slam Diet.com
The New School of Cooking
Tree Axis
Turner's Portable Welding
Urban Cat Project
Vresels Limited (organic farm)
World Society for the Protection of Animals

102 Individuals

Opposition:
Association of California Egg Farmers
Sonoma County Farm Bureau

## ARGUMENTS

Pro:
- All shell eggs sold in California for human consumption would be laid from hens that are in compliance with animal care standards.

Con:
- The price of eggs may rise as a result of increased costs on egg producers.
- Exceeds requirements of Prop 2 by applying standards to other states.
- No scientific evidence to support assertion of salmonella prevention.
- Unclear ability of staff to effectively regulate the sale of eggs outside of the state.

## VOTES

|                                      | DATE     | RESULT | TALLY |
|--------------------------------------|----------|--------|-------|
| Assembly Concurrence                 | 6/21/10  | Pass   | 65-9  |
| Senate Floor                         | 6/17/10  | Pass   | 23-7  |
| Senate Policy (Food & Agriculture)   | 6/16/09  | Pass   | 4-1   |
| Assembly Floor                       | 5/26/09  | Pass   | 65-12 |
| Assembly Fiscal                      | 5/13/09  | Pass   | 10-3  |
| Assembly Policy (Agriculture)        | 04/29/09 | Pass   | 8-0   |

## LEGISLATIVE STAFF CONTACT

| Contact                                    | Work     |
|--------------------------------------------|----------|
| Kim Belshé, CHHSA Secretary                | 654-3341 |
| Scott Carney, CHHSA Legislative Director   | 653-1975 |
| Dr. Mark Horton, CDPH Director             | 440-7444 |
| Kevin Reilly, CDPH Chief Deputy Director   | 558-1726 |
| Monica Wagoner, CDPH Legislative Director  | 440-7513 |

RJN - 354

## VETO MESSAGE

To the Members of the California State Assembly:

I am returning Assembly Bill 1437 without my signature.

This bill would prohibit the sale of shelled eggs in California after January 1, 2015, if they are the product of an egg-laying hen that was confined on a farm or place that was not in compliance with animal care standards set forth under the Prevention of Farm Animal Cruelty Act. While I strongly support stringent requirements that prevent animal cruelty, scientific evidence does not definitively support the conclusion that giving egg laying hens more space will reduce Salmonellosis. Furthermore, existing practices and standards employed by California egg producers provide sufficient protections for the animals in their care. Requiring California egg producers to adhere to animal housing requirements that producers in other states would not have to meet, would put them at an economic disadvantage and ultimately lead to a reduction in egg producers within California, and higher cost for eggs to consumers.

Sincerely,

**AMENDMENT DATE:** March 25, 2010    **BILL NUMBER:** AB 1437
**RECOMMENDATION:** Sign    **AUTHOR:** J. Huffman

**ASSEMBLY:** 65/9
**SENATE:** 23/7

### BILL SUMMARY: Shelled Eggs: Sale for Human Consumption: Compliance

This bill would prohibit, effective January 1, 2015, the sale of a shelled egg for human consumption if it is the product of an egg-laying hen that was confined on a farm or place that is not in compliance with current animal care standards. Those found to be in violation would be guilty of a misdemeanor, punishable by a fine not to exceed $1,000, or by imprisonment in a county jail not to exceed 180 days, or by both the fine and imprisonment.

### FISCAL SUMMARY

The Department of Public Health and the Department of Food and Agriculture do not estimate any additional costs to implement this bill as it does not specify any additional workload for state entities to implement its provisions.

### COMMENTS

The Department of Finance recommends this bill be signed because it would not impose _ y additional costs on the state.

Current law prohibits a person from tethering or confining any covered animal, on a farm, for all or the majority of any day, in a manner that prevents the animal from (a) lying down, standing up, and fully extending his or her limbs, and (b) turning around freely.

This bill would prohibit, effective January 1, 2015, the sale of shelled eggs for human consumption if they are produced from confined egg-laying hens and would make violations of these provisions a crime punishable by a fine not to exceed $1,000, or by imprisonment in a county jail not to exceed 180 days, or by both the fine and imprisonment. The bill also specifies that its provisions are severable from other provisions of the bill or existing law if any provisions of the bill or its application are found to be invalid or unconstitutional.

| Code/Department Agency or Revenue Type | SO LA CO RV | PROP 98 | FC | (Fiscal Impact by Fiscal Year) (Dollars in Thousands) | | | | Fund Code |
|---|---|---|---|---|---|---|---|---|
| | | | | 2009-2010 | FC | 2010-2011 FC | 2011-2012 | |
| 4265/Public Health | SO | No | | ---------------- No/Minor Fiscal Impact ---------------- | | | | 0001 |
| 8570/Food & Ag | SO | No | | ---------------- No/Minor Fiscal Impact ---------------- | | | | 0001 |

| Analyst/Principal (0551) P. Nubers | Date 6-25-10 | Program Budget Manager Lisa Ann L. Mangat | Date 6/25/10 |
|---|---|---|---|
| Department Director | Date | | 6/25/10 |

ENROLLED BILL REPORT     Form DF-43 (dev 03/05 Pink)


AB 1437
(as amended May 26, 2010)

I am returning Assembly Bill No. 1437 without my signature.

This bill would prohibit the sale in California of a shelled egg for human consumption if it is the product of a hen that was confined in a manner that violates the provisions of Proposition 2, which was passed by voters in November 2008. While the bill's intentions are sound, approximately 35 percent of shelled eggs consumed in California are imported from out of state. However, there is no verification or regulatory process to assure that eggs imported into California meet the requirements of this bill. Further, this bill could limit the volume of shelled eggs imported for consumption.

For these reasons, I am unable to sign this bill.

Sincerely,


Arnold Schwarzenegger

STATE CAPITOL
P.O. BOX
SACRAMENTO, CA
(916) 319 2006
FAX (916) 319 2106

DISTRICT OFFICE
3501 CIVIC CENTER DRIVE, SUITE 412
SAN RAFAEL, CA 94903
(415) 479 4920
FAX (415) 479 2123

http://democrats.assembly.ca.gov/members/a06

**Assembly**
**California Legislature**



**JARED HUFFMAN**
ASSEMBLYMEMBER, SIXTH DISTRICT

COMMITTEES
WATER, PARKS AND
WILDLIFE
BUDGET
NATURAL RESOURCES
UTILITIES AND COMMERCE

BUDGET SUBCOMMITTEE NO.3
ON RESOURCES

June 25, 2010

The Honorable Arnold Schwarzenegger
Governor, State of California
Attn: Legislative Affairs; Request for Signature
State Capitol
Sacramento, CA 95814

Dear Governor Schwarzenegger:

I respectfully request that you sign into law AB 1437, which will require all shelled (whole) eggs sold in California to meet the animal care standards established by the voters under Proposition 2 (2008) for the following reasons:

**AB 1437 is consistent with what California voters want.** In November 2008, California voters overwhelmingly supported Proposition 2 by a 63.5 percent margin. Proposition 2 was favored by voters in 47 of California's 58 counties and received more "yes" votes than any other citizen initiative in California history. AB 1437 will ensure that the hens that provide our shelled eggs are raised to the same animal welfare standards to meet the expectations for animal care and food safety of the California consumer.

**There is a compelling state interest.** AB 1437 effectuates compelling state interests in animal welfare, promotes public health and safety, and meets the standards for eggs that California voters expect.

