J. ANDREW HIRTH (*pro hac vice*)
Deputy General Counsel
OFFICE OF THE MISSOURI ATTORNEY GENERAL
P.O Box 899
Jefferson City, Missouri 65102
(573) 751 – 0818
(573) 751 – 0774 (fax)
andy.hirth@ago.mo.gov
*Lead Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT CALIFORNIA

| | |
|---|---|
| THE STATE OF MISSOURI, ex rel., Chris Koster, Attorney General; THE STATE OF NEBRASKA, ex rel. Jon Bruning, Attorney General; THE STATE OF OKLAHOMA, ex rel. E. Scott Pruitt, Attorney General; THE STATE OF ALABAMA, ex rel. Luther Strange, Attorney General; THE COMMONWEALTH OF KENTUCKY, ex rel. Jack Conway, Attorney General; and TERRY E. BRANSTAD, Governor of the State of Iowa, <br><br> Plaintiffs, <br> v. <br><br> KAMALA D. HARRIS, solely in her official capacity as Attorney General of California; KAREN ROSS, solely in her official capacity as Secretary of the California Department of Food and Agriculture, <br><br> Defendants. | Case No. 2:14-cv-00341-KJM-KJN <br><br> **CERTAIN PLAINTIFFS'[1] MEMORANDUM OF LAW IN OPPOSITION TO PROPOSED DEFENDANT-INTERVENORS HSUS AND ACEF'S MOTIONS TO INTERVENE** <br><br> Courtroom: 3, 15th floor <br> Judge: Hon. Kimberly J. Mueller <br> Action Filed: 02/03/2014 |

---

[1] Proposed Defendant-Intervenor HSUS's Motion to Intervene is opposed by Missouri, Nebraska, Oklahoma, Alabama, Kentucky, and Governor Branstad. Proposed Defendant Intervenor ACEF's Motion to Intervene is opposed by Missouri, Nebraska, Oklahoma, and Governor Branstad. Kentucky and Alabama do not object to ACEF's Motion to Intervene.

1

**Introduction**

2     This case is *not* about California's inherent authority to regulate egg production or animal

3   welfare within its borders. Nor is this a case about California's police power to inspect imported

4   food and other goods for contamination and disease. Rather, this case concerns a narrow

5   question of federal constitutional law: May one state close its markets to goods imported from

6   its sister states because of the methods by which those goods were produced in those sister

7   states? Specifically, may California prohibit the sale within its borders of more than 4 billion

8   out-of-state eggs based solely on the size of the chicken coops *in other states* where those eggs

9   were laid? That controversy exists only between the defendant California officials and the six

10   plaintiff states suing to protect their quasi-sovereign interest in free trade between the states in

11   our federal system.

12     The Humane Society of the United States (HSUS) and the Association of California Egg

13   Farmers (ACEF) move to intervene in this case under Fed. R. Civ. P. 24, either as a matter of

14   right or with the court's permission. Both organizations claim concern that the Attorney General

15   of California and the Secretary of the California Department of Food and Agriculture may not

16   adequately defend the constitutionality of AB1437 because California may not want to assert

17   the same arguments as proposed Defendant-Intervenors.

18     Yet, in its motion to dismiss, California argues that animal welfare and the prevention of

19   salmonella contamination—the *only* issues championed by HSUS and ACEF, respectively, in

20   their motions to intervene—are the very state interests AB1437 was enacted to protect.

21   Permitting HSUS and ACEF to intervene just to make the same arguments that have already

22   been advanced by California will give rise to duplicative discovery and repetitive motion

23   practice, all while delaying resolution of the *constitutional* dispute between the states

24   themselves. Both motions to intervene should be denied.

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Argument

HSUS and ACEF move separately to intervene in this case either by right or with the Court's permission. To intervene by right in a case already pending, a third-party must satisfy the four requirements of Fed. R. Civ. P. 24(a)(2):

> (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties.

*Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). The burden to satisfy all four requirements falls on the third-party seeking to intervene. *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (internal citations omitted). "Failure to satisfy any one of the requirements is fatal to the application." *Id.*

If a third-party cannot meet all of the requirements to intervene by right under Rule 24(a)(2), the court has discretion to grant permissive intervention under rule 24(b) if the applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P 24(b)(2)(B). When exercising its discretion over permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P 24(b)(3). The court may also consider additional factors, "including the nature and extent of the intervenors' interests and whether the intervenors' interests are adequately represented by other parties." *Perry*, 587 F.3d at 955.

