BRUCE A. WAGMAN (CSB No. 159987)
BWagman@schiffhardin.com
SCHIFF HARDIN LLP
One Market, Spear Street Tower
Thirty-Second Floor
San Francisco, CA 94105
Telephone: (415) 901-8700
Facsimile: (415) 901-8701

J. SCOTT BALLENGER (*Admitted Pro Hac Vice*)
Scott.Ballenger@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Ste. 1000
Washington, D.C. 20004
Telephone: (202) 637-2145
Facsimile: (202) 637-2201

PETER A. BRANDT (CSB No. 241287)
pbrandt@humanesociety.org
REBECCA CARY (CSB No. 268519)
rcary@humanesociety.org
THE HUMANE SOCIETY OF THE
UNITED STATES
2100 L Street, NW
Washington, D.C. 20037
Telephone: (202) 452-1100
Facsimile: (202) 676-2357

*Counsel for Proposed Defendant-Intervenor The Humane Society of the United States*

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE STATE OF MISSOURI, ex rel. Chris Koster, Attorney General; THE STATE OF NEBRASKA, ex rel. Jon Bruning, Attorney General; THE STATE OF OKLAHOMA, ex rel. E. Scott Pruitt, Attorney General; THE STATE OF ALABAMA, ex rel. Luther Strange, Attorney General; THE COMMONWEALTH OF KENTUCKY, ex rel. Jack Conway, Attorney General; and TERRY E. BRANSTAD, Governor of the State of Iowa,<br><br>Plaintiffs,<br><br>v. | Case No. 2:14-cv-00341-KJM-KJN<br><br>**PROPOSED DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF MOTION TO INTERVENE**<br><br>Date: May 9, 2014<br>Time: 10 a.m.<br>Judge: Kimberly J. Mueller |

| | |
|---|---|
| 1 | KAMALA D. HARRIS, in her official capacity as Attorney General of California; |
| 2 | KAREN ROSS, in her official capacity as Secretary of the California Department of |
| 3 | Food and Agriculture, |
| 4 | Defendants. |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................... 3

    A. HSUS Is Entitled to Intervene As of Right ............................................................ 3

        1. HSUS Has Significant Protectable Interests in The Subject Matter of This Litigation ................................................................... 3

            (a) HSUS' Significant Protectable Interest in AB 1437 ........................ 3

            (b) HSUS' Significant Protectable Interests in Preventing Cruelty to Egg-Laying Hens, Ensuring That California Consumers Do Not Subsidize Cruelty, and Ensuring the Safety of the Egg Supply ....................... 4

        2. California May Not Adequately Represent HSUS' Interests....................... 6

    B. Alternatively, This Court Should Permit HSUS to Intervene. ................................ 9

III. CONCLUSION .............................................................................................................. 11

**TABLE OF AUTHORITIES**

Page

### **CASES**

*Arakaki v. Cayetano,*
  324 F.3d 1078 (9th Cir. 2003) .................................................................................. 6, 7

*Association of California Egg Farmers v. State of California,*
  No. 12-CECG-03695-DSB (Cal. Super. Ct. Mar. 13, 2013) ................................... 10

*Cal. Dump Truck Owners Ass'n v. Nichols,*
  275 F.R.D. 303 (E.D. Cal. 2011) ......................................................................*passim*

*Chinatown Neighborhood Ass'n v. Brown,*
  No. CV-12-3759-PJH, 2012 WL 4059896 (N.D. Cal. Sept. 14, 2012) .................... 1

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
  647 F.3d 893 (9th Cir. 2011) ..................................................................................... 2

*Cramer v. Brown,*
  2:12-CV-3130-JFW-JEM  (C.D. Cal. June 4, 2012) .............................................. 10

*Idaho Farm Bureau Fed'n v. Babbitt,*
  58 F.3d 1392 (9th Cir. 1995) .................................................................................. 2, 3

*In Defense of Animals v. U.S. Dept. of the Interior,*
  No. 2:10–cv–01852–MCE–DAD, 2011 WL 1085991 (E.D. Cal., Mar. 21, 2011) .................. 8

