UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF MISSOURI, et al., | No. 2:14-cv-00341-KJM-KJN |
| Plaintiffs, | |
| v. | ORDER |
| KAMALA D. HARRIS, et al., | |
| Defendants. | |

The separate motions to intervene brought by the Humane Society of the United States ("HSUS") and the Association of California Egg Farmers ("ACEF") are currently pending before the court. The motions were submitted without argument and the court now GRANTS the motions.

I.      BACKGROUND AND ALLEGATIONS OF THE AMENDED COMPLAINT

On February 3, 2014, the State of Missouri initiated this action asserting two alternative causes of action under the Commerce and Supremacy Clauses. Compl., ECF No. 2.

On March 5, 2014, a first amended complaint was filed by the State of Missouri, the State of Nebraska, the State of Oklahoma, the State of Alabama, the Commonwealth of Kentucky and Terry Branstad, the Governor of the State of Iowa (collectively "plaintiffs"). First Am. Compl. ("FAC"), ECF No. 13.

/////

1

1  In the First Amended Complaint, plaintiffs allege as follows. In 2008, California voters approved Proposition 2 ("Prop 2") "'to prohibit the cruel confinement of farm animals' within California." *Id.* ¶ 56. Starting in 2015, Prop 2 will prohibit California egg producers from housing egg-laying hens in enclosures that prevent them from standing, lying down, turning around and fully extending their limbs, effectively banning the use of the cage-systems that have become conventional in the industry. *Id.* ¶ 57. The cost of complying with Prop 2 "would have placed California egg producers at a significant competitive disadvantage when compared to egg producers in Missouri and other states." *Id.* ¶ 61. "Faced with the negative impact Prop 2 would have on California's egg industry," the California Legislature passed AB 1437 in 2010, which requires out-of-state egg farmers to comply with the same requirements set forth in Prop 2. *Id.* ¶¶ 63–64. The California Department of Food and Agriculture promulgated regulations establishing minimum dimensions, set forth in section 1350 of title 3 of the California Code of Regulations ("section 1350"). *Id.* ¶ 65. "The stated purpose of AB 1437 is 'to protect California consumers from the deleterious, health, safety, and welfare effects of the sale and consumption of eggs derived from egg-laying hens that are exposed to significant stress that may result in increased exposure to disease pathogens including salmonella.'" *Id.* ¶ 68. Plaintiffs allege the purpose of AB 1437 "was not to protect public health but rather to protect California farmers from the market effects of Prop 2 by 'leveling the playing field' for out-of-state egg producers." *Id.* ¶ 70.

Even assuming AB 1437 serves a legitimate public health purpose within California by limiting the methods of egg production outside California, plaintiffs allege the statute is "expressly and implicitly preempted by the Federal Egg Products Inspection Act," 21 U.S.C. § 1031, because one of its express purposes "is to protect human health in connection with the consumption of shell eggs." *Id.* ¶¶ 76–81.

AB 1437 "imposes a substantial burden on interstate commerce by forcing plaintiffs' farmers either to forgo California's markets altogether or accept significantly increased production costs just to comply with California law." *Id.* ¶ 84. The "necessary capital improvements" in complying with AB 1437 and section 1350 "will cost Plaintiffs' farmers hundreds of millions of dollars." *Id.* ¶ 86. Even choosing to forgo the California market will

2

1  impose a substantial burden on interstate commerce because plaintiffs' farmers would produce a
2  surplus of eggs resulting in a decrease in the price of eggs. *Id.* ¶ 88.

3  With regard to a violation of the Commerce Clause, plaintiffs allege (1) AB 1437
4  and section 1350 "are protectionist measures intended to benefit California egg producers at the
5  expense of Plaintiffs' egg producers by eliminating the competitive advantage [their] producers
6  would enjoy once Prop 2 becomes effective;" (2) the provisions "have the purpose and effect of
7  regulating conduct" outside California; and (3) they "impose a substantial burden on interstate
8  commerce by forcing Plaintiffs' egg producers either to increase their production costs . . . or
9  forgo the largest market in the United States" with no legitimate state purpose. *Id.* ¶¶ 96–101.

10  With regard to plaintiffs' alternative Supremacy Clause claim, plaintiffs allege
11  even if the court finds AB 1437 and section 1350 serve a legitimate, non-discriminatory purpose,
12  "the statute and regulations would be in conflict with the express terms of 21 U.S.C. § 1052(b)."
13  *Id.* ¶¶ 103–105.

