KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
MARK R. BECKINGTON, State Bar No. 126009
Supervising Deputy Attorney General
SUSAN K. SMITH, State Bar No. 231575
Deputy Attorney General
 300 South Spring Street, Suite 1702
 Los Angeles, CA 90013
 Telephone: (213) 897-2105
 Fax: (213) 897-1071
 E-mail: Susan.Smith@doj.ca.gov
*Attorneys for Attorney General Kamala D. Harris
and California Department of Food and Agriculture*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE STATE OF MISSOURI, ex rel., Chris Koster, Attorney General; THE STATE OF NEBRASKA, ex rel. Jon Bruning, Attorney General; THE STATE OF OKLAHOMA, ex rel. E. Scott Pruitt, Attorney General; THE STATE OF ALABAMA, ex rel. Luther Strange, Attorney General; THE COMMONWEALTH OF KENTUCKY, ex rel. Jack Conway, Attorney General; and TERRY E. BRANSTAD, Governor of the State of Iowa,<br><br>                                     Plaintiffs,<br><br>          v.<br><br>KAMALA D. HARRIS, solely in her official capacity as Attorney general of California; KAREN ROSS, solely in her official capacity as Secretary of the California Department of Food and Agriculture,<br><br>                                     Defendants. | 2:14-CV-00341-KJM-KJN<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT BY DEFENDANTS ATTORNEY GENERAL HARRIS AND SECRETARY OF CALIFORNIA DEPARTMENT OF FOOD AND AGRICULTURE**<br><br>Date:         August 22, 2014<br>Time:        10:00 a.m.<br>Dept:         3, 15th Floor<br>Judge:       Hon. Kimberly J. Mueller<br>Action Filed: February 3, 2014 |

# TABLE OF CONTENTS

                                                                                                                   **Page**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 1

      I.      Plaintiffs Lack Standing to Challenge California's Shell Egg Laws ....................... 1

      II.     Plaintiffs' Commerce Clause Claim Fails as a Matter Of Law .............................. 4

            A.     Plaintiffs Fail to Allege Cognizable Discrimination Against Interstate Commerce ................................................................................. 4

            B.     Plaintiffs Fail to Allege That the Shell Egg Laws Regulate Interstate Commerce ................................................................................. 7

            C.     The Shell Egg Laws Serve a Legitimate Local Purpose and Their Benefits Outweigh any Burden on Interstate Commerce ............................ 8

      III.    Plaintiffs Fail to State a Claim for Preemption ....................................................... 9

            A.     The Shell Egg Laws are Not Expressly Preempted by Federal Law .......... 9

            B.     The Shell Egg Laws are Not Implicitly Preempted by Federal Law ........ 10

i

Reply in Support of Defs. Mot. To Dismiss (2:14-CV-00341-KJM-KJN)

# TABLE OF AUTHORITIES

Page

**CASES**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico Ex Rel. Barez*
458 U.S. 592 (1982) ............................................................................................. 2, 3

*Association des Eleveurs de Canards et d'Oies Du Quebec v. Harris*
729 F.3d 937 (9th Cir. 2013) ............................................................................. 4, 5, 6, 8

*Campbell v. Hussy*, 368 U.S. 297 (1961) .................................................................... 10

*Exxon Corp. v. Governor of Maryland*
437 U.S. 117 (1978) ............................................................................................. 4

*Freedom Holdings Inc. v. Spitzer*
357 F.3d 205 (2d Cir. 2004) ............................................................................... 7

*Georgia v. Pennsylvania R. Co*
324 U.S. 439 (1945) ............................................................................................. 3

*Healy v. Beer Inst.*
491 U.S 324 (1989) ............................................................................................. 7, 8

*Hunt v. Washington State Apple Adver. Comm'n*
432 U.S. 333 (1977) ............................................................................................. 6, 7

*Koretoff v. Vilsack*
841 F.Supp.2d 1 (D. D.C. 2012), *affirmed* 707 F.3d 394 (D.C. Cir. 2013) ............ 10