**It represents bi-partisan support.** With nearly unanimous support in the Assembly, and bipartisan support in the Senate, AB 1437 represents an issue that both sides of the aisle came together on to support.

**No state costs.** AB 1437 has no cost to the State of California. Both the Assembly and Senate Appropriations Committees cited negligible costs. And there is no cost pressure on any state agency to implement this bill.

AB 1437 will require that all shelled eggs sold in California as of January 1, 2015 come from hens that are able to stand up, turn around, and spread their wings. The measure is supported by the Humane Society of the United States, Sierra Club, Center for Food Safety, Center for Science in the Public Interest, and hundreds of Californians.

I respectfully request your signature on this important and timely piece of legislation.

Sincerely,

**JARED HUFFMAN**
**Assemblymember, 6th District**

RJN - 358



**CALIFORNIA GROCERS ASSOCIATION**

www.cagrocers.com

**President & CEO**
Ronald Fong

**OFFICERS**

**Chairman of the Board**
George Frahm
Stater Bros. Markets
San Bernardino

**First Vice Chair**
Jim Amen
Super A Food-, Inc.
City of Commerce

**Second Vice Chair**
Mike Silveira
Save Mart Supermarkets
Modesto

**Treasurer**
John Quinn
Food 4 Less-Stockton/
Times Supermarkets
Stockton

**Secretary**
Mike Stigers
PW Supermarkets, Inc.
San Jose

**Past Chair**
Bob Ling
Unified Grocers, Inc.
Commerce

July 13, 2010

Honorable Arnold Schwarzenegger
Governor, State of California
State Capitol, First Floor
Sacramento, CA   95814

**RE:     AB 1437 (Huffman) – VETO Request**

Dear Governor Schwarzenegger,

I write on behalf of the California Grocers Association (CGA) and its member companies to respectfully request your veto of AB 1437 (Huffman).  The measure seeks to outlaw the sale of any "shelled egg," produced in-state or out-of-state, where the producer has not complied with the provisions of California's Prevention of Farm Animal Cruelty Act (Proposition 2).  As you may be aware, there is currently great confusion regarding what constitutes compliance with Proposition 2 on the part of egg farmers and putting grocery stores and their employees in the position of making independent determinations regarding producer compliance is untenable.

In a previous amended version, the bill would have created certain standards which would have provided need guidance to the commercial egg industry.  However, in the May 26, 2010 version, those proposed standards were removed and the bill merely prohibits sale of any shelled egg that is produced in conditions that do not meet the standards of Proposition 2.  Further, the bill subjects any person who violates the prohibition to a misdemeanor charge.

Significant confusion exists regarding not only compliance with Proposition 2 itself, but with the penalty provisions of the bill.  How will the store that purchases eggs for sale and the clerk who ultimately sells the egg to the public know that the egg is in compliance with Proposition 2, especially if the producer is located out-of-state?  If a grocery clerk sells one egg which is not in compliance with Proposition 2, is he or she subject to prosecution?  What if the clerk sells a dozen eggs, is he or she now subject to a twelve count misdemeanor charge?

Until underlying issues regarding Proposition 2 are resolved for producers and until issues relating to liability for grocers and our employees are resolved, **AB 1437 should not become law.  We urge your veto of this measure when it reaches your desk.** Please do not hesitate to contact me should you have any question regarding our concern with this measure.

Sincerely,

Keri Askew Bailey
Vice President, Government Relations

1415 I Street, Suite 450, Sacramento, CA 95814  Tel: 916/448-3545   Fax: 916/448-2793
1020 North Lake Street, Burbank, CA 91502  Tel: 818/441-0093  Fax: 916/448-2793

RJN - 359

July 1, 2010



**CALIFORNIA
RESTAURANT
ASSOCIATION**

Governor Arnold Schwarzenegger
State Capitol Capitol Building
Sacramento, CA 95814

RE. Veto Request: AB 1437 (Huffman)

Dear Governor Schwarzenegger:

The California Restaurant Association (CRA), on behalf of the interests of its more than 22,000 members, is opposed to AB 1437 (Huffman) which prohibits shelled eggs from being sold in California if they are produced by an egg-laying hen that was confined in a cage or place that is not in compliance with Proposition 2. The CRA is concerned that AB 1437 could result in increased food and safety risks, restrict availability of eggs in California and increase the price of eggs to restaurateurs at the worst possible time. We respectfully ask that you veto AB 1437.

Studies have found cage-free environments cause hens to get sick and injured more often and die at about twice the rate of birds in cages. Furthermore, of concern is the increased cost of eggs for restaurateurs that would arise from AB 1437. The restaurant industry is one of the largest private employers in California, providing work for more than eight percent of those employed in the state. Even in a good economy, California restaurateurs realize narrow profit margins: on average, for every dollar of sales a restaurant brings in, it keeps less than a nickel in profits. With the current fiscal crisis, restaurateurs are facing even more extreme economic hardships. Factors such as a failing economy, the increased sales tax, a high minimum wage, the higher costs of materials/products and the ever declining amount of people who eat out, make it even more difficult to make ends meet. To remain competitive and keep business alive, restaurateurs cannot simply raise prices and must find ways to absorb increased costs given decreased margins.

While we understand that the author has been meeting with interested parties in an attempt to address concerns, we must oppose AB 1437 in its current form as it was recently amended to its original introduced form with no substantial changes.

For these and other reasons, the CRA OPPOSES AB 1437 and we respectfully request that you veto the bill.

Sincerely

Jot Condie
President + CEO

Lara Diaz Dunbar
Senior Vice President
Government Affairs + Public Policy

PREPARE TO BE INSPIRED.

621 Capitol Mall  Suite 2000  Sacramento, CA 95814  T 800.765.4842  F 916.447.6182  www.calrest.org

Ch. 51 (2010)

**World Society for the Protection of Animals**
*The world's largest alliance of animal welfare organizations*



July 1, 2010

Governor Arnold Schwarzenegger
State Capitol Building
Sacramento, CA 95814

Dear Governor Schwarzenegger,

On behalf of the World Society for the Protection of Animals (WSPA), the world's largest alliance of animal welfare organizations with hundreds of thousands of supporters in California and worldwide, I am writing to urge you to sign into law Assembly Bill 1437 which has already passed the California legislature with wide margins and bipartisan support.

The overwhelming majority of California's residents are concerned about the humane treatment of animals raised for food. In November 2008, nearly 64 percent of the state's voters passed the Prevention of Farm Animal Cruelty Act (Proposition 2) with more votes than any citizen initiative in California's history. This law allows farm animals more space and freedom to express their natural behaviors and ends some of the most cruel and inhumane confinement practices. Assembly Bill 1437 simply requires all whole (shell) eggs sold in California for human consumption meet these same animal welfare standards for laying hens, regardless of where they were produced, by January 2015.

Improving the treatment of laying hens and reducing stress on the animals has been shown to have a positive impact on food safety and human health. Studies have shown that laying hens subjected to stress are more likely to have higher levels of pathogens such as *Salmonella* in their intestines and poor conditions expose consumers to increased risk of foodborne illnesses from these pathogens.

Forty million Californians purchase and consume billions of eggs each year. The impacts of Assembly Bill 1437 on the welfare of laying hens will be unprecedented and your signing of this bill into law would send a strong message in support of California voters' concerns for the humane treatment of farm animals.

I again urge you, on behalf of WSPA, to sign Assembly Bill 1437 into law. Please don't hesitate to contact me with any questions you may have.