**I.**     **HSUS has not satisfied all of the requirements Fed. R. Civ. P. 24(a)(2).**

Expressing concern that the Attorney General of California will not adequately defend the constitutionality of AB1437, HSUS asserts a right to intervene in this case to defend the statute itself. Its motion to intervene should be denied, however, because HSUS has not identified any "significantly protectable interest" in the subject matter of this case that might be impaired or impeded by its disposition. Moreover, any interest HSUS might have in this case is adequately represented by the State of California.

**A.**     **HSUS has not identified a "significantly protectable interest" in the subject matter of this case that might be impaired if the Plaintiffs prevail.**

"An applicant has a 'significant[ly] protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). "An applicant generally satisfies the 'relationship' requirement only if the resolution of the plaintiff's claims actually will affect the applicant." *Id.* at 410. Thus, "a prospective intervenor has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (internal quotations omitted). In this case, HSUS claims to have two interests that may be impaired if Plaintiffs prevail: (1) its support for AB1437, and (2) its mission to prevent cruelty to egg-laying hens. HSUS Br. at 7. Neither is sufficient to satisfy Rule 24(a)(2).

HSUS first argues that its support for AB1437 should be considered a significantly protectable interest *per se*; however, none of the Ninth Circuit cases cited in HSUS's motion stands for such a categorical rule. In *Prete v. Bradbury*, the Ninth Circuit observed that "a public interest group *may* have a protectable interest in defending the legality of a measure it had supported." 438 F.3d 949, 954 (9th Cir. 2006)(emphasis added). But even that tentative language was not part of the court's holding because the plaintiffs had not disputed the protectable interest element of the intervenors' motion. *Id.* There would have been no point in disputing it because the intervenor—the president of the Oregon chapter of the AFL-CIO—was

1    the "chief petitioner" behind the challenged initiative petition. *Id.* at 955; *see also Idaho Farm*

2    *Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397–98 (9th Cir. 1995) (holding environmental group,

3    which previously sued to compel the Fish and Wildlife Service to list a snail as endangered

4    species, had a protectable interest to intervene in subsequent challenge *to that listing*);

5    *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir.1983) (holding that National

6    Audubon Society had protectable interest in case challenging the interior secretary's creation of

7    a conservation area for birds of prey, which the society had lobbied for). Unlike the chief

8    petitioner who intervened to defend his own ballot initiative in *Prete*, the environmental group

9    that intervened to defend an endangered species listing it has sued to procure in *Babbitt*, and the

10   Audubon Society's intervention to defend the creation of the conservation area it had

11   championed in *Sagebrush*, HSUS was not the "architect" or even a "sponsor" of AB1437, as it

12   had been for Prop 2.

13          Nor has HSUS shown that it will "suffer a practical impairment of its interests as a result

14   of the pending litigation." *Wilderness Soc.*, 630 F.3d at 1179. While it claims that "an adverse

15   judgment in this constitutional challenge to the measure would clearly impair or impede

16   HSUS's interest in the law's continued viability," HSUS Br. [Docket #27] at 8, that argument is

17   circular. A successful challenge to the constitutionality of the Clean Air Act necessarily impairs

18   *everyone's* interest in the CAA's continued viability, but surely that doesn't permit *everyone* to

19   intervene in *every* case challenging the CAA. Similarly, HSUS claims that a judgment holding

20   AB1437 unconstitutional "would leave HSUS with 'no other avenue' to protect its interest in

21   AB1437." HSUS Br. 8. Not only is this argument equally circular, it is also incorrect. To the

22   extent HSUS has any interest in AB1437, it's to discourage egg producers in other states from

23   housing their hens in cages HSUS finds objectionable. The same interest could be furthered

24   much more directly through the enactment of Prop 2-like legislation in all 50 states. That might

25   be a much harder sell, but just because HSUS has elected an easier path does not mean there is

26   "no other avenue" it could take. The only "practical impairment" threatened by Plaintiffs'

27   lawsuit is the curtailment of one state legislature's power to dictate agricultural policy in

28   another state by selectively closing its markets.