*Modesto Irrigation Dist. v. Gutierrez,*
  No. CIV-F-06-00453-OWW-DLB, 2007 WL 164953 (E.D. Cal. Jan. 18, 2007)..................... 1

*Nat'l Ass'n of Home Builders v. San Joaquin Valley Unified Air Pollution Dist.,*
  No. 1:07cv0820 LJO DLB, 2007 WL 2757995 (E.D. Cal. Sept. 21, 2007) ............. 1

*Picayune Rancheria of Chukchansi v. Rabobank,*
  No. 13-cv-609-LJO-MJS, 2013 WL 2603954 (E.D. Cal. June 11, 2013) ................ 7

*Pickup v. Brown,*
  No. 2:12-CV-02497-KJM-EFB, 2012 WL 6024387 (E.D. Cal. Dec. 4, 2012) .......... 1, 3, 4, 11

*Prete v. Bradbury,*
  438 F.3d 949 (9th Cir. 2006) ..................................................................................... 9

*Sw. Ctr. for Biological Diversity v. Berg,*
  268 F.3d 810 (9th Cir. 2001) ........................................................................ 1, 2, 3, 8

*Tucson Women's Ctr. v. Ariz. Med. Bd.,*
  No. CV-09-1909-PHX-DGC, 2009 WL 4438933 (D. Ariz. Nov. 24, 2009) ........ 4, 6

*U.S. v. City of Los Angeles, Cal.,*
  288 F.3d 391 (9th Cir. 2002) ................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

### STATUTES

Fed. R. Civ. P. 24(a) .................................................................................................................. 2
Fed. R. Civ. P. 24(b) .................................................................................................................. 9

## I. INTRODUCTION

Under Ninth Circuit precedent, Rule 24 must be construed "liberally in favor of potential intervenors." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001). Accordingly, this Court has repeatedly allowed supporters of state laws and regulations to intervene to defend their constitutionality. *See*, *e.g.*, *Pickup v. Brown*, No. 2:12-CV-02497-KJM-EFB, 2012 WL 6024387, at *4 (E.D. Cal. Dec. 4, 2012) (granting intervention to nonprofit that lobbied for state law in challenge to law's constitutionality); *Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 309 (E.D. Cal. 2011) (granting intervention to nonprofit that lobbied for regulation in preemption challenge); *Nat'l Ass'n of Home Builders v. San Joaquin Valley Unified Air Pollution Dist.,* No. 1:07cv0820 LJO DLB, 2007 WL 2757995, at *5 (E.D. Cal. Sept. 21, 2007) (granting intervention to nonprofits that lobbied for regulation in preemption challenge); *see also Chinatown Neighborhood Ass'n v. Brown,* No. CV-12-3759-PJH, 2012 WL 4059896, at *1-2 (N.D. Cal. Sept. 14, 2012) (granting intervention to nonprofits—including The Humane Society of the United States ("HSUS")—that lobbied for state law in challenge to law's constitutionality); *Modesto Irrigation Dist. v. Gutierrez*, No. CIV-F-06-00453-OWW-DLB, 2007 WL 164953, at *1-2 (E.D. Cal. Jan. 18, 2007) (granting intervention to nonprofits that advocated for listing decision in challenge to listing's legality). In its motion to intervene, HSUS explained why it stands in precisely the same position as these intervenors. But in their opposition to HSUS' motion, Plaintiffs simply ignore these cases.