14  II.   LEGAL STANDARDS FOR INTERVENTION

15  Federal Rule of Civil Procedure 24(a) provides:

16  > On timely motion, the court must permit anyone to intervene who
17  > . . . claims an interest relating to the property or transaction that is
18  > the subject of the action, and is so situated that disposing of the
19  > action may as a practical matter impair or impede the movant's
20  > ability to protect its interest, unless existing parties adequately
21  > represent that interest.

20  The court applies a four-part test to determine whether intervention as of right is proper under
21  Rule 24(a): "(1) the application for intervention must be timely; (2) the applicant must have a
22  'significantly protectable' interest relating to the property or transaction that is the subject of the
23  action; (3) the applicant must be so situated that the disposition of the action may, as a practical
24  matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's
25  interest must not be adequately represented by the existing parties in the lawsuit." *Sw. Ctr. for*
26  *Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001). Rule 24(a) is construed
27  "liberally in favor of potential intervenors." *Id.* at 818. As plaintiffs do not dispute that the
28  /////

3

HSUS and ACEF motions were timely, ECF No. 46 at 13, the court considers only the last three prongs of the *Berg* test.

With regard to the second prong of the *Berg* test, a proposed intervenor has "a 'significant protectable interest' in [the] action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between [that] legally protected interest and the plaintiff's claims." *United States v. City of L.A.*, 288 F.3d 391, 398 (9th Cir. 2002) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). "The 'interest' test is not a clear-cut or bright-line rule, because '[n]o specific legal or equitable interest need be established.'" *Id.* (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993)). Under the interest test, courts are required "to make a 'practical, threshold inquiry' to discern whether allowing intervention would be 'compatible with efficiency and due process." *Id.* (citations omitted).

The third prong of the *Berg* test requires the proposed intervenor to show that resolution of the action may practically impair its ability to protect its interest. *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006). As the Ninth Circuit observes, "'[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" *Berg*, 268 F.3d at 822 (quoting FED. R. CIV. P. 24 Advisory Committee's Note (1966 Amendments)).

Proposed intervenors generally have a low burden to show that their interests are inadequately represented, as required by the fourth prong of the *Berg* test. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). Courts consider the following three factors in deciding whether the burden is met: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.* (citing *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986)). "The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties." *Id.* There is a presumption that an existing party to an action adequately represents the proposed intervenor's interest when both share the same ultimate objective. *Id.* To

4

rebut this presumption, the proposed intervenor must make a "very compelling" showing of inadequacy otherwise "it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." *Id.* (internal citation and quotation omitted).

If the proposed intervenor argues that its interpretation of a contested statute differs from that of the government, "the proposed intervenor must demonstrate a likelihood that the government will abandon or concede a potentially meritorious reading of the statute." *Lockyer*, 450 F.3d at 444.

Under Federal Rule of Civil Procedure 24(b), the court may allow intervention of a party who has made a timely motion and "has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  In the Ninth Circuit, "permissive intervention requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (internal quotation and citations omitted).

III.    HSUS MOTION TO INTERVENE

HSUS is "a nonprofit animal protection organization " that "has advocated against inhumane practices that harm farm animals, including those raised for meat, milk, and eggs." ECF No. 27 at 9.  It was a primary sponsor of AB 1437, one of the California provisions challenged in this action. *Id.* at 8. HSUS requests intervention as of right under Federal Rule of Civil Procedure 24(a), or in the alternative, permissive intervention under Federal Rule of Civil Procedure 24(b). ECF No. 27. Plaintiffs Missouri, Nebraska, Oklahoma, Alabama, Kentucky, and Governor Branstad oppose the HSUS motion. ECF No. 46. HSUS represents defendants do not oppose. ECF No. 27 at 7 n.1.

For the reasons set forth below, the court GRANTS HSUS's alternative request for permissive intervention.

/////

/////

A.     Significantly Protectable Interest

HSUS contends it has two significantly protectable interests in plaintiffs' challenge to AB 1437: it was one of the primary supporters of the legislation, and it is an organization dedicated to preventing cruelty to egg-laying hens. ECF No. 27 at 13. HSUS avers it worked with Assemblyman Jared Huffman, "testified in support of AB 1437 at bill hearings," "lobbied legislators, proposed amendments, urged newspaper editorial boards to support the bill, submitted official comments in support, utilized email lists to generate support, and served as media sources and spokespeople regarding AB 1437." *Id.* HSUS further argues its "organizational interest in preventing cruelty to egg-laying hens, and in supporting state sales bans on cruelly produced products" also provides a significantly protectable interest, its having invested substantial resources in educating the public. *Id.* at 14.