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) ............................................................................................. 2

*Minnesota v. Clover Leaf Creamery Co.*
449 U.S. 456 (1981) ............................................................................................. 6

*Nat'l Ass'n of Optometrists & Optometrists v. Harris,*
682 F.3d 1141 (2012) ........................................................................................... 7, 9

*National Solid Waste Mgmt Ass'n v. Meyer*
63 F.3d 652 (7th Cir. 1995) ................................................................................. 8

*Oregon Waste Systems, Inc. v. Department of Environmental Quality*
511 U.S. 93 (1994) ............................................................................................. 5

*Pennsylvania v. New Jersey*
426 U.S. 660 (1976) ............................................................................................. 2

ii

Reply in Support of Defs. Mot. To Dismiss (2:14-CV-00341-KJM-KJN)

## TABLE OF AUTHORITIES
### (continued)

Page

*Pennsylvania v. West Virginia*
  262 U.S. 553 (1923) ............................................................................................ 3

*Pike v. Bruce Church, Inc.*
  397 U.S. 137 (1970) ............................................................................................ 8

*United Egg Producers v. Davilla*
  871 F.Supp. 106 (D. P.R. 1994) ........................................................................ 10

*United States v. 1200 Cans of Pasteurized Whole Eggs*
  339 F. Supp. 131 (N.D. Ga. 1972) .................................................................... 10

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Article III, § 2 ....................................................................................... 2

**FEDERAL STATUTES**

21 U.S.C. § 1052(b) ................................................................................................ 9

**CALIFORNIA STATUES**

Health & Safety Code
  § 25981 .............................................................................................................. 4
  § 25982 .............................................................................................................. 4
  § 25990 .............................................................................................................. 4
  § 25996 ........................................................................................................... 4, 6
  § 25997 .............................................................................................................. 6

Food and Agricultural Code § 27521(a) ............................................................. 6, 9

**FEDERAL REGULATIONS**

7 C.F.R. pt. 56 ......................................................................................................... 9
21 C.F.R. § 118.12(d) ............................................................................................ 10
74 Fed. Reg. 33030, 33091 .................................................................................... 10

**STATE REGULATIONS**

California Code Regs. Title 3, § 1350 ............................................................ passim

iii

Reply in Support of Defs. Mot. To Dismiss (2:14-CV-00341-KJM-KJN)

## INTRODUCTION

California law prohibits the sale of eggs for human consumption *in California only*, regardless of their origin, if the eggs are the product of an egg-laying hen confined in violation of certain minimum animal care standards. Plaintiffs challenge these laws, but their Complaint is comprised of little more than boilerplate legal conclusions. In their opposition to the motion to dismiss, plaintiffs merely repackage the allegations of their complaint without addressing several key arguments made in the motion to dismiss.[1]

Plaintiffs fail to establish any basis to assert parens patriae standing. They do not allege, and cannot argue, the facts to establish harm to a "sufficiently substantial segment" of their population or discrimination against their citizens. At most, plaintiffs assert claims for a small private group of residents who produce shell eggs, but this is not enough to assert standing. The Complaint should be dismissed on this basis alone.

Additionally, the challenged California law is facially neutral, does not discriminate against interstate commerce and does not regulate extraterritorially. The state law does not expressly or implicitly conflict with federal law, which, in fact, authorizes *more stringent* state laws with respect to the prevention of salmonella.

Because plaintiffs are unable to allege facts which, if true, would demonstrate that the challenged California laws are unconstitutional, they cannot state a claim upon which relief may be granted. Accordingly, defendants respectfully request that the Complaint be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFFS LACK STANDING TO CHALLENGE CALIFORNIA'S SHELL EGG LAWS

As a threshold matter, plaintiffs have not alleged an injury in fact that would support standing to sue, and the burden is on plaintiffs to do so. For four of the states, plaintiffs fail to allege whether the particular state actually does *produce* any eggs *that are sold in California*: Alabama, Nebraska, Oklahoma and Kentucky. Compl. ¶¶ 18, 23, 28 and 33. With respect to

---

[1] State Defendants adopt all legal arguments and definitions made in the Motion to Dismiss, ECF #36 ("State Br.").