Sincerely,

Sharanya Krishna Prasad
U.S. Programs Manager
World Society for the Protection of Animals (WSPA)

89 South Street  Suite 201, Boston, MA 02111 USA
Phone: 1-800-883-9772   Fax: 617-737-4404
E-mail: wspa@wspausa.org   Website: www.wspa-usa.org



# UNITED ANIMAL NATIONS

1722 J Street, Suite 11 • P.O. Box 188890 • Sacramento, CA 95818
tel: (916) 429-2457 • fax: (916) 429-2456 • e-mail: info@uan.org • web: www.uan.org

June 29, 2010

Governor Arnold Schwarzenegger
State Capitol
Sacramento, CA 95814
Fax: (916) 558-3160

VIA FACSIMILE

RE: Support for AB 1437, requiring eggs sold in California to meet specific animal welfare standards

Dear Governor Schwarzenegger,

Founded in 1987, United Animal Nations (UAN) is an animal protection organization with more than 40,000 supporters nationwide, including 9,000 in California. On behalf of these supporters, I urge you to sign AB 1437 – a bill that would require all whole eggs sold in California to come from hens not confined to tiny battery cages.

UAN's primary mission is to bring animals out of crisis and into care, and we have a number of programs that address animal welfare. For example, our volunteer-driven Emergency Animal Rescue Service (EARS), provides temporary shelter for animals displaced by natural disasters and criminal seizures. In 2005, we helped remove hundreds of hens from a traditional egg farm that used battery cages and saw first-hand the unsafe, unsanitary and inhumane in which these birds live: in a shed longer than a football field, small wire cages were stacked three high. Six to nine hens were in each cage, making it impossible for them to spread their wings, turn around or engage in any natural behaviors like nesting or perching. The birds on the bottom row were brown because they were covered with feces from the hens above them.

Studies of battery cage hens have shown that calcium depletion from egg production and lack of exercise can lead to lead to broken bones and disease. Hens in battery cages can also experience elevated stress and aggression levels, boredom and frustration because they are unable to perform their natural behaviors. AB 1437 would reduce some of the physical and mental suffering that laying hens experience.

AB 1437 can improve food safety as well. Eggs from hens who are treated humanely and don't live amid filth and disease are healthier and safer for human consumption. In fact, research has shown that the risk of salmonella is higher in battery cage eggs in comparison to eggs from hens living in less intensive confinement.

AB 1437 clearly reflects the will of the people of California and the legislature. The measure overwhelmingly passed the Assembly by a vote of 65 to 9 and the Senate by a vote of 23 to 7. Voters passed Proposition 2 in November 2008 to phase out production of eggs from hens crammed into tiny cages, and this legislation would apply the standards in that ballot measure to the sale of all whole eggs in the state.

AB 1437 would improve animal welfare, food safety and public health. On behalf of UAN and our California supporters, I encourage you to sign this legislation into law.

Sincerely,

Alexis Raymond
Communications Director

*Bringing animals out of crisis and into care*





Governor Arnold Schwarzenegger
State Capitol Building
Sacramento, CA 95814
Phone: 916-445-2841
Fax: 916-558-3160

**Subject: Please VETO AB 1437 (Huffman) Shelled eggs: sale for human
consumption: compliance with animal care standards**

June 24, 2010

Dear Governor,

The California Animal Voters Alliance (CAVA) urgently requests a meeting with you
regarding a bill which is now on your desk: Assembly Bill 1437 (Huffman) Shelled
eggs: sale for human consumption: compliance with animal care standards. CAVA
requests that you VETO this bill immediately to protect California and its' citizens from
the new interstate racketeering opportunity it will create for the Humane Society of the
United States (HSUS).

The Humane Society of the United States (HSUS) created, proposed and has been the
primary organization promoted AB 1437. Why? Follow the money: *HSUS stands to
financially profit tremendously through out-of-state facility inspection fees if this bill is
implemented.*

Please consider this, Governor: if AB 1437 becomes law there *must* be interstate
inspectors to certify that shelled eggs produced outside the state and sold in California
come from legally acceptable egg production facilities.

> **The HSUS already has organizations in place – and may create more – which
> provide the stamp of 'humane production facility' *for a fee*. Proposition 2
> (2008) also will require facility inspections – which will also be performed by
> HSUS' inspection arms *for a fee*. Any way you look at it, HSUS stands to
> profit tremendously from the implementation of AB 1437 and Proposition 2.**

1

RJN - 363

HSUS is also the *only* non-government organization which is ready *today* to provide out-of-state egg production facility inspectors if AB 1437 becomes law, just as it will for Proposition 2 egg production site inspections.

CAVA has documentation for you regarding these HSUS 'humane production certification' programs, HSUS' profiteering, and the current federal RICO indictment against HSUS for witness payments that recently caused a major court case to be dismissed. Again, CAVA requests that you **VETO and DO NOT SIGN AB 1437, and** asks for a meeting before June 30th to present documentation backing all the above statements to you personally. Thank you.

Sincerely,

Diane Amble
San Francisco Director
California Animal Voters Alliance ~ CAVA ~ an IRS section 527 PAC[1]
160 10th Street
San Francisco, California 94103
1-650-296-2169
http://www.cavotersalliance.com/



**ASPCA**

A. Buckley, Esq.
Senior Director, Government Relations
P.O. Box 48
Pismo Beach, CA 93448

info@aspca.org
tel. 805-474-4000
fax 805-474-5740
www.aspca.org

June 23, 2010

Governor Arnold Schwarzenegger
State Capitol Building

RE: Letter in Support of AB 1437, Egg Sales

Dear Governor Schwarzenegger:

On behalf of the American Society for the Prevention of Cruelty to Animals (ASPCA) and our 155,000 California members and donors in the State of California, I am writing to express our support for AB 1437.

This bill will prohibit the sale of a shelled egg for human consumption if it is the product of an egg-laying hen that was confined on a farm or place that is not in compliance with those animal care standards set forth in Proposition 2, an initiative overwhelmingly passed by the voters in November 2008 specifying farm animal treatment standards.

Over 60 percent of American households include companion animals; this is more than the percentage of households with children. More and more, we see that people view the care and treatment of animals through the lens of the bond they share with their own pets. Although many pet owners may in their own minds separate farm animals from companion animals such as cats and dogs, it is evident that people are becoming increasingly aware of the sentient nature of farm animals. There is a greater interest in the food we buy, how it's produced, and how it impacts the environment.

AB 1437 is a commonsense measure following the passage of Proposition 2. The ASPCA respectfully urges the members of the Assembly Agriculture Committee to support this humane legislation.

Sincerely,

Jill A. Buckley, Esq.
Senior Director Government Relations

WE ARE THEIR VOICE.

RJN - 365

# Turlock Dairy & Refrigeration, INC.

P. O. Box 1530 • Turlock. California 95381-1530 • Phone (209) 667-MILK • FAX (209) 667-6484

June 15, 2010

The Honorable Arnold Schwarzenegger, Governor
The State of California
State Capitol, 1 st Floor
Sacramento, CA 94815

Re: AB 1437 (Huffman) Support

Dear Governor Schwarzenegger:

Thank you for your continued support of small business and agriculture in California. As one of your strong supporters, I am writing to encourage your signature on AB 1437 (Huffman). This bill will ensure that all eggs sold in California meet the same high consumer and animal welfare requirements established by Proposition 2.