1     Next, HSUS asserts a protectable interest in defending AB1437 due to its mission "to

2     prevent cruelty to animals, including cruelty to egg-laying hens." HSUS Br. at 8. Plaintiffs do

3     not dispute that an animal welfare group like HSUS may have a significantly protectable

4     interest in upholding the animal welfare provisions *of Prop 2*. Nor do Plaintiffs dispute that

5     Prop 2 was a proper use of California's police power. But this case is about AB1437, not Prop

6     2. The California Legislature's stated purpose for enacting AB1437 was to protect *the health of*

7     *California consumers*, not the welfare of California *animals*. And unlike Prop 2, AB1437 places

8     no restrictions on the treatment of animals in California—or anywhere else for that matter. It

9     does not require egg producers to house hens in any particular way nor prohibit them from

10    housing hens in any particular way. It merely proscribes the sale *in California* of a subset of

11    otherwise indistinguishable goods based on production methods that are already illegal *in*

12    *California*. Thus, whatever the outcome of Plaintiffs' challenge to AB1437, HSUS mission to

13    prevent animal cruelty faces no practical impairment. HSUS's mission to prevent animal cruelty

14    does not create a significantly protectable interest in a statute that does not directly regulate

15    animal welfare.

16         Finally, HSUS argues that its California members "have an interest in eating eggs that

17    are humanely produced and safe from pathogens." HSUS Br. at 8. But none of the relief sought

18    by Plaintiffs in this case would *require* anyone in California to purchase eggs from conventional

19    cages; it merely permits them to if they so choose. *C.f. Cal. Dump Truck Owners Ass'n v.*

20    *Nichols*, 275 F.R.D. 303, 306 (E.D. Cal. 2011) (granting intervention to group whose members

21    "live near transportation corridors where vehicles covered by the Regulation travel . . . [and]

22    will be affected the most by the localized increase in emissions that will result from a finding

23    that the regulation is preempted"); *Tucson Women's Ctr. v. Ariz. Med. Bd.*, No. CV–09–1909–

24    PHX–DGC, 2009 WL 4438933, at *3 (D. Ariz. Nov. 24, 2009) (holding that group promoting

25    alternatives to abortion had interest in statute requiring doctors to make women seeking

26    abortions aware of intervenor's services). Presumably, HSUS's 1.4 million California members

27    have no interest in purchasing eggs produced in conventional cases. Thus, the only California

1   consumers whose interests may be impaired by the disposition of this case are those who would

2   prefer to by eggs produced in conventional cages because they are less expensive.

**B.      Any interests HSUS might have in the subject matter of this case are adequately represented by the State of California.**

5          Even if HSUS had a protectable interest in AB1437 that might be impaired by the

6   disposition of Plaintiffs' constitutional challenge, HSUS has not overcome the presumption that

7   its interests are "adequately represented" by the Attorney General of California and the

8   Secretary of the CDFA.

9          "The most important factor to determine whether a proposed intervenor is adequately

10  represented by a present party to the action is how the [intervenor's] interest compares with the

11  interests of existing parties." *Perry*, 587 F.3d at 950–51. "Where the party and the proposed

12  intervenor share the same 'ultimate objective,' a presumption of adequacy of representation

13  applies, and the intervenor can rebut that presumption only with a 'compelling showing' to the

14  contrary." *Id.* "This presumption of adequacy is nowhere more applicable than in a case where

15  the Department of Justice deploys its formidable resources to defend the constitutionality" of a

16  statute. *Freedom from Religion*, 644 F.3d at 841 (internal quotations omitted); *see, e.g.*, *Prete*,

17  438 F.3d at 957 (holding that a public interest organization seeking intervention to defend a

18  state constitutional ballot initiative failed to defeat the presumption of adequate representation

19  when the ultimate objective of both the organization and the defendant party was to uphold the

20  measure's validity).

21         To determine whether a proposed intervenor has overcome the presumption of adequate

22         representation, the Ninth Circuit considers three factors:

23         (1) whether the interest of a present party is such that it will undoubtedly make

24         all of a proposed intervenor's arguments; (2) whether the present party is capable

25         and willing to make such arguments; and (3) whether a proposed intervenor

26         would offer any necessary elements to the proceeding that other parties would

27         neglect.