HSUS meets the requirements for intervention as of right under Federal Rule of Civil Procedure 24(a). Plaintiffs argue that HSUS lacks a protectable interest that may be impaired by this litigation. Opp'n at 4-5. But in this Circuit, "[a] public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported," *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995)—a rule that plainly applies here. Plaintiffs contend that HSUS' interest in preventing cruelty to egg-laying hens only extends to Prop 2, and not AB 1437. Opp'n at 6. Yet Plaintiffs never explain their counter-intuitive conclusion that HSUS has an interest in a ban on producing eggs inhumanely and unsafely, but not in a ban on selling inhumanely and unsafely produced eggs. And Plaintiffs argue that HSUS

1  cannot meet the "minimal" burden to show that California's representation of its interests "may
2  be" inadequate, *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir.
3  2011), because HSUS shares the same broad "ultimate goal" as California. Opp'n at 8. But
4  HSUS does not share California's goal: California wants to uphold AB 1437 only as narrowly
5  construed by the California Department of Food and Agriculture ("CDFA") regulations
6  purporting to implement it. But HSUS wants to defend only AB 1437 on far broader grounds.
7  And even if HSUS did share California's goal, that is not the test for whether a proposed
8  intervenor's interests are adequately represented. The question is whether the parties' interests
9  diverge in a way such that the representation of the intervenor's interests "by existing parties
10 '*may be*' inadequate." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823 (emphasis added). Here
11 those interests do diverge, because California "is a public [entity] that must balance relevant
12 environmental and health interests with competing resource constraints and the interests of
13 various constituencies" in a way that HSUS does not. *Nichols*, 275 F.R.D. at 308. And to the
14 extent there is any doubt on this point, HSUS and CDFA are on record vehemently disagreeing
15 about both Prop 2 and the egg safety regulations challenged in Plaintiffs' complaint.

16         Alternatively, this Court should grant HSUS permissive intervention under Rule 24(b).
17 Plaintiffs concede that HSUS has satisfied the three requirements for permissive intervention, but
18 argue that HSUS will dispute "collateral" issues and rehash their assertion that HSUS will be
19 adequately represented by California. Opp'n at 11. Their first argument is based on nothing but
20 conjecture and cannot be squared with Plaintiffs' earlier contention that HSUS will make
21 identical arguments to the state Defendants (collectively "California"). Opp'n at 8-9. And
22 adequacy of representation is irrelevant to permissive intervention: courts routinely permit
23 adequately represented groups to intervene. *See*, *e.g.*, *Pickup*, 2012 WL 6024387, at *3-4. It is
24 enough that HSUS "will provide a helpful, alternative viewpoint … that will aid the court in
25 resolving plaintiffs' claims fully and fairly." *Id.* at *4. HSUS meets this standard: its unique
26 viewpoint, perspective on AB 1437, and substantial expertise can only help the court in resolving
27 Plaintiffs' claims fully and fairly.

28         This Court should therefore grant HSUS' motion to intervene.

## II. ARGUMENT

### A. HSUS Is Entitled to Intervene As of Right.

#### 1. HSUS Has Significant Protectable Interests in the Subject Matter of This Litigation.

HSUS was a primary supporter of AB 1437 and has an organizational mission to prevent cruelty to egg-laying hens. Under Ninth Circuit case law, either interest is independently sufficient to establish a significant protectable interest in the subject matter of this case.

##### a) HSUS' Significant Protectable Interest in AB 1437.

"A public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has wsupported." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995). Plaintiffs attempt to evade this well-settled rule of law by distinguishing three of the six cases HSUS cites on their facts. Opp'n at 4-5. But Plaintiffs simply ignore the three most analogous cases, in which courts held that a nonprofit's support of a law or regulation created a significant protectable interest in the case. *See Pickup*, 2012 WL 6024387, at *1 (group that "sponsored and lobbied" for the challenged legislation had "'a protectable interest'"); *Nichols*, 275 F.R.D. at 306 (group that "advocated both the Regulation's adoption and strengthening" had significant interest in regulation); *Tucson Women's Ctr. v. Ariz. Med. Bd.*, No. CV-09-1909-PHX-DGC, 2009 WL 4438933, at *4 (D. Ariz. Nov. 24, 2009) (group that "supported the Act by providing testimony before the Arizona House Health Committee" had significant protectable interest in Act). HSUS stands in precisely the same position and possesses the same significant protectable interest as those groups, under Ninth Circuit law.