In opposition, plaintiffs argue HSUS is unlike other public interest groups who have been granted leave to intervene as of right, because it was not the "'architect' or even a 'sponsor'" of AB 1437. ECF No. 46 at 5.

A "public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Bates v. Jones*, 127 F.3d 870, 874 (9th Cir. 1997) (quoting *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995)). In *Idaho Farm Bureau Fed'n*, the Ninth Circuit approved the district court's granting of a motion by conservation groups to intervene as defendants under Rule 24(a) because the conservation groups participated not in a voter-approved initiative, but in the administrative process leading to the agency action challenged in the case. 58 F.3d at 1397–98; *see also Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (summarizing cases).

Here, HSUS supported the passing of AB 1437 and has an interest in the protection of animal welfare. Even though HSUS was not the "architect" of AB 1437, its sponsorship of AB 1437 is sufficient to show it has a significantly protectable interest in this action. HSUS is not unlike other public interest groups who demonstrated a significant interest through involvement in the enactment of a challenged regulation. *See*, *e.g.*, *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527–28 (9th Cir. 1983) (conservation group's interests in the

6

protection of animals and its active participation in proceedings establishing a conservation area entitled it to intervene as of right in an action challenging the federal government's establishment of the area); *Idaho v. Freeman*, 625 F.2d 886 (9th Cir. 1980) (organization entitled to intervene in litigation challenging Equal Rights Amendment it actively supported).  HSUS meets this threshold requirement.

B. Impairment of Interest

HSUS argues an adverse judgment in this action would impair its protectable interests because it would "impair or impede" its interest in the law's "continued viability" and "would undo" all of its "extensive work to pass AB 1437," leaving HSUS with "'no other avenue' to protect its interest in AB 1437."  ECF No. 27 at 14 (quoting *Tucson Women's Ctr. v. Ariz. Med. Bd.*, No. CV–09–1909–PHX–DGC, 2009 WL 4438933, at *5 (D. Ariz. Nov. 24, 2009)).  HSUS further argues an adverse judgment would impair its interest in preventing cruelty to egg-laying hens and the sale of cruelly produced products.  ECF No. 27 at 14–15.

Plaintiffs take issue with the argument that HSUS would have no other avenue to protect its interest in AB 1437, suggesting HSUS's interest "could be furthered much more directly through the enactment" of similar legislation in other states.  ECF No. 46 at 5.  Plaintiffs argue HSUS's interests are not at issue in this action because AB 1437 was enacted "to protect the health of California consumers, not the welfare of California animals."  *Id.* at 6 (emphasis omitted).  Finally, plaintiffs argue HSUS's California supporters' interests in consuming humanely produced eggs will not be impaired because the relief sought by plaintiffs in this action would not require Californians to purchase eggs produced using conventional cage methods, it would simply permit them to if they choose.  *Id.* at 6–7.  As plaintiffs point out later in their brief, however, California asserts the legislation at issue was passed, in part, for the protection of animal welfare, ECF No. 46 at 9, so any argument that HSUS's interests are not at issue in this action is untenable.

Here, the court finds the position of HSUS is similar to that of conservation groups devoted to the protection of animals and whose interests in the outcome of litigation challenging the withdrawal of nearly 500,000 acres of land from a proposed conservation area could have

7

been impaired by an adverse decision. *See*, *e.g.*, *Sagebrush*, 713 F.2d at 526–28 (citing *Wash. State Bldg. & Constr. Trades v. Spellman*, 684 F.2d 627 (9th Cir. 1982); *Freeman*, 625 F.2d at 886). HSUS dedicated significant resources as a primary supporter of AB 1437, the legislation at issue in this action. ECF No. 27 at 13–14. While HSUS certainly has the option of supporting similar legislation in other states, that does not diminish its efforts to protect animal welfare through its support of AB 1437 in California.

Having determined HSUS has a significantly protectable interest in the outcome of the action, the court similarly finds resolution of the action in plaintiffs' favor may impair HSUS's ability to protect its organizational interests, namely its interest in protecting egg-laying hens from cruel treatment.