1

Reply by Defs. In Supp. Mot. To Dismiss (2:14-CV-00341-KJM-KJN)

Missouri and Iowa, there is no indication that egg producers from those states would suffer a concrete and particularized injury from the Shell Egg Laws or that they intend to sell non-compliant eggs in California. *See generally* Compl; State Br. at 5-6.[2]

In response, plaintiffs assert that "at least some of those shell eggs [from Alabama, Nebraska, Oklahoma and Kentucky] were shipped in to California in 2012 and 2013," but there is no specificity as to volume or which states. Opp. Br. at 16-17. Moreover, plaintiffs do not address the point that three of the states do not appear to have any egg handlers registered to sell shell eggs and that Oklahoma sells *no* shell eggs in California. State Br. at 5-6. Plaintiffs argue that even if producers in their states are not injured, *consumers* in those states will be injured, but this was not alleged. Opp. Br. at 17:14-26. Moreover, this argument cuts against their assertion that the market might be flooded with "surplus eggs" (Opp. Br. at 17:7-8), an outcome that, if true, would presumably mean consumers pay less for eggs in plaintiff states, not more.[3]

Plaintiffs also fail to allege facts which support parens patriae standing. First, plaintiffs argue that their quasi-sovereign interest is based on the "physical and economic" well being of their residents in general. However, plaintiffs have not alleged facts to suggest a "sufficiently substantial segment of [their] population" has been impacted by the Shell Egg Laws; they have not asserted an interest apart from the private egg producers. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico Ex Rel. Barez*, 458 U.S. 592, 607 (1982); *Pennsylvania v. New Jersey*, 426 U.S. 660, 666 (1976) (noting that the "critical distinction, articulated in Art. III, § 2, of the Constitution, between suits brought by 'Citizens' and those brought by 'States' would evaporate" if states were allowed to bring suits to redress private grievances). None of the cases cited by plaintiffs support their argument since these cases involved claims on behalf of all or a substantial portion of the state's citizens. *See Georgia v. Pennsylvania R. Co*, 324 U.S. 439, 443, 450 (1945) (complaint of

---

[2] Plaintiffs do not directly address the State's argument that the Complaint is not justiciable. *See* State Br. at 8-9. Rather, they merely treat justiciability as part of standing, but fail to articulate why there is a "genuine threat of imminent prosecution and not merely" the possibility of one. *Id.; compare* Opp. Br. at 15.

[3] Plaintiffs also argue that only one plaintiff needs standing to raise each claim (Opp. Br. at 16), but each plaintiff must have standing to be a valid party. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573-76 (1992) (generalized grievance of population at large does not satisfy the injury-in-fact requirement).

2

Reply by Defs. In Supp. Mot. To Dismiss (2:14-CV-00341-KJM-KJN)

conspiracy to fix rates for *all freight* to and from Georgia); *Pennsylvania v. West Virginia*, 262 U.S. 553, 592, 590 (1923) (challenge to right of first refusal granted West Virginia residents for purchase of natural gas; alleged injury to "a substantial portion of the state's population").

Even if producers of shell eggs in the plaintiff states are impacted by California law, this remains a *small subset* of the population in these states. Plaintiffs do not allege that shell egg producers are a "substantial segment" of their population. Further, just as ostensible consumer injury was not a valid substitute for actual injury, ostensible consumer injury is likewise insufficient to establish parens patriae standing. At most, plaintiffs argue (but did not allege) that they are protecting *consumers* of eggs, but this argument is undercut by their claim that the plaintiff states will be "flooded" with surplus eggs—thus driving the price down for consumers (the opposite of the citizens' interest in *Pennsylvania v. West Virginia,* where natural gas would be limited or eliminated from commerce). Plaintiffs are not protecting a "substantial segment" of their population; they are merely asserting a private grievance applicable to only a small subset of their citizens, shell egg producers. This is not enough to establish parens patriae standing.