Proposition 2 was passed by the voters in November 2008. It establishes a performance standard for each enclosure and hen that every egg produced in California must meet. The California consumer expects all eggs to be raised to these same stringent requirements. AB 1437 will ensure that these consumer expectations and animal welfare standards are met by all farmers producing eggs to be sold in California. It is nondiscriminatory because egg farmers from all states must meet the same requirements.

Agriculture, including egg and livestock production, is an important industry throughout California. Our company is located in Turlock, California, in the heart of the San Joaquin Valley. The valley has been hit hard by unemployment, foreclosures and the lack of economic growth. One bright spot has been our agricultural industry including egg production.

My family, and our company, has been a strong supporter of yours throughout the years and you have shown strong support and leadership for both animal welfare laws and agriculture. AB 1437 offers an opportunity to support both. I strongly encourage your signature of AB 1437 (Huffman). This will help meet California's consumer expectations and retain economic activity within California.

Sincerely,

Matt Bruno
President & CEO

**ECOLAB**

**RcuMatic**

```
--------------------------------------------------------------
|SENATE RULES COMMITTEE              |          AB 1437|
|Office of Senate Floor Analyses     |                 |
|1020 N Street, Suite 524            |                 |
|(916) 651-1520        Fax: (916)    |                 |
|327-4478                            |                 |
--------------------------------------------------------------
```

THIRD READING

Bill No:   AB 1437
Author:    Huffman (D), et al
Amended:   5/26/10 in Senate
Vote:      21


SENATE FOOD & AGRICULTURE COMMITTEE :  4-1,  6/16/09
AYES:  Florez, Maldonado, Hancock, Pavley
NOES:  Hollingsworth

SENATE APPROPRIATIONS COMMITTEE :  Senate Rule 28.8

ASSEMBLY FLOOR :  65-12, 5/26/09 - See last page for vote


SUBJECT :   Shelled eggs:  sale for human consumption:
compliance with
               animal care standards

SOURCE :    Author


DIGEST :   This bill prohibits selling shelled eggs for
human consumption in California produced by egg-laying hens
on farms not in compliance with animal care standards.

ANALYSIS :    Existing law prevents any person from
tethering or confining, for all or a majority of any day,
animals, specifically pigs during pregnancy, calves raised

for veal, or egg-laying hens, in such a way that prevents
the animal from lying and standing, fully extending limbs,
and turning around completely.  This begins on January 1,
2015.

**CONTINUED**

AB 1437
Page

2

This bill:

1. Prohibits shelled eggs from being sold for human
   consumption in California if the farm or location for
   production is not in compliance with California animal
   care standard beginning January 1, 2015.

2. Allows for a fine not to exceed $1,000 or imprisonment in
   a county jail not to exceed 180 days or by both the fine
   and imprisonment.

Comments

In November 2008, voters passed Proposition 2, which
addressed confinement of farm animals. The law requires
that certain farm animals, including egg-laying hens, have
room to move freely.

According to the author's office, requiring all eggs sold
for human consumption in California to conform to the
animal care standards will protect California's consumer's
health and welfare.  Reports cited by the author state that
egg-laying hens subjected to stress have a greater chance
of carrying bacteria or viruses, thus having a greater
chance of exposing consumers to food borne bacteria and
viruses.  Some supporters stated this bill will level the
playing field for California egg producers to remain
competitive with out-of-state egg producers.

California has a history of establishing animal welfare
standards for products consumed here.  The Legislature
passed SB 1520 (Burton), Chapter 904, Statutes of 2004,
which banned the sale of foie gras by prohibiting the sale
in California of a product if it is the result of force

RJN  368

feeding a bird for the purpose of enlarging the bird's
liver beyond normal size.

**FISCAL EFFECT** :    Appropriation:  **No**    **Fiscal Com.:**    **Yes**
Local:  Yes

**SUPPORT** :    (Verified  6/16/10)

2nd Chance for Pets

3

Alpha Canine Sanctuary
Animal Acres Animal
Animal Place
Animal Protection and Rescue League
Animal Welfare Advocacy
ASPCA
Avian Welfare Coalition
Bay Animal Hospital
Blackberry Farm
Bon App?tit Management Company
California Animal Association
Center for Food Safety
Center for Science in the Public Interest
Community Market Natural Foods
Compassionate Carnivores
Dr. Bauer's Advanced Wellness
East Bay Animal Advocates
Farm Animal Protection Project
Farm Sanctuary
Finance Tree, Inc
G Town G Ranch
Green Star Solution
Here's Looking at You Baby
Humane Society of Louisiana
Humane Society of the United States
Humane Society Veterinary Medical Association
Internal Medicine
Le Fort's Organic Crops
League of Humane Voters

Loving Touch Animal Massage
Marin Humane Society
Marin Vegetarian Education Group
Middleton Farm
Mt. Barnabe Farm
Natural Pet
Noah's Ark Veterinary Hospital
North Star Pet Assistance
Orange County People for Animals
PAW PAC
Paw Project
Physicians Committee for Responsible Medicine
Planning and Conservation League
Positively Pets!
Restaurant Soltan Banoo

AB 1437
Page

4

Rocket Dog Rescue
Sausalito Animal Hospital
Sugar Beat Sweets
Tamalpais Pet Hospital
TCM, Inc.
The Grand Slam Diet.com
The New School of Cooking
Tree Axis
Turner's Portable Welding
Urban Cat Project
Vreseis Limited (organic farm)
World Society for the Protection of Animals

**OPPOSITION** :   (Verified  6/16/10)

California Restaurant Association

**ARGUMENTS IN SUPPORT** :   Proponents state that this bill
will ensure standardized basic animal welfare standards for
the production of shelled eggs consumed in California.
While there are currently similar efforts to Proposition 2
in other states across the nation, this bill will assure
that all eggs consumed in California are produced by hens

RJN 370

raised according to animal welfare standards that meet the
expectations for animal care and food safety of the
California consumer. Proponents point to the United Egg
Producers cage-free standards to provide a blueprint for
compliance with this bill and Proposition 2 welfare
standards. Further, reports cited by proponents of the
bill state that egg-laying hens subjected to stress are
more likely to have higher levels of pathogens in their
intestines and that poor conditions increase the likelihood
that consumers will be exposed to higher levels of
food-borne pathogens. Therefore, proponents state that
this bill also addresses a health and food safety issue
with California eggs which they feel is not in conflict
with the interstate commerce clause.

**ARGUMENTS IN OPPOSITION** :     (No letter on file).


**ASSEMBLY FLOOR** :
AYES:  Adams, Ammiano, Arambula, Beall, Bill Berryhill, Tom
Berryhill, Blakeslee, Block, Blumenfield, Brownley,

**AB 1437**
**Page**

5

Buchanan, Caballero, Charles Calderon, Carter, Chesbro,
Conway, Cook, Coto, Davis, De La Torre, De Leon,
Emmerson, Eng, Evans, Feuer, Fletcher, Fong, Fuentes,
Fuller, Furutani, Galgiani, Gilmore, Hall, Hayashi,
Hernandez, Hill, Huber, Huffman, Jones, Krekorian, Lieu,
Bonnie Lowenthal, Ma, Mendoza, Monning, Nava, Nestande,
Niello, Nielsen, John A. Perez, V. Manuel Perez,
Portantino, Price, Ruskin, Salas, Saldana, Skinner,
Smyth, Solorio, Swanson, Torlakson, Torres, Torrico,
Tran, Yamada
NOES:  Anderson, DeVore, Gaines, Garrick, Hagman, Harkey,
Jeffries, Knight, Logue, Miller, Silva, Villines
NO VOTE RECORDED:  Duvall, Audra Strickland, Bass