28  *Perry*, 587 F.3d 952.

1    There is no question that California and HSUS share the same "ultimate goal" of

2  defending the constitutionality of AB1437. Nonetheless, HSUS speculates that California *may*

3  not raise all of HSUS's arguments because "California has much broader interests that HSUS,

4  and must balance animal welfare concerns with economic, political, and resources constraints."

5  HSUS Br. at 10. By way of example, HSUS suggests that "California represents large numbers

6  of egg retailers and wholesalers, who may oppose implementation of AB1437." *Id.* HSUS

7  further speculates that California is itself a large purchaser of eggs and "may perceive a

8  financial incentive in restricting the implementation of AB1437." *Id.* Given these "competing

9  interests," HSUS worries that "government actors cannot necessarily be counted on to make the

10  same arguments as private advocates unbridled by the same concerns." HSUS Br. at 10.

11    HSUS cannot rely on conjecture and possibility to overcome the presumption of

12  adequate representation; rather, it "must demonstrate a *likelihood* that the government will

13  abandon or concede a potentially meritorious position." *California ex rel. Lockyer v. United*

14  *States*, 450 F.3d 436, 443–44 (9th Cir. 2006) (emphasis added). As this Court held in *Pickup v.*

15  *Brown*, "differences in strategy are not enough to allow intervention as of right. A strategic

16  difference includes when an existing party does not make a particular argument that the

17  proposed intervenor wishes to make." No. 2:12–CV–02497–KJM–EFB, 2012 WL 6024387, at

18  *3 (E.D. Cal. Dec. 4, 2012) (internal citations omitted); *see also Daggett v. Comm'n on*

19  *Governmental Ethics and Election Practices,* 172 F.3d 104, 112 (1st Cir.1999) ("Of course, the

20  use of different arguments as a matter of litigation judgment is not inadequate representation *per*

21  *se*"); *Idaho Bldg. and Constr. Trades Council, AFL–CIO v. Wasden,* No. 1: 11–CV–00253–

22  BLW, 2011 WL 5154286, at *3 (D. Idaho Oct.28, 2011) ("[S]imply because [proposed

23  intervenor] would make slightly different arguments from the Attorney General does not

24  amount to a 'compelling showing' of inadequacy, or that it offers a 'necessary element' to the

25  litigation.")

26    Moreover, the only argument HSUS identifies in its motion as one that it would raise but

27  California might not is that "selling eggs from hens confined in battery cages is inherently

28  unsafe or cruel." HSUS Br. at 11. HSUS's concern has since proven to be unfounded: In its

1   subsequently filed Motion to Dismiss, California asserts both "protection of animal welfare"

2   and "protection of public health and safety" to justify the enactment of AB1437. Cal. Mot. to

3   Dismiss [Docket # 36] at 11. California has also filed a Request for Judicial Notice [Docket #

4   42] of certain documents in the legislative history for AB1437, including a copy of "An HSUS

5   Report: A Comparison of the Welfare of Hens in Battery Cages and Alternative Systems," as

6   well as numerous letters of support for AB1437 from various animal welfare groups, including

7   HSUS. Given California's apparent reliance on HSUS's own arguments and research to support

8   the state's animal welfare argument, HSUS has failed to demonstrate "a likelihood that the

9   government will abandon or concede a potentially meritorious position." *Lockyer*, 450 F.3d at

10   444.

11          HSUS also speculates that California's competing interests might lead the state to accept

12   a narrower construction of AB1437 than HSUS would be willing to accept. The Ninth Circuit

13   has repeatedly rejected this very argument. In *Prete*, for example, proposed intervenor argued

14   its interests were not adequately represented by the state defendants because the state "may be

15   inclined [to] give an unnecessarily narrow construction of Measure 26 in the face of legal

16   attacks on the measure." 438 F.3d at 958. In *Freedom from Religion*, the proposed intervenor

17   argued that the "federal defendants might, in an attempt to save the parsonage exemption from

18   being declared unconstitutional, urge the court to construe the statutes in a narrow way that

19   would reduce the value of the exemption." 644 F.3d at 841–42. In both cases, the Ninth Circuit

20   denied intervention in the absence of evidence that any of the defendants had actually advanced

21   a narrow interpretation of the law. *Freedom from Religion*, 644 F.3d at 842; *Prete*, 438 F.3d at

22   958 ("neither plaintiffs nor defendant have argued for a narrowing construction of Measure

23   26").