Plaintiffs question the depth of HSUS' involvement in enacting AB 1437, comparing it to HSUS's involvement in enacting Prop 2. Opp'n at 5. But the relative involvement of HSUS in two different legislative enactments is irrelevant. It is enough that HSUS was a primary supporter of AB 1437. And the Fearing Declaration makes clear the depth of that support: HSUS made the passage of AB 1437 its top legislative priority, devoting hundreds of hours of staff time to the effort, lobbying legislators, testifying at bill hearings, proposing amendments, urging newspaper editorial boards to support the bill, submitting official comments, utilizing email lists to generate

1  support, and serving as spokespeople regarding AB 1437.  Fearing Decl. ¶¶ 8-9.  Plaintiffs never

2  attempt to dispute these facts, which are before this Court in a sworn declaration.  *Id*.

3        Plaintiffs also argue that HSUS will not suffer a practical impairment of its interest in AB

4  1437, Opp'n at 5, but their argument is self-refuting.  Plaintiffs admit that "[a] successful

5  challenge to the constitutionality of [a law] necessarily impairs *everyone's* interest in [the law's]

6  continued viability."  *Id.*  They protest that "surely that doesn't permit *everyone* to intervene in

7  *every* case challenging [it]."  *Id*.  And, indeed, it does not.  But that is because *everyone* will not

8  have a significant protectable interest in the challenged law.  Here, as established by the facts

9  presented in the Fearing Declaration and HSUS' opening brief, HSUS does.

10        Plaintiffs also claim that HSUS' "interest could be furthered much more directly through

11  the enactment of Prop 2-like legislation in all 50 states."  *Id*.  But the question of whether HSUS

12  should be allowed to intervene in this action is unrelated to whether HSUS has other avenues to

13  carry out its mission, and the presence of alternatives does not in any way negate HSUS' interest

14  in AB 1437.  Defendants' argument is akin to arguing that environmental groups should not be

15  allowed to intervene to defend state pollution laws because they could enact federal laws instead.

16  And even if HSUS' choices did matter, lobbying for the enactment of laws in 50 different

17  states—not to mention foreign nations—is a far more circuitous way to protect HSUS's interests

18  in AB1437 than simply defending the law that HSUS fought for here in California.

19        **b)**    **HSUS' Significant Protectable Interests in Preventing Cruelty to Egg-Laying Hens, Ensuring That California Consumers Do Not Subsidize Cruelty, and Ensuring the Safety of the Egg Supply.**

22        HSUS has additional independently significant interests in AB 1437:  the prevention of

23  cruelty to egg-laying hens and the interests of HSUS' 1.4 million California supporters in eating

24  humanely produced, safe eggs.  Plaintiffs do not dispute that preventing cruelty to egg-laying

25  hens is a core HSUS mission and even acknowledge that "HSUS may have a significantly

26  protectable interest in upholding the animal welfare provisions of *Prop 2*."  Opp'n at 6 (emphasis

27  in original).  Plaintiffs argue, though, that HSUS' interest does not extend to AB 1437 because it

28  "merely proscribes the sale in California" of cruelly produced eggs.  *Id*. (emphasis omitted).

Plaintiffs never explain how HSUS could have a significant interest in a ban on *producing* eggs inhumanely and unsafely, but no interest in a ban on *selling* inhumanely and unsafely produced eggs. They provide no authority for such a counterintuitive distinction, which the Ninth Circuit rejected in *Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 952 (9th Cir. 2013). HSUS has a strong organizational interest in ensuring that California consumers, including HSUS members, are not complicit in or subsidizing cruelty when they purchase eggs, and in protecting consumer safety and welfare.

Plaintiffs argue that their lawsuit does not threaten the interest of HSUS members in consuming safe and humanely produced eggs because they do not seek to "*require* anyone in California to purchase eggs from conventional cages." Opp'n at 6 (emphasis in original). But HSUS members eat eggs contained in foods at restaurants, bakeries, schools and other places where they have no say over the source of their eggs. Under Plaintiffs' theory, consumers would never have a protectable interest in a product's safety because they are never *required* to buy it. That is not the law. Even the cases Plaintiffs cite for the proposition would come out differently if it were: the group's members who had a protectable interest in clean air in *Nichols* were not *required* to open their windows when the air was polluted, 275 F.R.D. at 306-07, and the members in *Tucson Women's Ctr.* who had a protectable interest in providing abortion counseling were not *required* to provide that counseling, 2009 WL 4438933, at *3. HSUS has significant protectable interests in this case.