C.     Inadequate Representation

HSUS argues California's interests are broader than its own because California "must balance animal welfare concerns with economic, political, and resource constraints." ECF No. 27 at 16. HSUS posits California government agencies "may perceive a financial incentive in restricting the implementation of AB 1437." *Id.* In that regard, HSUS argues defendants "may not be willing to make" some of its arguments because California would "likely not welcome the political ramifications of admitting to allowing acknowledged animal cruelty, or the sale of unsafe eggs." *Id.* at 16–17. Further, HSUS argues California may favor a narrow ruling while HSUS seeks to defend all states' rights to ban the sale of cruelly produced goods. *Id.* at 17. Finally, HSUS argues, "[a]s one of the primary supporters of AB 1437, HSUS can best explain to the Court the humane interests that drove passage of AB 1437" and "present this Court with the necessary expertise on the animal welfare and public health effects of the relevant egg production practices," thus offering a necessary element that would otherwise be neglected. *Id.* at 17–18.

In reply, plaintiffs argue a difference in strategy is not sufficient to establish HSUS's interests will not be adequately represented by defendants. ECF No. 46 at 8 (citing *Pickup v. Brown*, No. 2:12–CV–02497–KJM–EFB, 2012 WL 6024387, at *3 (E.D. Cal. Dec. 4, 2012)). Plaintiffs point to defendants' motion to dismiss, arguing HSUS's contention that California may not be willing to make an argument regarding animal welfare is "unfounded."

1  ECF No. 46 at 8–9 (citing ECF Nos. 36, 42). Plaintiffs note defendants assert in their motion to
2  dismiss both protection of animal welfare and protection of public health and safety were the
3  driving forces behind the enactment of AB 1437; and request judicial notice of, *inter alia*, a report
4  prepared by HSUS on the welfare of hens in battery cages and several letters of support from
5  animal welfare groups including HSUS. *Id.*; *see* ECF No. 36 at 8, 18. Plaintiffs argue that
6  because defendants apparently rely on HSUS's arguments and research, HSUS fails to
7  demonstrate a likelihood plaintiffs will abandon a potentially meritorious position. ECF No. 46 at
8  8 (quoting *Lockyer*, 450 F.3d at 444). Plaintiffs argue the suggestion that defendants may accept
9  a narrow interpretation of AB 1437 is unavailing because defendants have not advanced a narrow
10 interpretation. *Id.*

11          Here, while HSUS argues defendants may not be willing to make certain
12 arguments because of potential political ramifications, or may favor a narrow interpretation of AB
13 1437, HSUS fails to demonstrate a likelihood that defendants will "abandon or concede a
14 potentially meritorious reading of the statute." *Lockyer*, 450 F.3d at 444; *see* ECF No. 36 at 8
15 (California's motion to dismiss sets forth the state's two main goals in passing AB 1437 and
16 section 1350: "protection of farm animal welfare and protection of public health and safety
17 through the prevention of salmonella"). In *Lockyer*, the proposed intervenor satisfied this
18 requirement because the government expressly advocated a narrow interpretation of the
19 challenged statute in its brief, which contradicted the broad interpretation supported by the
20 proposed intervenors. 450 F.3d at 444. Likewise, in *California Dump Truck Owners Ass'n v.*
21 *Nichols*, the court granted intervention as of right in part because the defendant indicated it was
22 "further considering amending" the challenged regulation "to make its application less stringent."
23 275 F.R.D. 303, 308 (E.D. Cal 2011) (internal quotations omitted). In *Freedom from Religion*
24 *Found., Inc.*, on the other hand, the court rejected the motion to intervene of a party who argued
25 the federal defendants might press a narrowing interpretation of the statute they were defending,
26 based on the government's policy of "construing a statute so as to avoid constitutional doubt."
27 644 F.3d at 841–42 (internal citation removed). The court explained there was no indication the
28 /////