Likewise, plaintiffs' argument that they are "preserving [their] rightful place as co-equal sovereigns in our federal system" fails because they have not alleged any discrimination against their citizenry. Opp. Br. at 13-14; *see Alfred L. Snapp & Son*, 458 U.S. at 609 (holding that Puerto Rico had a separate state interest in "securing residents from the harmful effects of discrimination" beyond workers' interests.) Rather, they seem to argue that any alleged constitutional violation is enough to establish parens patriae standing. But *Alfred L. Snapp & Son* does not stand for that proposition, nor do plaintiffs cite any case that does. Opp. Br. at 14:7-17. Applying the parens patriae standing doctrine as plaintiffs argue would essentially allow a wholesale bypass of the basic federal court standing requirement.

## II.   PLAINTIFFS' COMMERCE CLAUSE CLAIM FAILS AS A MATTER OF LAW

### A.   Plaintiffs Fail to Allege Cognizable Discrimination Against Interstate Commerce

The Shell Egg Laws require that all eggs sold in California meet certain standards, regardless of origin. They do not distinguish between eggs produced in or out of state. A statute

3

that bans the sale of both intrastate and interstate products is not discriminatory. *Association des Eleveurs de Canards et d'Oies Du Quebec v. Harris*, 729 F.3d 937, 948 (9th Cir. 2013). In *Association des Eleveurs*, the Ninth Circuit rejected a Commerce Clause challenge to California's laws governing the production and sale of foie gras, laws that are identical in pattern to the Shell Egg Laws. Plaintiffs fail to distinguish the case in any meaningful way. Opp. Br. at 22-25.

Contrary to plaintiffs' assertion, the Commerce Clause challenge in *Association des Eleveurs* was reviewed de novo, so the different procedural posture of the this case is irrelevant. *Id.* at 944; *compare* Opp. Br. at p. 22. Further, the Ninth Circuit rejected the same arguments that plaintiffs make here in asserting that AB 1437 is aimed solely at out-of-state producers. Opp. Br. at 23-26. As the Ninth Circuit observed in upholding the foie gras ban: "Section 25981 serves an entirely different purpose than section 25982. . . . Section 25982 applies to both California entities and out-of-state entities and precludes sales within California of products produced by force feeding birds regardless of where the force feeding occurred." *Id.* at 949.

Similarly, here, AB 1437 prohibits the sale of eggs *in California* from hens not raised in compliance with certain animal care standards. Cal. Health & Safety Code § 25996. These standards are set forth in section 25990. The statutes here, like the ones in *Association des Eleveurs*, are complementary and work together to achieve this outcome. Additionally, Plaintiffs' offer no legal support for their suggestion that the Shell Egg Laws should be distinguished from the foie gras statute merely because the Shell Egg Laws were not created on the same day by the "same piece of legislation." Opp. Br. at 25-26.

Finally, plaintiffs attempt to distinguish *Association des Eleveurs* and *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 119-120 (1978), on the ground that there were no comparable in-state businesses to be impacted by the state law in those matters. Opp. Br. at 23-24. However, even if this were accurate,[4] it cuts against plaintiffs' argument. Here, there are comparable in-state businesses indisputably affected by the challenged state legislation. Thus, the Ninth Circuit's holding applies here without any need to rely on its full reach: "[A] statute that

---

[4] Plaintiffs assertion that there were no in-state foie gras producers is not supported by any citation (Opp. Br. at 24:22) and is not accurate.

4

'treat[s] all private companies exactly the same' does not discriminate against interstate commerce. . . This is so even when only out-of-state businesses are burdened because there are no comparable in-state businesses. *Association des Eleveurs*, 729 F.3d at 948 (internal citations omitted). Plaintiffs' attempts to distinguish *Association des Eleveurs* are to no avail.