TSM:nl  6/16/10   Senate Floor Analyses

RJN - 371

File Item #85
AB 1437 (Huffman)
Oppose

**Assembly Floor: 65-12 (5/26/09)**
(AYE: Adams, B. Berryhill, T. Berryhill, Blakeslee, Conway, Emmerson,
Fletcher, Fuller, Gilmore, Nestande, Niello, Nielsen, Smyth, Tran; NO:
Anderson, DeVore, Gaines, Garrick, Hagman, Harkey, Jeffries, Knight, Logue,
Miller, Silva, Villines; ABS: Duvall, A. Strickland)
**Senate Food and Agriculture: 4-1 (6/16/09)**
(AYE: Maldonado; NO: Hollingsworth)
**Senate Appropriations: (Senate Rule 28.8)**
Vote requirement: 21
Version Date: 05/26/2010

---

**Quick Summary**
Prohibits the importation and sale of eggs that do not comply with Proposition
2's standards.

Among other provisions, Proposition 2 prohibits the confinement of farm
animals such that they are unable to lie down, stand up, turn around, and
fully extend their limbs. The industry acknowledges that Prop 2 is now the law
of the land, but would like clarification as to how the initiative's
vague wording will be enforced. This measure does not address that issue.

**Impact on Jobs:**
Arguably, this bill will keep the state's egg industry competitive within
California thereby protecting California jobs, however, other businesses and
industries involved in the transportation, storage, processing, and sale or
would otherwise depend on the importation and sale of eggs may be negatively
affected.

**Fiscal Effect**

**NO STATE COSTS/POTENTIAL MINOR REVENUE INCREASES**

This measure is estimated to impose no new state costs and potential minor
revenue increases from fines.

*Fiscal Consultant: Kirk Feely*

**Analysis**
**Arguments in Support:**
This measure applies Proposition 2 standards to any eggs sold in California.
Arguably this helps keep the in-state egg industry competitive with the rest of

the country as far as California's market is concerned, and for proponents of Proposition 2 it will ban small "battery cages" on any farm that wishes to sell its product into California.

**Arguments in Opposition:**
As written, Prop 2 and this measure establish criminal penalties on farmers based upon unclear standards of keeping hens. Proposition 2 provides no clear guidance as to what size cages or enclosures are acceptable. Egg farmers stand willing to abide by a standard and change their practices, as long as they know what that standard is.

This measure carried a "None" recommendation in the Assembly on the basis that the industry was still negotiating with the author. Those negotiations have not borne any results, and as a result the Association of Egg Farmers has now gone in opposition.

Clear standards are important, particularly as the sponsors of Prop 2 now claim their initiative prohibits *any enclosure* and only allows free-range. This is plainly false, as Section 25990 clearly prohibits confinement only "for a majority of the day" in a manner that prevents lying down, standing up, full extension of limbs, and the ability to turn around. These objectives theoretically can be met with other enclosures such as larger cages or "colony cages."

To the extent that other states have more reasonable regulations on egg production, it will benefit California consumers to allow out-of-state eggs into California's market to compete with eggs regulated under Prop 2 - even if, as forecast, it drives California egg farms out of business.

Regardless, this measure will not apply to Canada and Mexico as they are protected under the NAFTA agreement.

**Other Issues:**
There is a constitutional issue regarding restrictions on production of eggs produced out-of-state. The Interstate Commerce Clause, Art. II, Section 10 of the US Constitution, prohibits individual states from laying "any imposts or duties on imports or exports." The courts have interpreted that provision to allow certain restrictions among states where there is a compelling state interest and the restriction is not discriminatory or essentially protectionist in nature. There are existing prohibitions against agricultural products from out-of-state, such as the ban on foie gras from five years ago.

**Digest**
Specifies that no shelled egg shall be sold in California if it is produced on a farm or place not in compliance with Proposition 2 standards. Provides that any person in violation of this chapter is guilty of a misdemeanor and subject

RJN - 373

to a fine up to $1,000 or by imprisonment in county jail up to six months.

Provides this chapter is in addition to existing law and shall not be construed to limit any state law or regulation protecting animal welfare or limit the ability of local governments to adopt and enforce their own animal welfare ordinances.  Provides for severability of these provisions.

## Background
**Proposition 2 (Sections 25990-25994 of the Health and Safety Code)** prohibits the confinement of farm animals in a manner that does not allow them to turn around freely, lie down, stand up, and fully extend their limbs.  It further bans dense confinement for egg-laying poultry, gestation crates for sows and veal crates for veal calves, and imposes a misdemeanor penalty and a fine of up $1,000 or imprisonment in county jail for up to six months for violations.  Proposition 2 passed with the approval of 63% of voters.

**SB 1520 (Burton), Chapter 904, Statutes of 2004** banned the sale of foie gras by prohibiting the sale in California a product if it is the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal size. SB 1520 passed the Assembly 46-28 on 8/24/04 (AYE: Maldonado; NO: Benoit, Cogdill, Cox, Dutton, Harman, Runner, Strickland, Wyland) and the Senate 21-12 on 8/26/04 (NO: All Republicans).

## Support & Opposition Received
Support: Humane Society of the United States; Community Market; Farm Animal Protection Project; Center for Science in the Public Interest; ASPCA; Sierra Club; World Society for the Protection of Animals; Physicians Committee for Responsible Medicine; Farm Sanctuary

Opposition: Association of California Egg Farmers

Senate Republican Office of Policy/ *Steven McCarthy/ Scott Chavez*

RJN - 374

The documents following this page were
photocopied from the files of the

Attorney General's
Law Library

RJN - 375

CONCURRENCE IN SENATE AMENDMENTS
AB 1437 (Huffman)
As Amended  May 26, 2010
Majority vote

ASSEMBLY:    65-12   (May 26, 2009)          SENATE:    23-7    (June 17, 2010)

Original Committee Reference:  AGRI.

SUMMARY:  Prohibits selling shelled eggs for human consumption in California produced by egg-laying hens on farms not in compliance with California animal care standards.

The Senate amendments are technical.

EXISTING LAW prevents any person, beginning January 1, 2015,  from tethering or confining, for all or a majority of any day, animals, specifically pigs during pregnancy, calves raised for veal, or egg-laying hens, in such a way that prevents the animal from lying and standing, fully extending limbs, and turning around completely.  (Health and Safety Code Section 25900 et seq.)

FISCAL EFFECT:  According to the Senate Appropriations Committee, pursuant to Senate Rule 28.8, negligible state costs.

AS PASSED BY THE ASSEMBLY, this bill was substantially similar to the version passed by the Senate.

COMMENTS:  In November 2008, voters passed Proposition 2, which addressed confinement of farm animals.  The law requires that certain farm animals, including egg-laying hens, have room to move freely.  This bill will require out-of-state egg producers to comply with California animal care standards

According to the author, requiring all eggs sold for human consumption in California to conform to the animal care standards will protect California's consumer's health and welfare.  Reports cited by the author state that egg-laying hens subjected to stress have a greater chance of carrying bacteria or viruses, thus having a greater chance of exposing consumers to food borne bacteria and viruses. Some supporters stated this bill will level the playing field for California egg producers to remain competitive with out-of-state egg producers.