24          Finally, HSUS argues that it has a "unique and deep knowledge of the facts, history, and

25   science surrounding and supporting the legislation at issue in this case," "a greater interest than

26   California in the hen welfare issues underlying this dispute," and "a greater motivation to

27   commit the time and the funds necessary" to defend AB1437. HSUS Br. at 11. Virtually the

28   same argument was raised in *Prete* by intervenors who claimed to have "direct knowledge and

1    experience in how well a signature gathering campaign staffed by hourly circulators can run"

2    whereas the Oregon Secretary of State lacked "the breadth of knowledge regarding the

3    signature-gathering process to fully develop the record and respond to plaintiff's factual

4    allegations." 438 F.3d at 958. The Ninth Circuit rejected that argument as well, noting that the

5    secretary of state "is undoubtedly familiar with the initiative process and the requisite signature-

6    gathering; indeed, defendant is the government party responsible for counting the signatures."

7    *Id.* "Although intervenor-defendants may have some specialized knowledge into the signature

8    gathering process, they provided no evidence to support their speculation that the Secretary of

9    State lacks comparable expertise." *Id.* As in *Prete*, HSUS has offered no reason to assume that

10   the California Secretary of Food and Agriculture lacks the expertise to make arguments about

11   the welfare of laying hens or that the California Attorney General lacks the expertise to defend

12   the constitutionality of a California statute. Consequently, HSUS has not provided "the

13   'compelling showing' necessary to overcome the presumption of adequate representation." *Id.*

14   Its motion to intervene by right should be denied.

15   **II.    HSUS offers no compelling reason why the Court should permit it to intervene.**

16          HSUS has satisfied the three threshold requirements for permissive intervention, so

17   whether to grant or deny its request is committed to the sound discretion of the Court. In the

18   exercise of its discretion, the Court *must* "consider whether the intervention will unduly delay or

19   prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *Perry*, 587

20   F.3d at 955. The Court *may* also consider other factors including "the nature and extent of the

21   intervenors' interest" and "whether the intervenors' interests are adequately represented by

22   other parties." *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir.1977).

23          In its motion to intervene, HSUS asserts two bases for permissive intervention. First, its

24   "substantial expertise in animal welfare" and "extensive research on hen housing" will "help

25   ensure a complete consideration of the issues raised in this case and the best opportunity to

26   serve the ends of justice." HSUS Br. at 13. Second, having been "a defendant in three lawsuits

27   over Prop 2"—a law Plaintiffs *do not* challenge in this case—HSUS claims to possess

28   "knowledge of the legal and factual issues unique to this litigation." *Id.* What is clear from these

1    arguments is that HSUS intends to remake this case into a referendum on the confinement of

2    egg-laying hens, a strategy that is likely to cause undue delay while the parties conduct

3    irrelevant discovery and engage in unnecessary motions practice.

4        Most of the arguments HSUS wants to make are collateral to the constitutional

5    questions raised in Plaintiffs' Amended Complaint. While the statute Plaintiffs have asked this

6    Court to invalidate happens to deal (indirectly) with the size of chicken coops, the legal issues at

7    the heart of this case concern the power of states to restrain trade based on conduct that occurs

8    beyond their borders. No amount of research on hen housing or expertise in animal welfare will

9    help the Court determine the proper scope of the dormant Commerce Clause. Permitting HSUS

10   to intervene in this case to argue that modern farming practices are cruel makes about as much

11   sense as permitting the AFL-CIO to intervene in *International Shoe Co. v. Washington* to argue

12   that traveling shoe salesmen should be allowed to unionize.

13       Moreover, HSUS's suggestion that it possesses special "knowledge of the legal and

14   factual issues unique to this litigation" due to its participation in three suits challenging Prop 2

15   overlooks the obvious fact that the State of California participated in each of those cases as

16   well. And, as noted above, California has requested the Court take judicial notice of many of

17   HSUS's research articles on hen housing and animal welfare. HSUS's interests are more than

18   adequately represented by the State. Permissive intervention should be denied.