**2.    California May Not Adequately Represent HSUS' Interests.**

"The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Montana Wilderness Ass'n*, 647 F.3d at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)). HSUS has asserted three reasons—all supported by cases from this Court—as to why California may not adequately represent its interests in this litigation. First, California may not adequately represent HSUS because California must balance animal welfare concerns with broader economic concerns—especially since it represents large numbers of egg retailers and wholesalers. *See Nat'l Ass'n of Home Builders*, 2007 WL 2757995, at *5 (finding inadequacy of

1  representation where "Proposed Interveners and the District share a general interest in public
2  health, [but] the District has a much broader interest in balancing the need for regulations with
3  economic considerations").  Second, California may not adequately represent HSUS because it
4  has been at odds with HSUS over AB 1437 and the egg safety regulations challenged in the
5  Complaint:  CDFA testified against Prop 2, counseled against passage of AB 1437, and issued
6  regulations purporting to implement AB 1437 that HSUS strongly opposed.  *See Nichols*, 275
7  F.R.D. at 308 (finding that state agency might not adequately represent proposed intervenor's
8  interests where "prior to the passage of the Regulation, the [proposed intervenor] and the ARB
9  were directly at odds on a number of pertinent issues").  Third, California may not adequately
10 represent HSUS because it lacks the same interest in litigating the principle of a state's right to
11 ban the sale of cruelly produced goods, the same strength of motivation to uphold AB 1437, and
12 the same knowledge of hen housing and animal welfare.  *See Picayune Rancheria of Chukchansi
13 v. Rabobank*, No. 13-cv-609-LJO-MJS, 2013 WL 2603954, at *4 (E.D. Cal. June 11, 2013)
14 (finding inadequacy of representation where defendant lacked "same interest," "motivation or
15 desire to commit time and funds," and "depth of knowledge of the facts" as intervenor).
16     Plaintiffs never engage with these cases.  Instead, they argue that California will
17 adequately represent HSUS' interests because it shares the same "ultimate goal" of defending AB
18 1437's constitutionality.  Opp'n at 7.  But HSUS and California do not share the same goal.
19 HSUS' goal is to defend AB 1437 in its broadest application, but not the CDFA regulations.  *See*
20 HSUS Proposed Motion to Dismiss, at 4, n.8.  California's goal is only to defend AB 1437 as
21 narrowly construed by CDFA regulations.
22     Furthermore, even if HSUS did share California's "ultimate goal," its different interests in
23 this litigation would rebut any presumption of adequacy.  *See Nichols*, 275 F.R.D. at 308 ("While
24 the NRDC and the ARB may share the same 'ultimate objective,' namely defending the
25 regulation against Plaintiff's preemption argument, the parties' interests are neither 'identical' nor
26 'the same.'" (citing *Sw. Ctr. For Biological Diversity*, 268 F.3d at 823)).  California's interests
27 are in representing its entire state, which includes both agricultural exporters and importers
28 threatened by a broad holding in this case and egg buyers (of which California itself is one of the

1  largest), some of whom oppose AB 1437.  By contrast, HSUS' interests are both more narrowly
2  focused on animal welfare, and more broadly focused on the precedential impact of this litigation
3  in other states.  For HSUS this litigation implicates not just AB 1437, but also dozens of similar
4  laws around the nation.  *See In Defense of Animals v. U.S. Dept. of the Interior*, No. 2:10–cv–
5  01852–MCE–DAD, 2011 WL 1085991, at *3 (E.D. Cal., Mar. 21, 2011) (finding federal
6  defendants might not adequately represent intervenors who "have specific interests in this regard
7  that may not be shared by the Federal Defendants, who represent a wide variety of sometimes
8  competing interests held by various segments of the general public").