1   federal government planned to make the narrowing argument or that it was even a useful
2   argument.  *Id.* at 842.
3           Similarly, HSUS argues it can best explain the humane interests that drove passage
4   of AB 1437.  But, defendants have not indicated a willingness to amend the challenged legislation
5   or their favoring a narrow ruling by the court.  Indeed, defendants explicitly assert animal welfare
6   and public safety as reasons for the challenged legislation and provide documentation in support
7   of the underlying motivations.  HSUS fails to make the requisite "very compelling" showing to
8   overcome the presumption defendants will adequately represent its interests in this action.
9   *Arakaki*, 324 F.3d at 1086.
10          Accordingly, HSUS's motion to intervene as of right is DENIED.
11      D.    Permissive Intervention
12          As noted, plaintiffs concede HSUS timely filed its motion to intervene and it
13  satisfies any jurisdictional requirements.  ECF No. 46 at 13.  Plaintiffs also concede the position
14  of HSUS that it shares a common question of law and fact with the State of California.  *Id.*  The
15  court therefore considers whether to exercise its discretion and grant HSUS's motion to intervene
16  under Rule 24(b).
17          HSUS argues intervention will not unduly delay or prejudice this action because
18  its motion was brought before California responded and it is not asserting new claims.  ECF No.
19  27 at 19.  HSUS also argues its "participation will help ensure a complete consideration of the
20  issues raised in this case and the best opportunity to serve the ends of justice" because of the
21  unique perspective it will bring to the litigation.  *Id.*  HSUS further avers it will bring "substantial
22  expertise in animal welfare to this litigation, as an advocate for the humane treatment of animals
23  for sixty years."  *Id.*
24          Plaintiffs argue HSUS's intervention will likely cause undue delay because of its
25  focus on the confinement of egg-laying hens, which will lead to irrelevant discovery.  ECF No. 46
26  at 10–11. Plaintiffs contend the crux of the litigation concerns "the power of states to restrain
27  trade based on conduct that occurs beyond their borders" and "[n]o amount of research on hen
28  /////

1   housing or expertise in animal welfare will help the Court determine the proper scope of the
2   dormant Commerce Clause." *Id.* at 11.

3   Here, California proffers one of the main reasons for passage of the legislation was
4   for the welfare of animals. As discussed above, plaintiffs focus on this reason in arguing
5   California will adequately represent HSUS's interests in the litigation. *See* ECF No. 46 at 10
6   (HSUS offers no reason to assume California "lacks the expertise to make arguments about the
7   welfare of laying hens"). Thus, information on egg-laying hen confinements may be a relevant
8   focus during discovery, with all the protections of the Federal Rules. Furthermore, the question
9   here is not, as plaintiffs argue, whether California will adequately represent HSUS's interests, but
10  rather whether HSUS satisfies the requirements under Rule 24(b). The court finds HSUS's
11  interests in animal welfare are germane to the legislation at issue and to the outcome of this
12  action. *See City of L.A.*, 288 F.3d at 404 ("[T]he idea of 'streamlining' the litigation . . . should
13  not be accomplished at the risk of marginalizing those . . . who have some of the strongest
14  interests in the outcome."). Further, HSUS has demonstrated it will bring a unique perspective to
15  this action that will enable the court to make a well informed decision regarding the claims at
16  issue.

17  Accordingly, the court GRANTS HSUS's motion for permissive intervention
18  under Federal Rule of Civil Procedure 24(b).

19  IV.     ACEF'S MOTION TO INTERVENE

20  ACEF is "a California nonprofit trade organization comprised of family-owned
21  and operated egg farms." ECF No. 33-1 at 9. "ACEF's principal purposes are to engage in
22  advocacy regarding policies affecting the egg farming industry . . . ." *Id.* It participated in the
23  rulemaking process of one of the California provisions challenged in this action, section 1350,
24  and "worked for many years to clarify the requirements of Proposition 2, the California voter
25  initiative enacted in 2008 that adopted the standard subsequently referenced in AB 1437." *Id.* at
26  9–10. Its members are subject to both of the California regulations challenged in this action. *Id.*
27  at 9. ACEF requests intervention as of right under Federal Rule of Civil Procedure 24(a), or in
28  the alternative, permissive intervention under Federal Rule of Civil Procedure 24(b). ECF No.

33-1. Plaintiffs Missouri, Nebraska, Oklahoma, and Governor Branstad oppose ACEF's motion. ECF No. 46. ACEF represents defendants do not oppose. ECF No. 33-1 at 6 n.1.

For the reasons set forth below, the court GRANTS ACEF's request for intervention as of right.

A.  Significantly Protectable Interest

ACEF argues it has a significantly protectable economic interest in the litigation challenging AB 1437 and section 1350 because its members comprise a considerable portion of the California egg industry and "any disruptions to the market that decrease consumption of eggs has a direct and significant impact" on them. ECF No. 33-1 at 13; *see also* ECF No. 47 at 2. In support of this argument, ACEF explains AB 1437 and section 1350 were passed in the wake of a salmonella outbreak in 2010 that resulted in a decrease in the demand for eggs. *Id.* Responding to the decrease in demand, the "hen enclosure requirements" in the legislation are "designed to help mitigate the health risks associated with eggs" and help protect against future outbreaks. *Id.* In other words, the legislation will help prevent contamination, which in turn will help prevent a decrease in egg consumption in California, thus benefitting ACEF and its members.