Furthermore, plaintiffs do not allege or argue facial discrimination. Opp. Br. at 20:24. Rather, they argue that the Shell Egg Laws have a discriminatory purpose and effect because they "eliminate[] the market advantage out-of-state egg farmers had over their California competitors under Prop 2." Opp. Br. at 19:17-19, 20-30. This misapprehends the law. Discrimination "simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Systems, Inc. v. Department of Environmental Quality*, 511 U.S. 93, 99 (1994). But plaintiffs do not contend that the Shell Egg Laws discriminate *to benefit* in-state interests. Compl. ¶¶ 56- 61. At most plaintiffs allege that egg producers in California were afforded more notice to comply with the provisions of AB 1437, while acknowledging that all egg producers were given four and one half years to comply. Compl. ¶ 67. Plaintiffs concede that California and out-of-state producers will be tasked with the same requirements and costs. Opp. Br. at 24. Although plaintiffs make much of the fact that AB 1437 and Proposition 2 serve different purposes, this has no bearing on the analysis in *Association des Eleveurs*, the Ninth Circuit observed that the foie gras statute sections, which were upheld, served "different purpose[s]." *Association des Eleveurs*, 729 F.3d at 949; compare Opp. Br. at 25:7-9.

Plaintiffs argue that the public health purposes of AB 1437 are pretextual and the bill's true purpose was to protect California farmers from the market effects of Proposition 2. Opp. Br. at 25-26. This conclusory claim is not supported by the legislative findings or the law. AB 1437 had two purposes: protection of farm animal welfare and protection of public health and safety through the prevention of salmonella. Cal. Health & Safety Code §§ 25996, 25997; *see also* RJN at 9, 28, 30-37, 39-62 (HSUS Report), 66-98 (PEW report), 115-122, 255.[5] Plaintiffs do not

---

[5] Plaintiffs seem to argue the Shell Egg Regulations are discriminatory as well, but the separate purpose of the regulations is to "assure that healthful and wholesome eggs" are sold *in*
(continued...)

5

Reply by Defs. In Supp. Mot. To Dismiss (2:14-CV-00341-KJM-KJN)

1 allege that the purposes of Shell Egg Laws are not supported by science or legislative history.
2 Compl. ¶ 71. Additionally, a "statute that 'treats all private companies exactly the same' does not
3 discriminate against interstate commerce." *Association des Eleveurs*, 729 F.3d at 948. The
4 combined effect of Proposition 2 and AB 1437 taken in total is to subject in-state and out-of-state
5 commerce to equivalent burdens, an effect that does not violate the Commerce Clause. *Id.* at 949;
6 *see also Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 471-72 (1981) (state statute that
7 regulates milk containers without regard to location of the milk, containers or the sellers regulates
8 "evenhandedly").

9 The decision in *Hunt v. Washington State Apple Adver. Comm'n*, cited by plaintiffs, is
10 inapposite. Opp. Br. at 26-29. None of the three reasons the Supreme Court gave in *Hunt* for
11 holding that a North Carolina apple labeling statute discriminated against Washington apples are
12 present here. *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 352 (1977)
13 (stating North Carolina law raised the cost of doing business for Washington producers, but not
14 North Carolina; stripped away Washington's advantage from implementing expensive inspection
15 system; and "downgrade[d]" Washington apples). Unlike the North Carolina statute, the Shell
16 Egg Laws apply to all producers the same–both in California and the plaintiffs' states–impacting
17 doing business in California for all states equally. Furthermore, unlike in *Hunt*, plaintiffs have
18 not alleged or argued that their states have earned an advantage over California producers.
19 Plaintiffs did not allege or argue that their shell eggs are "superior" to the California shell eggs,
20 thus there will be no "downgrade" of a superior product. Compare *id.*[6] To the contrary, the Shell
21 Egg Laws will improve the welfare of animals producing for a California market and will

---

(...continued)
*California.* Cal. Food & Agric. § 27521(a). Plaintiffs do not mention this or specify how the Regulations do not meet this nondiscriminatory purpose. Opp. Br. at 28.29.