Analysis Prepared by:   Victor Francovich / AGRI. / (916) 319-2084


                                                        FN: 0004827

ASSEMBLY THIRD READING
AB 1437 (Huffman)
As Introduced February 27, 2009
Majority vote

| AGRICULTURE | 8-0 | APPROPRIATIONS | 10-3 |
|---|---|---|---|

Ayes:   Galgiani, Tom Berryhill, Conway,      Ayes:   De Leon, Ammiano, Davis,
        Fuller, Ma, Mendoza, Yamada,                   Krekorian, Hall, John A. Perez, Price,
        Bonnie Lowenthal,                              Skinner, Solorio, Torlakson

                                            Nays:   Nielsen, Charles Calderon, Harkey

SUMMARY:  Prohibits selling shelled eggs for human consumption in California produced by egg-laying hens on farms not in compliance with animal care standards.  Specifically, this bill:

1)  Prohibits shelled eggs from being sold for human consumption in California if the farm or location for production is not in compliance with California animal care standard beginning January 1, 2015.

2)  Allows for a fine not to exceed $1,000 or imprisonment in a county jail not to exceed 180 days or by both the fine and imprisonment.

EXISTING LAW prevents any person from tethering or confining, for all or a majority of any day, animals, specifically pigs during pregnancy, calves raised for veal, or egg-laying hens, in such a way that prevents the animal from lying and standing, fully extending limbs, and turning around completely.  This begins on January 1, 2015.  (Health and Safety Code Section 25900 et seq.)

FISCAL EFFECT:  According to the Assembly Appropriations Committee, negligible costs associated with this bill.

COMMENTS:  In November 2008, voters passed Proposition 2, which addressed confinement of farm animals.  The law requires that certain farm animals, including egg-laying hens, have room to move freely.

According to the author, requiring all eggs sold for human consumption in California to conform to the animal care standards will protect California's consumer's health and welfare.  Reports cited by the author state that egg-laying hens subjected to stress have a greater chance of carrying bacteria or viruses, thus having a greater chance of exposing consumers to food borne bacteria and viruses.  Some supporters stated this bill will level the playing field for California egg producers to remain competitive with out-of-state egg producers.

California has a history of establishing animal welfare standards for products consumed here.  The Legislature passed SB 1520 (Burton), Chapter 904, Statutes of 2004, which banned the sale of foie gras by prohibiting the sale in California of a product if it is the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal size.

Analysis Prepared by:   Victor Francovich / AGRI. / (916) 319-2084

**RJN - 377**

FN: 0000710

The documents following this page were
printed from the Legislative Counsel's web site,
leginfo.ca.gov

RJN - 378

BILL ANALYSIS

```
-----------------------------------------------------------
|SENATE RULES COMMITTEE          |            AB 1437|
|Office of Senate Floor Analyses |                  |
|1020 N Street, Suite 524        |                  |
|(916) 651-1520      Fax: (916)  |                  |
|327-4478                        |                  |
-----------------------------------------------------------
```

THIRD READING

Bill No:  AB 1437
Author:   Huffman (D), et al
Amended:  5/26/10 in Senate
Vote:     21


 SENATE FOOD & AGRICULTURE COMMITTEE  :  4-1, 6/16/09
AYES:  Florez, Maldonado, Hancock, Pavley
NOES:  Hollingsworth

 SENATE APPROPRIATIONS COMMITTEE  :  Senate Rule 28.8

 ASSEMBLY FLOOR  :  65-12, 5/26/09 - See last page for vote


 SUBJECT  :  Shelled eggs:  sale for human consumption:
compliance with
          animal care standards

 SOURCE  :   Author


 DIGEST  :   This bill prohibits selling shelled eggs for
human consumption in California produced by egg-laying hens
on farms not in compliance with animal care standards.

 ANALYSIS  :   Existing law prevents any person from
tethering or confining, for all or a majority of any day,
animals, specifically pigs during pregnancy, calves raised
for veal, or egg-laying hens, in such a way that prevents
the animal from lying and standing, fully extending limbs,
and turning around completely.  This begins on January 1,
2015.

                                        CONTINUED



                                        AB 1437

RJN - 379

Page
2

This bill:

1. Prohibits shelled eggs from being sold for human
   consumption in California if the farm or location for
   production is not in compliance with California animal
   care standard beginning January 1, 2015.

2. Allows for a fine not to exceed $1,000 or imprisonment in
   a county jail not to exceed 180 days or by both the fine
   and imprisonment.

Comments

In November 2008, voters passed Proposition 2, which
addressed confinement of farm animals. The law requires
that certain farm animals, including egg-laying hens, have
room to move freely.

According to the author's office, requiring all eggs sold
for human consumption in California to conform to the
animal care standards will protect California's consumer's
health and welfare.  Reports cited by the author state that
egg-laying hens subjected to stress have a greater chance
of carrying bacteria or viruses, thus having a greater
chance of exposing consumers to food borne bacteria and
viruses.  Some supporters stated this bill will level the
playing field for California egg producers to remain
competitive with out-of-state egg producers.

California has a history of establishing animal welfare
standards for products consumed here.  The Legislature
passed SB 1520 (Burton), Chapter 904, Statutes of 2004,
which banned the sale of foie gras by prohibiting the sale
in California of a product if it is the result of force
feeding a bird for the purpose of enlarging the bird's
liver beyond normal size.

 FISCAL EFFECT  :    Appropriation:  No   Fiscal Com.:  Yes
Local:  Yes

 SUPPORT  :   (Verified  6/16/10)

2nd Chance for Pets

                                                    AB 1437
                                                    Page
3

Alpha Canine Sanctuary
Animal Acres Animal

Animal Place
Animal Protection and Rescue League
Animal Welfare Advocacy
ASPCA
Avian Welfare Coalition
Bay Animal Hospital
Blackberry Farm
Bon App?tit Management Company
California Animal Association
Center for Food Safety
Center for Science in the Public Interest
Community Market Natural Foods
Compassionate Carnivores
Dr. Bauer's Advanced Wellness
East Bay Animal Advocates
Farm Animal Protection Project
Farm Sanctuary
Finance Tree, Inc
G Town G Ranch
Green Star Solution
Here's Looking at You Baby
Humane Society of Louisiana
Humane Society of the United States
Humane Society Veterinary Medical Association
Internal Medicine
Le Fort's Organic Crops
League of Humane Voters
Loving Touch Animal Massage
Marin Humane Society
Marin Vegetarian Education Group
Middleton Farm
Mt. Barnabe Farm
Natural Pet
Noah's Ark Veterinary Hospital
North Star Pet Assistance
Orange County People for Animals
PAW PAC
Paw Project
Physicians Committee for Responsible Medicine
Planning and Conservation League
Positively Pets!
Restaurant Soltan Banoo


                                                    AB 1437
                                                    Page

———————————
        4

Rocket Dog Rescue
Sausalito Animal Hospital
Sugar Beat Sweets
Tamalpais Pet Hospital
TCM, Inc.
The Grand Slam Diet.com
The New School of Cooking

RJN - 381

Case 2:14-cv-00341-KJM-KJN  Document 37-2  Filed 04/09/14  Page 68 of 79

Tree Axis
Turner's Portable Welding
Urban Cat Project
Vreseis Limited (organic farm)
World Society for the Protection of Animals

OPPOSITION  :   (Verified  6/16/10)

California Restaurant Association

ARGUMENTS IN SUPPORT  :   Proponents state that this bill
will ensure standardized basic animal welfare standards for
the production of shelled eggs consumed in California.
While there are currently similar efforts to Proposition 2
in other states across the nation, this bill will ensure
that all eggs consumed in California are produced by hens
raised according to animal welfare standards that meet the
expectations for animal care and food safety of the
California consumer.  Proponents point to the United Egg
Producers cage-free standards to provide a blueprint for
compliance with this bill and Proposition 2 welfare
standards.  Further, reports cited by proponents of the
bill state that egg-laying hens subjected to stress are
more likely to have higher levels of pathogens in their
intestines and that poor conditions increase the likelihood
that consumers will be exposed to higher levels of
food-borne pathogens.  Therefore, proponents state that
this bill also addresses a health and food safety issue
with California eggs which they feel is not in conflict
with the interstate commerce clause.