19   **III.    ACEF has not overcome the presumption that its interests will be adequately**

20   **          represented by California.**

21       In its motion to intervene, ACEF articulates its "significantly protectable interests" in

22   defending the constitutionality of AB1437 as follows:

23       ACEF's members constitute a significant portion of the California egg industry.

24       Any disruptions to the market that decrease consumption of eggs has a direct and

25       significant impact on ACEF's members. The 2010 *Salmonella* recall of eggs—

26       which arose from contamination at facilities in Iowa—had a significant impact on

27       the California market, causing a decrease in demand for eggs. That decrease in

28       demand for eggs directly injured ACEF and its members. The hen enclosure

1    requirements of AB1437 are designed to help mitigate the health risks associated

2    with eggs such as *Salmonella*, the spread of which has been a particular concern

3    of ACEF. AB 1437 provides "an important layer of protection against" the

4    possibility of future egg-based *Salmonella* outbreaks in California—outbreaks

5    that ACEF has worked to prevent and that would cause consumers to purchase

6    fewer eggs from ACEF's members.

7    ACEF Br. at 8 (internal citations omitted).

8         ACEF claims that its interests differ from California's, but its motion fails to explain

9    how. Like California, ACEF's "ultimate goal" is defending AB1437. Like California, ACEF

10   argues that AB1437 was enacted to protect food safety and animal welfare. *Compare* ACEF's

11   Motion to Intervene [Docket #33] at 1 ("The challenged provisions ensure that egg-laying hens

12   are not confined in overly restrictive cages and are designed to reduce the likelihood that

13   contaminated eggs will be sold in California."), *with* California's Motion to Dismiss [Docket

14   #36] at 1 ("The state had two main goals in passing [AB1437]: protection of farm animal

15   welfare and protection of public health and safety through the prevention of salmonella.").

16        ACEF also quotes from several cases in which courts have held that a proposed

17   intervenor's interests diverged from those of a government defendant, but once again ACEF

18   fails to explain how any of those cases are remotely similar to this one. At best, ACEF makes

19   the same speculative arguments advanced by HSUS. *Compare* ACEF Br. at 10-11 (arguing that

20   California "must take into account its relationship with the Plaintiff states and the views of in-

21   state business groups that might oppose AB1437"), *with* HSUS Br. at 10 ("California has much

22   broader interests that HSUS, and must balance animal welfare concerns with economic,

23   political, and resources constraints."). At one point, ACEF claims that it will bring a "necessary

24   element to the proceeding that is otherwise missing." ACEF Br. at 11. These "otherwise

25   missing" elements turn out to be "the perspective of private businesses that are well-versed in

26   the need for food safety" and "experience developing food safety solutions to protect consumer

27   confidence in eggs." ACEF Br. at 11. In short, ACEF makes no "compelling showing" to

1  overcome the presumption that its interests in this case will be adequately represented by

2  California.

3      The truly remarkable thing about ACEF's motion to intervene is the argument that it

4  doesn't make. ACEF could have made a rock-solid argument for intervention by right in this

5  case based on its members' obvious financial interests in AB1437. Starting in January 2015,

6  ACEF's members must comply with Prop 2's behavior-based spatial requirements for hen-

7  houses. There is no serious dispute that complying with Prop 2 will increase California egg

8  producers' ongoing production costs and require expensive capital improvements. Ordinarily,

9  that would mean that out-of-state egg farmers—whose home states still permit them to use their

10  existing (and much less expensive) conventional cage systems—would soon be able to export

11  their eggs to California at a fraction of the prices California's own egg producers must now

12  charge.

13      Fortunately for those California farmers who have already invested in the upgrades

14  necessary to comply with Prop 2, AB1437 "levels the playing field" by imposing Prop 2's

15  spatial requirements on out-of-state egg producers as well if they want to continue selling her

16  eggs in California after January 1, 2015. If Plaintiffs prevail in this case, however, and AB 1437

17  is struck down for violating the Commerce Clause, the playing field will no longer be level and

18  California egg farmers will be forced to compete against less expensive eggs imported from out

19  of state. Curiously, ACEF does not rely on—or even acknowledge the existence of—its

20  members' obvious financial interest in "leveling the playing field" as to their out-of-state

21  competitors.