9  Plaintiffs argue that HSUS "rel[ies] on conjecture" because it has failed to identify more
10 than one specific argument that it will make and California will not.  Opp'n at 8.  "But it is not
11 [HSUS'] burden at this stage in the litigation to anticipate specific differences in trial strategy.  It
12 is sufficient for [HSUS] to show that, because of the difference in interests, it is likely that
13 Defendants will not advance the same arguments as Applicants."  *Sw. Ctr. for Biological
14 Diversity*, 268 F.3d at 824.  HSUS' and California's plainly divergent interests meet this showing.

15 Plaintiffs next argue that California is adequately representing HSUS' interests because
16 California mentions animal welfare in its motion to dismiss.  Opp'n at 8-9.  But "[i]n assessing
17 the adequacy of representation, the focus should be on the 'subject of the action,' not just the
18 particular issues before the court at the time of the motion."  *Sw. Ctr. for Biological Diversity*,
19 268 F.3d at 823 (citation omitted).  It is enough for HSUS to show that California may not
20 "safeguard [its] legally protectable interests" and that HSUS "would likely offer important
21 elements to the proceedings that the existing parties would likely neglect."  *Id*.  HSUS has shown
22 that California may not safeguard its interests in animal welfare because California lacks HSUS'
23 interest in upholding a broad right for states to ban the sale of cruelly produced goods.  And
24 HSUS has shown that it will likely offer important elements to the proceedings through its unique

expertise, interest, and motivation in this case.[1]

Plaintiffs seek to dismiss HSUS' expertise, interest, and motivation by claiming "[v]irtually the same argument was raised in *Prete*." Opp'n at 9-10. But in *Prete v. Bradbury*, the court only considered the proposed intervenor's expertise, finding that it was unnecessary given the named defendant was "undoubtedly familiar" with the subject matter of the lawsuit. 438 F.3d 949, 958 (9th Cir. 2006). It never considered either unique interests or motivations. *Id.* Here, not only is neither the California Attorney General nor the Secretary of the CDFA an expert in hen welfare, they clearly do not possess the same interest or motivation in the subject as HSUS, and indeed fundamentally disagree with HSUS on the subject. Before HSUS championed the enactment of Prop 2 and AB 1437, the CDFA had never even addressed animal welfare standards. HSUS has been dedicated to the cause for decades, and brings to the case years of experience, numerous published reports, and substantial expertise in the animal welfare and food safety implications of hen housing systems. This Court should therefore allow HSUS to intervene as of right. *See Nichols*, 275 F.R.D. at 307 ("Any doubt as to whether the existing parties will adequately represent the intervenor should be resolved in favor of intervention.").

### B.  Alternatively, This Court Should Permit HSUS to Intervene.

Plaintiffs concede that HSUS has met the three threshold requirements for permissive intervention under Fed. R. Civ. P. 24(b). Opp'n at 10. But they argue the Court should deny intervention based on their supposition that HSUS will unduly delay adjudication of the case by advancing "collateral" arguments. *Id.* at 11. As an initial matter, Plaintiffs' argument cannot be squared with their simultaneous assertion that HSUS will make identical arguments to California. Opp'n at 8-9. But, in fact, the issues that Plaintiffs label "collateral"—hen housing and animal welfare—are the subject of detailed and lengthy factual allegations in Plaintiffs' complaint. *See* First Amended Complaint ¶¶ 3-5 (explaining hen housing requirements of Prop 2); ¶¶ 57-60

---

[1] Indeed "California's apparent reliance on HSUS' own arguments and research to support the state's animal welfare argument," Opp. at 9, argues for intervention, not against it. If California is relying on HSUS arguments and research on this point, it is because HSUS has greater expertise and experience in the area. This Court would be better served by getting those arguments and research directly from HSUS, allowing the Court and Plaintiffs to engage with them directly.