In opposition, plaintiffs argue ACEF fails to explain how its interests differ from California's, arguing ACEF's goal in defending AB 1437 is equivalent to California's and it should therefore not be permitted to intervene as of right. ECF No. 46 at 12:8–15. This argument is more appropriately considered in determining whether California will adequately represent ACEF's interests.

Here, accepting ACEF's well-pleaded allegations, *Berg*, 268 F.3d at 819–20, ACEF establishes it has a significantly protectable economic interest in the outcome of the litigation. Its members directly benefit from the protections of AB 1437 and section 1350 by way of a stable consumer egg demand in California, less threatened by potential salmonella outbreaks. Further, ACEF members' participation in the egg industry through the production and sale of egg products within California demonstrate an economic interest in the outcome of this action. *See*, *e.g.*, *Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) (union had right to intervene in action challenging law guaranteeing

prevailing wages because members had a significant interest in receiving the prevailing wage). Accordingly, ACEF meets this threshold requirement.

### B. Impairment of Interest

ACEF argues its "interest in ensuring that contaminated eggs are not sold in California would be undermined by an adverse judgment because AB 1437 and Section 1350 are designed to help protect" against the contamination of eggs in California. ECF No. 33-1 at 14. If these provisions are invalidated, ACEF contends, its members will lose the benefits of the protections the legislation provides. Plaintiffs do not address this argument in their opposition.

ACEF has established a significantly protectable interest. Generally, after determining a party has a protectable interest, courts have "little difficulty concluding" the disposition of the case may affect the interest. *Lockyer*, 450 F.3d at 442. Here, ACEF meets the third requirement for intervention as of right, as an adverse decision will impair its interest in preventing the sale of contaminated eggs in California.

### C. Inadequate Representation

ACEF argues California will not adequately represent its interests because it represents the broader public interest whereas ACEF is concerned solely with economic and food safety issues. ECF No. 33-1 at 15–16. ACEF relies on *Sierra Club v. Espy*, 18 F.3d 1203, 1207–08 (5th Cir. 1994), for the proposition that the government will not adequately represent the economic concerns of a proposed intervenor. ACEF also argues it "adds a necessary element to the proceedings" in that it can provide "the perspective of private businesses that are well-versed in the need for food safety and that support the positive health effects of AB 1437 and Section 1350." ECF No. 33-1 at 16. Finally, as ACEF points out in its reply brief, "[t]o the extent the asserted burden on commerce allegedly posed by AB 1437 turns on what precisely the Proposition 2 standard requires, ACEF could well part ways with California" considering it currently has a pending case against the State of California challenging "the vagueness of Proposition 2's standards." ECF No. 47 at 2–3.

Plaintiffs' only argument in opposition is that ACEF fails to make a compelling showing that its interests will be inadequately represented by California. ECF No. 46 at 12–13.

13

1   Here, ACEF's economic concerns with the safety of eggs consumed within
2   California may not be adequately represented by California. While California and ACEF both
3   share a common interest in defending AB 1437 and section 1350, California may not focus on
4   ACEF's economic interests in contrast to the broad public interest in ensuring egg products are
5   safe for consumption in California. *Californians For Safe & Competitive Dump Truck Transp.*,
6   152 F.3d at 1190 ("because the employment interests of [union's] members were potentially more
7   narrow and parochial than the interests of the public at large, [union] demonstrated that the
8   representation of its interests by the named defendants-appellees may have been inadequate").
9   Indeed, California's motion to dismiss does not address the economic interests of California egg
10  farmers who benefit from the legislation, suggesting it may not pursue this argument. *Berg*, 268
11  F.3d at 822–24 (noting defendants "cannot be expected" to protect intervenor's private interests);
12  *In Def. of Animals v. U.S. Dep't of the Interior*, 2:10–cv–01852–MCE–DAD, 2011 WL 1085991,
13  at *3 (E.D. Cal. Mar. 21, 2011) (intervenor's members had "specific interests . . . that may not be
14  shared by the Federal Defendants, who represent a wide variety of sometimes competing interests
15  held by various segments of the general public"). ACEF makes a very compelling showing that
16  California may not be willing to advance ACEF's arguments in defending AB 1437.
17  Accordingly, ACEF's motion to intervene as of right is GRANTED.

V.  CONCLUSION

19  For the foregoing reasons, HSUS's alternative motion for permissive intervention,
20  ECF No. 27, is GRANTED; and ACEF's motion for intervention as of right, ECF No. 33, is
21  GRANTED.
22  DATED: June 2, 2014.

_____
UNITED STATES DISTRICT JUDGE