[6] Plaintiffs' argument regarding the purpose of the North Carolina law are made out of context. Opp. Br. at 28-29. The court concluded that the challenged statute was unconstitutional even if enacted for the declared purpose of protecting consumers from deception and fraud. *Hunt* at 342-43. Additionally, plaintiffs' assertions regarding the purpose behind the Shell Egg regulations are unclear (Opp. Br. at 30), and in at least one instance incorrect. The statement that cage-size restrictions are imposed on out-of-state egg farmers, but vaccinations are not is inaccurate. *See* Cal. Code Regs. tit. 3, § 1350 (regulations including vaccinations imposed on all producers and handlers).

6

Reply by Defs. In Supp. Mot. To Dismiss (2:14-CV-00341-KJM-KJN)

improve the quality of shell eggs sold here.

### B. Plaintiffs Fail to Allege That the Shell Egg Laws Regulate Interstate Commerce

A statute impermissibly regulates extraterritorial conduct in violation of the Commerce Clause where it "has the undeniable effect of controlling commercial activity occurring *wholly* outside the boundary of the State." *Healy v. Beer Inst.*, 491 U.S. at 336 (invalidating a statute under the Commerce Clause because it had the practical effect of controlling prices in other states) (emphasis added).

Plaintiffs argue that in regulating the method of production of eggs sold in the state, California is forcing egg farmers in their states to change their production methods, including for eggs sold outside of California (Opp. Br. at 30-31), but fail to explain how that is so. Producers in other states may choose not to sell shell eggs in California—there are no allegations that producers in other states will be required to sell in California. Even assuming that the statute may have an effect on industries outside of California, "[t]he mere fact that state action may have repercussions beyond state lines is of no judicial significance so long as the action is not within that domain which the Constitution forbids." *Freedom Holdings Inc. v. Spitzer*, 357 F.3d 205, 220-21 (2d Cir. 2004). A statute is not "invalid merely because it affects in some way the flow of commerce between the States." *National Ass'n of Optometrists*, 682 F.3d 1141, 1148 (9th Cir. 2012) (citation omitted). Similarly, there is no requirement that only producers who comply with the California animal care provisions may sell in California. Rather, the California law is much more limited—only shell eggs produced by hens meeting the animal care requirements may be sold in California. Thus, out-of-state producers may choose not to sell in California, or sell only a portion of their eggs (those that comply with the California law) and sell the remainder in other markets.

The Seventh Circuit's opinion in *National Solid Wastes Mgmt. Ass'n v. Meyer*, cited by plaintiffs, is distinguishable. In *National Solid Wastes*, Wisconsin barred certain kinds of waste from local landfills unless the waste was generated in a community that had an recycling program as defined by Wisconsin law. *National Solid Wastes Mgmt. Ass'n v. Meyer*, 63 F.3d 652, 655

7

Reply by Defs. In Supp. Mot. To Dismiss (2:14-CV-00341-KJM-KJN)

(7th Cir. 1995). Because "everyone in the community either must separate recyclables or must use a materials recovery facility in order for *anyone* to receive access to Wisconsin's landfills," the Seventh Circuit found this statute regulated commerce wholly outside the state. *Id.* at 655, 658 (noting that there were reasonable nondiscriminatory alternatives). Here, however, California has specified a nondiscriminatory regulation, and only those out-of-state producers that want to sell shell eggs *in California* would have to comply with the California standards.

California has not "projected its regulatory regime" into other states, and other states are free to take any action they deem appropriate with respect to the shell eggs and hens producing eggs in their states. *Healy*, 491 U.S. at 336-37. On its face, the Shell Egg Laws do not violate the dormant Commerce Clause because they do not regulate commerce outside of the state.

### C. The Shell Egg Laws Serve a Legitimate Local Purpose and Their Benefits Outweigh Any Burden on Interstate Commerce.