ARGUMENTS IN OPPOSITION  :    (No letter on file)


ASSEMBLY FLOOR  :
AYES:  Adams, Ammiano, Arambula, Beall, Bill Berryhill, Tom
  Berryhill, Blakeslee, Block, Blumenfield, Brownley,


AB 1437
Page

5

Buchanan, Caballero, Charles Calderon, Carter, Chesbro,
Conway, Cook, Coto, Davis, De La Torre, De Leon,
Emmerson, Eng, Evans, Feuer, Fletcher, Fong, Fuentes,
Fuller, Furutani, Galgiani, Gilmore, Hall, Hayashi,
Hernandez, Hill, Huber, Huffman, Jones, Krekorian, Lieu,
Bonnie Lowenthal, Ma, Mendoza, Monning, Nava, Nestande,
Niello, Nielsen, John A. Perez, V. Manuel Perez,
Portantino, Price, Ruskin, Salas, Saldana, Skinner,
Smyth, Solorio, Swanson, Torlakson, Torres, Torrico,
Tran, Yamada
NOES:  Anderson, DeVore, Gaines, Garrick, Hagman, Harkey,
Jeffries, Knight, Logue, Miller, Silva, Villines

RJN - 382

Case 2:14-cv-00341-KJM-KJN   Document 37-2   Filed 04/09/14   Page 69 of 79

NO VOTE RECORDED:  Duvall, Audra Strickland, Bass


TSM:nl  6/16/10   Senate Floor Analyses

                    SUPPORT/OPPOSITION:  SEE ABOVE

                        ****  END  ****

RJN - 383

Case 2:14-cv-00341-KJM-KJN   Document 37-2   Filed 04/09/14   Page 70 of 79

BILL ANALYSIS

SENATE FOOD and AGRICULTURE COMMITTEE
Senator Dean Florez, Chairman

BILL NO:    AB 1437          HEARING:  6/16/09
AUTHOR:     Huffman          FISCAL:  Yes
VERSION:    2/27/09          CONSULTANT:  John Chandler

Shelled eggs:  sale for human consumption: compliance with animal
                         care standards.

BACKGROUND AND EXISTING LAW

In November 2008, California passed Proposition 2 with 63.5
percent of the vote.  Proposition 2 specifies that on January 1,
2015, calves for veal, egg-laying hens, and pregnant pigs be
confined only in ways that allow these animals to lie down,
stand up, fully extend their limbs and turn around freely.  The
proposition provides exceptions for transportation, rodeos,
fairs, 4-H programs, lawful slaughter, research and veterinary
purposes.  Failure to comply with the proposition can be
punished with misdemeanor penalties, including a fine not to
exceed $1,000 and/or imprisonment in jail for up to 180 days.

Currently, California is the fifth largest egg-producing state
in the nation with more that 19 million egg-laying hens.  Iowa
is the largest producer with over 52 million egg laying hens in
the state.

SB 1520 (Chapter 904, Statues of 2004) bans the sale and
production of foie gras, specifically the forced feeding of an
animal to enlarge the liver, by 2012.

In 1998, Proposition 6, which passed with 59.39 percent of the
vote, prohibited the slaughter of horses for the purpose of
human consumption.  Further, it prohibited the export of horses
from California for the purpose of human consumption.

PROPOSED LAW

AB 1437 will prohibit the sale of eggs in California for human
consumption that do not meet the animal welfare standards of
Proposition 2 by January 1, 2015.

COMMENTS

1.Proponents state that AB 1437 will ensure standardized basic
  animal welfare standards for the production of shelled eggs
  consumed in California.  While there are currently similar
  efforts to Prop. 2 in other states across the nation, AB 1437

AB 1437 - Page 2

RJN - 384

will ensure that all eggs consumed in California are produced
by hens raised according to animal welfare standards that meet
the expectations for animal care and food safety of the
California consumer.  Proponents point to the United Egg
Producers cage-free standards to provide a blueprint for
compliance with AB 1437 and Prop. 2 welfare standards.
Further, reports cited by proponents of the bill state that
egg-laying hens subjected to stress are more likely to have
higher levels of pathogens in their intestines and that poor
conditions increase the likelihood that consumers will be
exposed to higher levels of food-borne pathogens.  Therefore,
proponents state that AB 1437 also addresses a health and food
safety issue with California eggs which they feel is not in
conflict with the interstate commerce clause.

2. Opponents argue that AB 1437 should include clear standards
   for housing and space for egg-laying hens.  The standard set
   forth in Prop. 2 specifies that egg-laying hens may not be
   confined for a majority of the day in a manner that prevents
   the hen from lying down, standing up, fully extending her
   limbs, and turning around freely.  Opponents feel that AB 1437
   should specify enclosure size per hen, how many hens per
   enclosure, and if current housing systems can be used or
   modified to comply with AB 1437 and Prop. 2.

3. It is the specified intent of the author of AB 1437 to apply
   the animal welfare provisions of Prop. 2 to all chickens
   producing eggs sold to California consumers.  Since California
   does import eggs from out of state, this will impact
   out-of-state producers.  The committee may want to consider if
   this could be in conflict with the interstate commerce clause.

4. The Senate Rules Committee has doubled referred this bill to
   the Senate Health Committee as the second committee of
   referral.  Therefore, if this measure is approved by this
   committee, the motion should include an action to re-refer the
   bill to the Senate Committee on Health.

PRIOR ACTIONS

Assembly Floor 65-12
Assembly Appropriations10-3
Assembly Agriculture  8-0

SUPPORT




2nd Chance for Pets
Alpha Canine Sanctuary
Animal Acres Animal
Animal Place

**RJN - 385**

Animal Protection and Rescue League
Animal Welfare Advocacy
ASPCA
Avian Welfare Coalition
Bay Animal Hospital
Blackberry Farm
Bon App?tit Management Company
California Animal Association
Center for Food Safety
Center for Science in the Public Interest
Community Market Natural Foods
Compassionate Carnivores
Dr. Bauer's Advanced Wellness
East Bay Animal Advocates
Farm Animal Protection Project
Farm Sanctuary
Finance Tree, Inc
G Town G Ranch
Green Star Solution
Here's Looking at You Baby
Humane Society of Louisiana
Humane Society of the United States
Humane Society Veterinary Medical Association
Internal Medicine
Le Fort's Organic Crops
League of Humane Voters
Loving Touch Animal Massage
Marin Humane Society
Marin Vegetarian Education Group
Middleton Farm
Mt. Barnabe Farm
Natural Pet
Noah's Ark Veterinary Hospital
North Star Pet Assistance
Orange County People for Animals
PAW PAC
Paw Project
Physicians Committee for Responsible Medicine
Planning and Conservation League
Positively Pets!
Restaurant Soltan Banoo
Rocket Dog Rescue
Sausalito Animal Hospital