22  **IV.    The Court should deny ACEF's request for permissive intervention.**

23      In the alternative, ACEF claims to have satisfied the requirements for permissive

24  intervention under Rule 24(b). As with HSUS, Plaintiffs do not dispute that ACEF's motion was

25  timely filed or that it shares a common legal issue—the constitutionality of AB1437—with

26  California. But these are merely threshold requirements. ACEF fails to address the other factors

27  courts may consider, like "the nature and extent of the intervenors' interest" and "whether the

28  intervenors' interests are adequately represented by other parties." *See Spangler*, 552 F.2d at

1329. As explained above, both of those factors cut strongly against granting ACEF permissive

intervention in this case.

                                       \*       \*       \*

     WHEREFORE, Plaintiffs State Missouri, Nebraska, Oklahoma, Alabama, Kentucky,

and Governor Branstad respectfully request that HSUS's Motion to Intervene be denied; and

Plaintiffs Missouri, Nebraska, Oklahoma, and Governor Branstad respectfully request that

ACEF's Motion to Intervene be denied as well.


April 25, 2014                                                Respectfully submitted,




                                             CHRIS KOSTER
                                             Attorney General of Missouri

                                               */s/ J. Andrew Hirth*
                                             J. ANDREW HIRTH
                                           Deputy General Counsel
                                           (*pro hac vice*)
                                           P.O Box 899
                                           Jefferson City, Missouri 65102
                                           (573) 751 – 0818
                                           (573) 751 – 0774 (fax)
                                           andy.hirth@ago.mo.gov
                                           *Attorneys for Plaintiff*
                                           *State of Missouri*


                                           COLEMAN & HOROWITT LLP


                                           */s/ Sherrie M. Flynn*
                                           SHERRIE M. FLYNN
                                           499 West Shaw, Suite 116
                                           Fresno, California 93704
                                           Telephone: (559) 248-4820
                                           Facsimile: (559) 248-4830
                                           *Attorneys for Plaintiffs*

JON BRUNING
Attorney General of Nebraska

*/s/ Blake Johnson*
BLAKE JOHNSON
Assistant Attorney General
(*pro hac vice pending*)
Nebraska Department of Justice
2115 State Capitol
Lincoln, NE 68509
(402) 471 – 1912
blake.johnson@nebraska.gov
*Attorneys for Plaintiff*
*State of Nebraska*

JACK CONWAY
Attorney General of Kentucky

*/s/ Sean J. Riley*
Deputy Attorney General
(*pro hac vice pending*)
700 Capital Avenue, Suite 118
Frankfort, KY 40601
(502) 696-5300
sean.riley@ag.ky.gov
*Attorneys for Plaintiff*
*Commonwealth of Kentucky*

LUTHER STRANGE
Attorney General of Alabama

/s/ Robert D. Tambling
ROBERT D. TAMBLING
Chief, Environmental Section
(*pro hac vice pending*)
501 Washington Avenue
Montgomery, Alabama 36104
334-242-7445
rtambling@ago.state.al.us
*Attorneys for Plaintiff*
*State of Alabama*

E. SCOTT PRUITT, OBA#15828
Oklahoma Attorney General

*/s/ P. Clayton Eubanks*
Tom Bates , OBA# 15672
First Assistant Attorney General
P. Clayton Eubanks, OBA #16648
Deputy Solicitor General
(*pro hac vice pending*)
313 NE 21st Street
Oklahoma City, OK 73105
(405) 522-8992
clayton.eubanks@oag.ok.gov
*Attorneys for Plaintiff*
*State of Oklahoma*

TERRY E. BRANSTAD
Governor of the State of Iowa

THOMAS J. MILLER
Attorney General of Iowa

*/s/ Jacob J. Larson*
DAVID R. SHERIDAN
Assistant Attorney General
JACOB J. LARSON, AT0009804
Assistant Attorney General
(*pro hac vice pending*)
Lucas State Office Building
321 E. 12th St., Ground Flr.
Des Moines, Iowa 50319
Phone: (515) 281-5351
Fax: (515) 242-6072
E-mail: jacob.larson@iowa.gov
*Attorneys for Plaintiff*
*Terry E. Branstad,*
*Governor of the State of Iowa*