1  (same); ¶¶ 64-66 (describing animal welfare requirements of AB 1437 and CDFA regulations); ¶¶
2  68-75 (alleging no connection between hen housing and *Salmonella* contamination rates).
3  Indeed, the question of the relative in-state benefits of AB 1437—both to hen welfare and
4  consumer protection—lie at the very core of Plaintiffs' dormant Commerce Clause claim.
5  Plaintiffs cannot simultaneously argue that the challenged law does not advance animal welfare or
6  public health, and that such issues are "collateral" for purposes of deciding this intervention
7  motion.

8  Moreover, Plaintiffs never explain why this Court is uniquely unable to manage the case
9  to avoid delay. *See U.S. v. City of Los Angeles*, *Cal.*, 288 F.3d 391, 404 (9th Cir. 2002) (rejecting
10  undue delay as argument against permissive intervention where "the district court's management
11  of this case demonstrates that it is perfectly capable of managing this litigation in a fair, but
12  expedient fashion"). HSUS has cooperated with state defendants in previous defenses of
13  California state laws without creating delay. *See*, *e.g.*, *Cramer v. Brown*, 2:12-CV-3130-JFW-
14  JEM (C.D. Cal. June 4, 2012); *Chinatown Neighborhood Ass'n*, 2012 WL 4059896; *Association*
15  *of California Egg Farmers v. State of California*, No. 12-CECG-03695-DSB (Cal. Super. Ct.
16  Mar. 13, 2013). And HSUS' amicable negotiation of a joint motion and hearing schedule with
17  Plaintiffs and California in this litigation demonstrates that HSUS will cooperate to similarly
18  avoid any undue delay here.

19  Plaintiffs also argue that the Court should deny permissive intervention because HSUS'
20  interests are adequately represented by California. Opp'n at 11. As explained above, they are
21  not. But, more importantly, adequacy of representation is irrelevant to permissive intervention.
22  *See*, *e.g.*, *Pickup*, 2012 WL 6024387, at *4 (granting permissive intervention despite finding
23  adequacy of representation, noting that "Plaintiffs present no authority for the proposition that the
24  similarity between EQCA's position and the state defendants' position weighs against permissive
25  intervention").

26  Plaintiffs offer no valid ground to deny permissive intervention here. Because HSUS has
27  satisfied the threshold requirements, this Court may allow it to intervene. This Court has found
28  permissive intervention proper where proposed intervenors "will provide a helpful, alternative

viewpoint," *Pickup*, 2012 WL 6024387, at *4, or "will bring a unique perspective and expertise to this action," *Nichols*, 275 F.R.D. at 309.  As detailed in its motion to intervene, HSUS offers three unique aspects to this litigation:  HSUS will present the unique viewpoint that eggs from battery cages are inherently cruel and adulterated; it will offer the perspective of the group that sponsored AB 1437 and Prop 2, which contains the operative standards for AB 1437; and it will offer substantial expertise in the animal welfare and food safety implications of hen housing systems (expertise that Plaintiffs concede California is already relying on).  This unique viewpoint, perspective, and expertise can only help the Court in resolving Plaintiffs' claims fully and fairly.  This Court should therefore allow HSUS to permissively intervene.

### III.  CONCLUSION

For the reasons set forth above, this Court should grant HSUS' motion to intervene, both as of right and as a matter of permissive intervention.

Dated:  May 2, 2014

SCHIFF HARDIN LLP

By: */s/ Bruce A. Wagman*
    Bruce A. Wagman

J. SCOTT BALLENGER
Scott.Ballenger@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Ste. 1000
Washington, D.C.  20004
Telephone:   (202) 637-2145
Facsimile:   (202) 637-2201

PETER A. BRANDT
pbrandt@humanesociety.org
REBECCA CARY
rcary@humanesociety.org
THE HUMANE SOCIETY OF THE
UNITED STATES
2100 L Street, NW
Washington, D.C.  20037
Telephone:   (202) 452-1100
Facsimile:   (202) 676-2357

*Counsel for Proposed Defendant-Intervenor
The Humane Society of the United States*

SF\321033120.1