Application of the balancing test articulated in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), is unnecessary because plaintiffs have not alleged that there is a substantial burden on interstate commerce. *See* Opp. Br. at 32-33 (no citation to Amended Complaint for substantial burden, but stating plaintiffs will demonstrate burden at trial). Application of the *Pike* test requires that a plaintiff first establish a substantial burden on interstate commerce. *See, e.g., Association des Eleveurs*, 729 F.3d at 952 (finding that state law did not substantially burden interstate commerce and thus no need to use balancing test). First, most statutes "that impose a substantial burden on interstate commerce do so because they are discriminatory" (*Association des Eleveurs*, 729 F.3d at 952), but as discussed above, the Shell Egg Laws are not discriminatory. Second, "less typically, statutes impose significant burdens on interstate commerce as a consequence of 'inconsistent regulation of activities that are inherently national or require a uniform system of regulation.'" *Id.* (citations omitted).

Here, plaintiffs make conclusory statements about possible burdens on interstate commerce, asserting that farmers in plaintiff states can incur massive capital improvement costs to build larger habitats for some or all of their egg-laying hens or they can walk away from the largest egg market in the country. Opp. Br. at 33:3-7. But interstate commerce is not burdened "merely

8

Reply by Defs. In Supp. Mot. To Dismiss (2:14-CV-00341-KJM-KJN)

because a non-discriminatory regulation precludes a preferred, more profitable method of operating in a retail market." *National Ass'n of Optometrists*, 682 F.3d at 1154. And as described above, some plaintiff states do not even have egg producers selling in the largest egg market in the country, California, nor is there any indication they seek to sell in California. *See* Complaint ¶¶ 11-41, 88. Certainly, plaintiffs did not allege or argue in meaningful terms that there would be a substantial burden on interstate commerce—if there would be any burden at all.

### III. PLAINTIFFS FAIL TO STATE A CLAIM FOR PREEMPTION

#### A. The Shell Egg Laws Are Not Expressly Preempted by Federal Law

The federal preemption clause at issue states in part:

> [N]o State or local jurisdiction may require the use of standards of quality, condition, weight, quantity, or grade which are in addition to or different from the official Federal standards. . . . [A]ny State or local jurisdiction *may exercise* jurisdiction with respect to eggs and egg products for the purpose of preventing the distribution for human food purposes of any such articles which are *outside of such a plant* and are in violation of any of said Federal Acts *or any State or local law consistent therewith.*

21 U.S.C. § 1052(b) (emphasis added). Plaintiffs rely only on the portion of the preemption clause which would bar state egg grading standards "in addition to or different than" the federal standards but plaintiffs misconstrue the meaning of this phrase. Opp. Br. at 35-36. The EPIA defines the referenced "official standards" as egg grading standards outlined in 7 C.F.R. Part 56. *Id.* at § 1033(r). Plaintiffs ignore this argument from the opening brief (State Br. at 17), and instead assert that the clause bars all state law protecting the broadly-defined "quality" or "condition" of shell eggs. Opp. Br. at 35-37.

The Shell Egg Regulations do not deal with egg grading, but rather specify that pursuant to Food and Agricultural Code section 27521(a) (not AB 1437) egg producers or handlers are to implement certain salmonella prevention measure laws. Cal. Code Regs.,tit. 3, § 1350 (including enclosure size specifications, as well as a vaccination program and testing for salmonella in the "chick papers"). Similarly, nothing in the California Shell Egg Laws is inconsistent with the grading of shell eggs specified by federal law—nor have plaintiffs pointed to any inconsistency. Plaintiffs misconstrue the preemption issue, ignore the statutory definition of "official standards" and ignore EPIA's authorization of *consistent state laws.*

9

Reply by Defs. In Supp. Mot. To Dismiss (2:14-CV-00341-KJM-KJN)