AB 1437 - Page 4

Sugar Beat Sweets
Tamalpais Pet Hospital
TCM, Inc.
The Grand Slam Diet.com
The New School of Cooking
Tree Axis
Turner's Portable Welding
Urban Cat Project
Vreseis Limited (organic farm)
World Society for the Protection of Animals
102 Individuals

**RJN - 386**

Case 2:14-cv-00341-KJM-KJN   Document 37-2   Filed 04/09/14   Page 73 of 79

OPPOSITION

Association of California Egg Farmers

**RJN - 387**

Case 2:14-cv-00341-KJM-KJN   Document 37-2   Filed 04/09/14   Page 74 of 79

BILL ANALYSIS

```
                                                 AB 1437
                                                 Page  1
```

Date of Hearing:   May 13, 2009

ASSEMBLY COMMITTEE ON APPROPRIATIONS
Kevin De Leon, Chair

AB 1437 (Huffman) - As Introduced: February 27, 2009

Policy Committee:                          AgricultureVote:8
- 0

Urgency:    No                   State Mandated Local Program:
Yes    Reimbursable:             No

SUMMARY

This bill prohibits the selling of eggs still in the shell for
human consumption after January 1, 2015, if those eggs are
produced by egg-laying hens that are not in compliance with
California animal care standards. In addition, the bill makes it
a misdemeanor to violate this prohibition, punishable by a fine
of up to $1,000, up to 180 days in a county jail or both.

FISCAL EFFECT

Negligible, non-reimbursable costs for prosecution, offset by
fine revenue, for misdemeanor violations associated with not
complying with California animal care standards.

COMMENTS

 1)Rationale  . With the passage of Proposition 2 in November
   2008, 63% of California's voters determined that it was a
   priority for the state to ensure the humane treatment of farm
   animals. However, the proposition only applies to in-state
   producers.  The intent of this legislation is to level the
   playing field so that in-state producers are not
   disadvantaged.  This bill would require that all eggs sold in
   California must be produced in a way that is compliant with
   the requirements of Proposition 2.

   Californians have a history of establishing basic animal
   welfare standards for the products they consume.  In 1996,
   California voters banned the consumption, sale and transport
   of horse meat. In 2004, the California Legislature banned the
   sale of foie gras by prohibiting the sale of a product that is

RJN - 388

Case 2:14-cv-00341-KJM-KJN   Document 37-2   Filed 04/09/14   Page 75 of 79

the result of force feeding a bird.

 2)Standards for Confining Farm Animals Initiative (Proposition 2) . This proposition adds a chapter to Division 20 of the California Health and Safety Code to prohibit the confinement of certain farm animals in a manner that does not allow them to turn around freely, lie down, stand up, and fully extend their limbs. The measure deals with three types of confinement: veal crates, battery cages, and sow gestation crates.

The key portion of the statute will become operative on January 1, 2015. Farming operations have until that date to implement the new space requirements for their animals, and the statute will prohibit animals in California from being confined in a proscribed manner thereafter.

 Analysis Prepared by  :    Julie Salley-Gray / APPR. / (916) 319-2081

RJN - 389

Case 2:14-cv-00341-KJM-KJN   Document 37-2   Filed 04/09/14   Page 76 of 79

BILL ANALYSIS

---
                                                              AB 1437
                                                              Page  1

Date of Hearing:  April 29, 2009

                    ASSEMBLY COMMITTEE ON AGRICULTURE
                        Cathleen Galgiani, Chair
            AB 1437 (Huffman) - As Introduced:  February 27, 2009

        SUBJECT  :  Shelled eggs:  compliance with animal care standards.

        SUMMARY  :  Prohibits selling shelled eggs for human consumption in
  California produced by egg-laying hens on farms not in compliance
  with animal care standards.  Specifically,  this bill  :

  1) Prohibits shelled eggs from being sold for human consumption in
     California if the farm or location for production is not in
     compliance with California animal care standard beginning January
     1, 2015.

  2) Allows for a fine not to exceed to $1,000 or imprisonment in a
     county jail not to exceed 180 day or by both the fine and
     imprisonment.

  3) States that provisions in this law are in addition to and do not
     replace any other laws protecting animal welfare.

        EXISTING LAW  prevents any person from tethering or confining, for
  all or a majority of any day, animals, specifically pigs during
  pregnancy, calves raised for veal, or egg-laying hens, in such a
  way that prevents the animal from lying and standing, fully
  extending limbs, and turning around completely.  This begins on
  January 1, 2015.  (Health and Safety Code Section 25900 et seq.)

        FISCAL EFFECT  :  Unknown.  This bill is keyed fiscal by Legislative
  Counsel.

        COMMENTS  :  In November 2008, voters passed Proposition 2, which
  addressed confinement of farm animals.  The law requires that
  certain farm animals, including egg-laying hens, have room to move
  freely.  Freedom of movement includes the ability the stand up, lie
  down, extend limbs fully without touching the sides of an enclosure
  and turn around freely.

  According to the author, requiring all eggs sold for human
  consumption in California to conform to the animal care standards
  will protect California consumer's health and welfare.  Reports
  cited by the author state that egg-laying hens subjected to stress

                                                              AB 1437

RJN - 390

                                                                      Page   2

have a greater chance of carrying bacteria or viruses, thus having
a greater chance of exposing consumers to food borne bacteria and
viruses.  Some supporters stated this bill will level the playing
field for California egg producers to remain competitive with
out-of-state egg producers.

A January 2009 report on poultry flock health in Sweden showed
significantly higher rates of mortality due to bacterial and
parasitic disease and cannibalism in litter based housing and free
range housing for egg laying hens compared to cage housing.  The
report showed occurrence of viral disease was significantly higher
for indoor litter based housing compared to cage housing.

California has a history of establishing animal welfare standards
for products consumed here.  The Legislature passed SB 1520
(Burton), Chapter 904, Statutes of 2004, which banned the sale of
foie gras by prohibiting the sale in California a product if it is
the result of force feeding a bird for the purpose of enlarging the
bird's liver beyond normal size.

The author's office and supporters have stated that this bill is
not meant to clarify, change or expand on the current animal
welfare standards relating to confinement.  This bill would cause
those standards to be exported to other states.  The committee may
wish to consider if this fits the Interstate Commerce Clause test;
specifically, this is of compelling interest to California to
protect public health.

 REGISTERED SUPPORT / OPPOSITION  :

 Support

Alpha Canine Sanctuary
American Society for the Prevention of Cruelty to Animals
Animal Internal Medicine
Animal Place
Animal Protection & Rescue League
Blackberry Farms
Bon Appetit Management Company
California Animal Association
Center for Food Safety
Center for Science in the Public Interest
Community Market
Farm Animal Protection Project

                                                                 AB 1437
                                                                 Page   3

Farm Sanctuary
Humane Society of the United States
Humane Society Veterinary Medical Association

RJN - 391

Physician's Committee for Responsible Medicine
Planning and Conservation League
Sierra Club California
Tamalpais Pet Hospital
The League of Humane Voters, California Chapter
The Paw Project
World Society for the Protection of Animals
138 Individuals

Opposition

None on file.

Analysis Prepared by  :     Victor Francovich / AGRI. / (916) 319-2084

# CERTIFICATE OF SERVICE

Case Name:   **State of Missouri, ex rel., et al.,**          No.   **2:14-CV-00341-KJM-KJN**
             **v. Kamala D. Harris, et al.**

I hereby certify that on <u>April 9, 2014</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

## REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>April 9, 2014</u>, at Los Angeles, California.


Angela Artiga                                    /s/ Angela Artiga
Declarant                                        Signature

51490446.doc