Moreover, plaintiffs ignore several other arguments made in the opening brief. Plaintiffs do not contest that the preemption clause provides a floor, not a ceiling for shell egg regulation, and allows additional regulation by the states that is *consistent* with federal law. State Br. at 18-19. Additionally, plaintiffs miss that a stated purpose of the challenged California laws is to reduce salmonella, a goal authorized by federal regulations, and not preempted, as long as the states do not implement less stringent regulations. *See* 21 C.F.R. § 118.12(d); *see also* 74 Fed. Reg. 33030, 33091; State Br. at 19. Plaintiffs suggest that salmonella fits the definition of "condition" and perhaps "quality," making comparisons to salmonella in almonds (Opp. Br. at 36-37), but this comparison ignores the express language of federal law that authorizes state laws requiring additional and more stringent salmonella prevention measures.[7]

### B. The Shell Egg Laws Are Not Implicitly Preempted by Federal Law

Plaintiffs do not directly argue implied preemption, but rather make vague statements that the EPIA is a declared policy of national uniformity for the quality and condition of shell eggs. Opp. Br. at 35, 38 40:8-11. The decision in *Campbell v. Hussy*, cited by plaintiffs, is not persuasive or on point. In *Campbell*, the court held that Congress preempted the field of tobacco grading by establishing "official standards," for grading tobacco—not the issue here. *Campbell v. Hussey*, 368 U.S. 297, 300-302 (1961). Additionally, plaintiffs' argument that the EPIA imposes uniform "national standards for eggs related to the quality or condition of being adulterated with salmonella" (Opp. Br. at 38:6-7) is not supported by EPIA's language or history or the federal regulations that provide that states may regulate salmonella as long as they do not implement less stringent regulations. The Shell Egg Laws do not regulate the "grading and labeling" of eggs. There is no implicit preemption; plaintiffs' preemption claim should be dismissed.

---

[7] Additionally, cases cited by plaintiffs do not support their argument and are not controlling law. *United Egg Producers v. Davilla*, 871 F.Supp. 106, 108-09 (D. P.R. 1994), *affirmed* 77 F.3d 567 (1st Cir. 1996) (Puerto Rico imposing shell egg grading standards in addition to USDA official federal standards); *Koretoff v. Vilsack*, 841 F.Supp.2d 1, 9-12 (D. D.C. 2012), *affirmed* 707 F.3d 394 (D.C. Cir. 2013) (holding that "quality" is inherently ambiguous term in examining language of Agricultural Agreement Marketing Act and related "Almond Order" and "Salmonella Rule"); *see also United States v. 1200 Cans of Pasteurized Whole Eggs*, 339 F. Supp. 131, 136 (N.D. Ga. 1972) (finding that frozen eggs contaminated with salmonella are deemed "adulterated" under Food, Drug and Cosmetic Act).

10

Reply by Defs. In Supp. Mot. To Dismiss (2:14-CV-00341-KJM-KJN)

| | |
|---|---|
| Dated: June 5, 2014 | Respectfully Submitted,<br><br>KAMALA D. HARRIS<br>Attorney General of California<br>MARK R. BECKINGTON<br>Supervising Deputy Attorney General<br><br><br>/s/ Susan K. Smith<br>SUSAN K. SMITH<br>Deputy Attorney General<br>*Attorneys for Attorney General Kamala D. Harris and California Department of Food and Agriculture* |

SA2014114630
51527864.doc

11

Reply by Defs. In Supp. Mot. To Dismiss (2:14-CV-00341-KJM-KJN)

# CERTIFICATE OF SERVICE

Case Name:   **State of Missouri, ex rel., et al., v. Kamala D. Harris, et al.**   No.   **2:14-CV-00341-KJM-KJN**

I hereby certify that on June 5, 2014, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT BY DEFENDANTS ATTORNEY GENERAL HARRIS AND SECRETARY OF CALIFORNIA DEPARTMENT OF FOOD AND AGRICULTURE**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on June 5, 2014, at Los Angeles, California.

| Angela Artiga | /s/ Angela Artiga |
|---|---|
| Declarant | Signature |

51528731.doc