BRUCE A. WAGMAN (CSB No. 159987)
BWagman@schiffhardin.com
SCHIFF HARDIN LLP
One Market, Spear Street Tower
Thirty-Second Floor
San Francisco, CA  94105
Telephone:   (415) 901-8700
Facsimile:    (415) 901-8701

J. SCOTT BALLENGER *(pro hac vice)*
Scott.Ballenger@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Ste. 1000
Washington, D.C.  20004
Telephone:   (202) 637-2145
Facsimile:    (202) 637-2201

PETER A. BRANDT (CSB No. 241287)
pbrandt@humanesociety.org
REBECCA CARY (CSB No. 268519)
rcary@humanesociety.org
THE HUMANE SOCIETY OF THE
UNITED STATES
2100 L Street, NW
Washington, D.C.  20037
Telephone:   (202) 452-1100
Facsimile:    (202) 676-2357

*Counsel for Defendant-Intervenor
The Humane Society of the United States*

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE STATE OF MISSOURI, ex rel., Chris Koster, Attorney General; THE STATE OF NEBRASKA, ex rel. Jon Bruning, Attorney General; THE STATE OF OKLAHOMA, ex rel. E. Scott Pruitt, Attorney General; THE STATE OF ALABAMA, ex rel. Luther Strange, Attorney General; THE COMMONWEALTH OF KENTUCKY, ex rel. Jack Conway, Attorney General; and TERRY E. BRANSTAD, Governor of the State of Iowa,<br><br>Plaintiffs,<br><br>v.<br><br>KAMALA D. HARRIS, in her official | Case No. 2:14-cv-00341-KJM-KJN<br><br>**DEFENDANT-INTERVENOR THE HUMANE SOCIETY OF THE UNITED STATES' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM**<br><br>Date:   August 22, 2014<br>Time:   10:00 a.m.<br>Judge:  Kimberly J. Mueller |

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 2:14-CV-00341-KJM-KJN
DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF
SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

capacity as Attorney General of California; KAREN ROSS, in her official capacity as Secretary of the California Department of Food and Agriculture,

                Defendants,

and

THE HUMANE SOCIETY OF THE UNITED STATES, ASSOCIATION OF CALIFORNIA EGG FARMERS,

                Defendant-Intervenors.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 2:14-CV-00341-KJM-KJN

DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................... 1

II. ARGUMENT ............................................................................................................................ 2

    A. Plaintiffs Lack Standing .................................................................................................. 2

    B. Plaintiffs Fail to State a Dormant Commerce Clause Claim .......................................... 4

        1. *Ass'n des Eleveurs* Controls the Discrimination Claims in this Case ......... 4

        2. Plaintiffs Fail to Assert a Plausible Claim that AB 1437 Impermissibly Regulates Extraterritorial Activity ..................................... 6

    C. Plaintiffs Fail to State a Preemption Claim .................................................................... 7

        1. The EPIA Does Not Expressly Preempt AB 1437 ...................................... 7

        2. The EPIA Does Not Impliedly Preempt AB 1437 .................................... 10

III. CONCLUSION ...................................................................................................................... 10

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- i -   Case No. 2:14-cv-00341-KJM-KJN

DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

# TABLE OF AUTHORITIES

Page

## CASES

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,*
    458 U.S. 592 (1982) .................................................................................... 2, 3, 7, 10

*American Intern. Adjustment Co. v. Galvin,*
    86 F.3d 1455 (7th Cir. 1996) ................................................................................ 1, 7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................................. 3

*Commonwealth of Pennsylvania v. State of West Virginia,*
    262 U.S. 553 (1923) .................................................................................................. 3

*Exxon Corp. v. Governor of Maryland,*
    437 U.S. 117 (1978) .................................................................................................. 4

*Ford Motor Co. v. Texas Dept. of Transp.,*
    264 F.3d 493 (5th Cir. 2001) .................................................................................... 5

*Hall v. Nat'l Educ. Ass'n,*
    629 F.3d 992 (9th Cir. 2010) .................................................................................... 5

*Healy v. Beer Inst.,*
    491 U.S. 324 (1989) .................................................................................................. 6

*Hunt v. Washington State Apple Adver. Comm'n,*
    432 U.S. 333 (1977) .................................................................................................. 5

*Minnesota v. Clover Leaf Creamery Co.,*
    449 U.S. 456 (1981) .................................................................................................. 6

*Nat'l Meat Assn. v. Harris,*
    132 S.Ct. 965 (2012) ............................................................................................... 10

*Nat'l Solid Wastes Mgmt. Ass'n v. Meyer,*
    63 F.3d 652 (7th Cir. 1995) ...................................................................................... 6

*Native Village of Kivalina v. ExxonMobil Corp.,*
    696 F.3d 849 (9th Cir. 2012) .................................................................................... 3

*South Carolina v. Regan,*
    465 U.S. 367 (1984) .................................................................................................. 9

*State of Georgia v. Pennsylvania R. Co.,*
    324 U.S. 439 (1945) .................................................................................................. 3

*Total Coverage, Inc. v. Cendant Settlement Services Group, Inc.,*
    252 Fed. Appx. 123 (9th Cir. 2007) ..................................................................... 1, 7

Schiff Hardin LLP
Attorneys At Law
San Francisco

- ii -   Case No. 2:14-cv-00341-KJM-KJN
DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

# TABLE OF AUTHORITIES
*(Continued)*

**Page**

*United Egg Producers v. Davila,*
   871 F. Supp. 106 (D. P.R. 1994) .............................................................................................. 8

**STATUTORY AUTHORITIES**

21 U.S.C. § 678 .......................................................................................................................... 10
21 U.S.C. §1033 ............................................................................................................................ 9
21 U.S.C. §1033(r) ................................................................................................................ 2, 8, 9
21 U.S.C. §1052(b) ................................................................................................................. *passim*

**RULES AND REGULATIONS**

7 C.F.R. Part 56 ............................................................................................................................ 8
7 C.F.R. §57.1 ............................................................................................................................... 9
74 Fed. Reg. 33030, ................................................................................................................. 2, 8
Fed. R. Civ. P. 12(b)(1) ................................................................................................................ 1

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 91-1670 (Dec. 3, 1970) ...................................................................................... 10

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iii -   Case No. 2:14-cv-00341-KJM-KJN

DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

## I. INTRODUCTION

Plaintiffs' "amended combined opposition" (Dkt. 54) ("Opposition") to Defendants' and Defendant-Intervenors' motions (Dkt. 27, 36, 45) largely repeats their inadequately pled complaint. Plaintiffs cannot establish *parens patriae* standing to bring this suit because they fail to allege requisite facts establishing harm to a "sufficiently substantial segment" of their populations or discrimination against their sovereigns, or even that their few egg producers exporting to California are not already compliant with AB 1437. The Court should therefore dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(1).[1]

If, however, the Court reaches Plaintiffs' claims, it should dismiss them for failure to state a claim under Rule 12(b)(6). Plaintiffs' dormant Commerce Clause claim is controlled by *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 948 (9th Cir. 2013). That opinion binds this Court even if, as Plaintiffs claim, the Ninth Circuit relied on dictum in another case to reach its holding. This Court should reject Plaintiffs' attempts to distinguish *Ass'n des Eleveurs* based on the false factual premise that "there were no force-feeding foie gras producers in California at the time" (which there were) and the false legal premise that the enactment period of a law is constitutionally significant, when it is not. Opp. at 24-25. And Plaintiffs' extraterritoriality argument is foreclosed by the text of AB 1437, which only regulates the sale of eggs *in California*.

This Court should also reject Plaintiffs' preemption argument because it conflicts with Plaintiffs' factual pleadings and mischaracterizes the statutory text and structure. Plaintiffs "'may assert contradictory statements of fact only when legitimately in doubt about the facts in question.'" *Total Coverage, Inc. v. Cendant Settlement Services Group, Inc.*, 252 Fed. Appx. 123, 126 (9th Cir. 2007) (quoting *American Intern. Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996)). Yet Plaintiffs *concede* that their preemption argument is only applicable "if the Court were to

---

[1] Plaintiffs' brief should be rejected because it was filed in violation of the Court's 20-page limit on opposition briefs. *See* United States District Judge Kimberly J. Mueller, Standing Orders ("The court also places a page limit for dispositive motions of twenty (20) pages on all initial moving papers, twenty (20) pages on oppositions...."). Without seeking leave of court, Plaintiffs filed a brief that is more than twice (41 pages) the maximum amount of pages allowed. Plaintiffs admitted that they were addressing identical arguments from Defendants and Intervenors, and therefore present no reason for an oversize brief, even if they had followed the proper procedure and requested leave of court to double the amount of allowed pages.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 1 -   Case No. 2:14-cv-00341-KJM-KJN
DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

believe that AB 1437 was actually intended to prevent salmonella contamination," Opp. at 34, in direct conflict with their allegation that AB 1437 was *not* intended to prevent *Salmonella* contamination. *See*, *e.g.*, Opp. at 41.

Plaintiffs' preemption argument is contradicted by the plain text of the Egg Products Inspection Act ("EPIA"), which *explicitly authorizes* state regulation like AB 1437 and only bars state laws addressing "official Federal [egg grading] standards." 21 U.S.C. §§ 1033(r), 1052(b). Plaintiffs ignore both points, and instead claim that AB 1437 is "expressly preempted by the salmonella control measures mandated in the [EPIA]." Opp. at 1. But there *are no such measures* in the EPIA. And the agency which covers this area – the Food and Drug Administration ("FDA") – has made it clear that *its* shell egg *Salmonella* regulations "do not preempt ... more stringent [state] requirements." 74 Fed. Reg. 33030, 33091 (Jul. 9, 2009).

## II. ARGUMENT

### A. Plaintiffs Lack Standing.

Plaintiffs' Opposition fails to establish *parens patriae* standing to bring this suit. Plaintiffs continue to assert two quasi-sovereign interests: in their economic well-being and in not being discriminatorily denied their rightful status in the federal system. Opp. at 13. But Plaintiffs do not meet the requirements to assert either interest. And Plaintiffs still fail to assert an actual imminent injury from AB 1437.

*First*, Plaintiffs lack a quasi-sovereign interest in the economic well-being of their "residents in general" in this litigation because they have not identified a "sufficiently substantial segment of [their] population[s]" that will be affected by AB 1437. *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982). Plaintiffs' conclusory allegation that AB 1437 will harm their few egg producers and, therefore, their state economies (Opp. at 13-14) is not enough to support *parens patriae* standing – if it was, any state could step into the shoes of a handful of injured citizens, infinitely expanding the doctrine. Instead, Plaintiffs must allege injury to a "sufficiently substantial" segment of their populations. Yet Plaintiffs never dispute that *only a few* egg producers in their states are actually registered to sell shell eggs in California. Plaintiffs' generic economic well-being argument relies exclusively on off point cases that long predate

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 2 -     Case No. 2:14-cv-00341-KJM-KJN
DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

*Snapp*. In *State of Georgia v. Pennsylvania R. Co.*, Georgia's allegations of a vast antitrust conspiracy affecting *all goods* shipped to and from Georgia "[ran] far beyond the claim of damage to individual shippers," which the Court had previously held insufficient to confer *parens patriae* standing. 324 U.S. 439, 450-52 (1945). And in *Commonwealth of Pennsylvania v. State of West Virginia*, the alleged injury affected *all* "[t]he private consumers in each state." 262 U.S. 553, 592 (1923). By contrast, Plaintiffs merely allege that AB 1437 may hurt the few firms exporting eggs to California – and do not allege any injuries to their states' consumers. *See* First Amended Complaint ("FAC"). And, although Plaintiffs in their Opposition try to manufacture consumer injuries, Opp. at 13, the argument makes no sense: if, as Plaintiffs allege, their producers avoid the Californian market, egg prices would fall in their states – to the *benefit* of their in-state consumers.[2]

*Second*, Plaintiffs lack a quasi-sovereign interest in this litigation "in not being discriminatorily denied [their] rightful status within the federal system." *Snapp*, 458 U.S. at 607. Plaintiffs have not and cannot allege systematic discrimination against their citizenry. *Cf. id*. at 610 (granting *parens patriae* standing based on Puerto Rico's allegation that its citizens were systematically discriminated against under a federal employment scheme). In fact, Plaintiffs cannot allege discrimination at all: AB 1437 only regulates the sale of shell eggs *inside* California, regardless of origin, and it treats all producers the same.

*Third*, Plaintiffs show no actual, imminent injury. "[T]he complaint must allege sufficient facts plausibly establishing each element of the standing inquiry." *Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012). Plaintiffs assert that "[i]t is hardly speculative for Plaintiffs to allege that" in 2015 their states will export to California a large number of non-compliant shell eggs. Opp. at 15. But Plaintiffs' complaint never alleges the certainty or concrete plans required to establish injury in fact. Plaintiffs never allege that their producers are exporting *shell eggs* to California (as opposed to egg products) which are not *already compliant* with AB 1437, and that they have *concrete plans* to ship non-compliant eggs to California next year. *See* FAC. This Court cannot infer those facts from Plaintiffs' conclusory allegations that a few

---

[2] *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) (in reviewing motion to dismiss a court must "draw on its judicial experience and common sense" to determine whether Plaintiffs' allegations are "plausible.").

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 3 -   Case No. 2:14-cv-00341-KJM-KJN
DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

producers in Iowa and Missouri exported eggs to California two years ago (in 2012) and some want to again next year. *See* FAC ¶¶ 12, 38-40.[3]

### B. Plaintiffs Fail to State a Dormant Commerce Clause Claim.

Plaintiffs fail to show why the Ninth Circuit's recent opinion in *Ass'n des Eleveurs* does not control their dormant Commerce Clause discrimination claim. And Plaintiffs have not sufficiently pled that AB 1437 impermissibly regulates extraterritorial activity.

#### 1. *Ass'n des Eleveurs* Controls the Discrimination Claims in This Case.

Plaintiffs' attempts to distinguish *Ass'n des Eleveurs* do not hold up. *First*, the different procedural posture in that case is of no consequence. Opp. at 22. The Ninth Circuit issued a legal holding on the Commerce Clause claim, 729 F.3d at 948-51, which was not dependent on the standard of review. And the facts in Plaintiffs' complaint do not present any reason to distinguish that ruling from one on the case before this Court.

*Second*, Plaintiffs' reliance on *Exxon Corp. v. Governor of Maryland* is misplaced. 437 U.S. 117 (1978). Plaintiffs argue that the Ninth Circuit's holding in *Ass'n des Eleveurs* that a "statute that treat[s] all private companies exactly the same does not discriminate against interstate commerce … even when only out-of-state businesses are burdened because there are no comparable in-state businesses" was flawed because it relied on "dictum in *Exxon*" and Plaintiffs mistakenly believe *Exxon* is distinguishable. *Ass'n des Eleveurs*, 729 F.3d at 949. But the Ninth Circuit's opinion binds this Court *and* AB 1437 satisfies the *Exxon* ruling as well. *Exxon* rejected a dormant Commerce Clause challenge to a state law that regulated both in-state and out-of-state entities where "in-state independent dealers will have no competitive advantage over out-of-state dealers." 437 U.S. at 126. AB 1437 does not give in-state egg producers a competitive advantage over out-of-state producers. Instead, as in *Ass'n des Eleveurs*, because AB 1437 "bans the sale of both intrastate and interstate products that are the result of [cruelly treating] a bird, it is not discriminatory." 729 F.3d at 948.

*Third*, Plaintiffs' attempts to factually distinguish *Ass'n des Eleveurs* are based on false premises. Plaintiffs argue that this case is unique because in *Ass'n des Eleveurs* "there were no

---

[3] If the Court does not dismiss on standing grounds, HSUS requests the opportunity to take jurisdictional discovery with respect to Plaintiffs' alleged factual bases for standing.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 4 -   Case No. 2:14-cv-00341-KJM-KJN
DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

force-feeding foie gras producers in California at the time both laws were passed." Opp. at 24. But even if this distinction had legal significance – and Plaintiffs cite no authority to support that idea – it is simply incorrect: there *was* a foie gras producer in California when the laws at issue in *Ass'n des Eleveurs* passed.[4] Similarly, Plaintiffs cite no authority to support the notion that it is legally significant, in assessing a Commerce Clause claim, that two laws were "enacted on the *same day* ... by the *same body* ... as a part of *the same piece of legislation* ... and provided the *same amount of time* for in-state and out-of-state parties adversely affected by the statute." Opp. at 25 (emphasis in original). Nor can Plaintiffs meaningfully distinguish the laws at issue here based on the differing legislative purposes of Prop 2 and AB 1437. Opp. at 25. In lieu of legislative history, Plaintiffs continue to rely primarily on reports from non-legislative entities that post-date the Legislature's passage of AB 1437. Opp. at 25-26. Indeed, the actual legislative findings have nothing to do with protectionism, but reflect an even-handed desire that all eggs sold in California should come from eggs raised in more sanitary and humane conditions. *See* AB 1437.

*Fourth*, Plaintiffs' citation to *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333 (1977) is off point. Opp. at 26. The North Carolina statute challenged in *Hunt* prohibited the display of Washington State apple grades, which had gained nationwide acceptance among consumers. The Court held that the law at issue was discriminatory and constituted economic protectionism of in-state entities because it *both* stripped away the economic advantages for an out-of-state participant in a local market, and left "those of their North Carolina counterparts unaffected." *Hunt,* 432 U.S. at 350-52. Plaintiffs' attempt to compare Prop 2 and AB 1437 to the North Carolina statute fails because in *Hunt* the in-state entities were given a clear advantage over out-of-state entities – and no such allegation does (or could) exist here. And Plaintiffs' absurd argument that a state can never

---

[4] *See* Declaration of Jennifer Fearing (Dkt. 27), *Ass'n des Eleveurs de Canards et d Oies du Quebec et al v. Kamala J Harris et al.* (C.D. Cal.)*,* No. 2:12-cv-05735-SVW-RZ. Although this Court must accept all well-pled factual allegations as true on this motion, it is not "required to accept as true allegations that contradict ... matters properly subject to judicial notice." *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Plaintiffs incorrectly attribute to the Ninth Circuit their mistaken belief that there was a "pre-existing absence of in-state foie gras producers" (Opp. at 24) but the court never gave any indication that it shared that misunderstanding or that it viewed the presence or absence of such in-state production to be of any legal significance. *See also Ford Motor Co. v. Texas Dept. of Transp*., 264 F.3d 493, 502 (5th Cir. 2001).

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 5 -    Case No. 2:14-cv-00341-KJM-KJN
DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

remove an advantage that may exist for out-of-state entities is supported by no authority. The dormant Commerce Clause prohibits local economic protectionism; it does not require the preservation of laws favorable to businesses in other states.[5] Because AB 1437 treats all eggs sold in California exactly the same, it does not run afoul of the Commerce Clause.

*Fifth*, Plaintiffs provide no support for their claim that AB 1437 imposes burdens on interstate commerce in excess of its local benefits. Plaintiffs' allegations as to any potential burdens are speculative at best. Even taken as true, Plaintiffs do not meet their burden of providing specific details of how AB 1437's alleged burden on commerce outweighs California's strong interests in promoting animal welfare and preventing *Salmonella* food poisoning.

### 2.  **Plaintiffs' Extraterritorial Regulation Claim is Implausible.**

Plaintiffs' argument that AB 1437 regulates extraterritorial activity also fails. *See* Opp. at 30. AB 1437 does not force producers in any state to change their production practices *unless* they wish to sell their eggs in California. Plaintiffs rely on *Healy v. Beer Inst.*, 491 U.S. 324 (1989), but the *Ass'n des Eleveurs* Court held that "*Healy* ... [is] not applicable to a statute that does not dictate the price of a product" and is thus not applicable to a ban on the sale of cruelly-produced goods. 729 F.3d at 951. And unlike AB 1437, *Healy* involved state regulation of "commercial activity occurring wholly outside the boundary of the State." 491 U.S. at 337. AB 1437 does not regulate anything but the sale of eggs inside of California. And although Plaintiffs contend that AB 1437 *might* force egg producers to convert all of their facilities, Opp. at 30, they never explain why egg producers cannot segregate eggs for different markets – as they already do for cage-free, organic, and other specialty eggs.[6] This case is also distinguishable from *Nat'l Solid Wastes Mgmt. Ass'n v. Meyer*, 63 F.3d 652 (7th Cir. 1995). There, the statute's recycling provisions applied to companies "*whether or not* they dump waste in Wisconsin" – a point the Seventh Circuit called the statute's

---

[5] *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 471-72 (1981) (state statute that banned certain milk containers did not constitute "simple protectionism," but "regulate[d] evenhandedly," because it applied "without regard to whether the milk, the containers, or the sellers are from outside the State").

[6] Moreover, if out-of-state producers choose to change their practices "in order to comply with California law, this does not mean that California is regulating out-of-state conduct." *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 961 (N.D. Cal. 2006).

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 6 -   Case No. 2:14-cv-00341-KJM-KJN
DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

"most significant feature." *Id.* at 655 (emphasis added). But AB 1437 only applies to entities that sell eggs *in California* and only to the eggs that are sold *in California*.

### C.     Plaintiffs Fail to State a Preemption Claim.

Plaintiffs never dispute that a strong presumption against preemption applies. *See generally* Opp. at 34-41. Plaintiffs, however, rely on a preemption clause that relates only to state "egg grading" schemes that are inconsistent with the federal egg grading scheme. 21 U.S.C. § 1052(b). But AB 1437 is not an egg grading scheme, and the EPIA expressly authorizes laws like AB 1437. *Id*. Plaintiffs ignore both arguments.

#### 1.     The EPIA Does Not Expressly Preempt AB 1437.

Plaintiffs' express preemption argument fails for five reasons. *First*, it is contradicted by Plaintiffs' own allegations. Plaintiffs concede that their preemption argument only works "if the Court were to believe that AB 1437 was actually intended to prevent salmonella contamination." Opp. at 34. But Plaintiffs allege and promise that they "will prove that this 'food-safety' rationale is a pretext for protecting California's egg industry." *Id*. Plaintiffs "cannot plead alternative theories that necessarily fail" if they prove their dormant Commerce Clause allegations unless they are "legitimately in doubt about the facts in question." *Total Coverage, Inc.*, 252 Fed. Appx. at 126 (quoting *Galvin*, 86 F.3d at 1461). Plaintiffs disclaim such doubt: "Plaintiffs dispute that AB 1437 has *anything* to do with public health." Opp. at 41 (emphasis added). This Court should therefore not even consider their improperly pled preemption argument.

*Second*, Plaintiffs do not meaningfully dispute that the EPIA expressly authorizes laws like AB 1437. The EPIA authorizes
> any State or local jurisdiction [to] exercise jurisdiction with respect to eggs and egg products for the purpose of preventing the distribution for human food purposes of any such articles which are outside of such a plant [if those products are] in violation of [federal labeling laws] or any State or local law consistent therewith.

21 U.S.C. § 1052(b). AB 1437 fits within this clause: it stops the distribution of non-compliant eggs for human food purposes and is consistent with the federal labeling scheme. Dkt. 27, pp. 13-14. Plaintiffs do not argue otherwise.

*Third*, Plaintiffs misconstrue the EPIA preemption clause they invoke. They assert that AB

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 7 -      Case No. 2:14-cv-00341-KJM-KJN
DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

1437 is "expressly preempted by the salmonella control measures mandated in the [EPIA]." Opp. at 1. But the EPIA does not mandate *Salmonella* control measures. Indeed, "regulation of shell eggs is primarily the responsibility of FDA." 63 Fed Reg. 27502, 27502 (May 19, 1998). And the FDA has made clear that its *Salmonella* shell egg regulations "do not preempt ... more stringent [state] requirements." 74 Fed. Reg. 33030, 33091 (Jul. 9, 2009). Moreover, the preemption clause at issue only bars state egg *grading* standards "in addition to or different than" the official Federal *egg grading* standards. 21 U.S.C. § 1052(b); 21 U.S.C. § 1033(r). Plaintiffs ignore this analysis, asserting that the clause bars all state laws directed at protecting the "quality" or "condition" of shell eggs. Opp. at 36-37. But the EPIA itself defines the referenced "official standards" in the preemption clause as the egg grading standards described in 7 C.F.R. Part 56. 21 U.S.C. § 1033(r). And Plaintiffs never argue – because it is not the case -- that AB 1437 imposes a grading scheme within the scope of the clause.

    *Fourth*, the two out-of-circuit district court cases that Plaintiffs rely on are not on point. In *United Egg Producers v. Davila*, a Puerto Rican district court invalidated local egg regulations under the EPIA – a portion of the ruling that was not appealed. 871 F. Supp. 106, 108-09 (D. P.R. 1994), *affirmed*, 77 F.3d 567 (1st Cir. 1996); *Davila* Appellate Brief, 1995 WL 17829389, n. 1. But the court did not parse the actual language of the preemption clause, and may have been laboring under a misconception similar to that of Plaintiffs here. Regardless, the local regulations in *Davila* effectively established a local egg grading system by regulating the size and freshness of eggs (both through "fresh" standards and a 42-day marketing requirement). 871 F. Supp. at 108-09. Puerto Rico was thus imposing grading standards in addition to the official Federal standards, which regulate "factors which relate to freshness, including shell condition, air cell depth, firmness of the egg white, and yolk definition and freedom from defect." *Id.* at 109. But AB 1437 does not address *anything* regulated by the Federal egg grading standards – it only regulates animal welfare and risk factors for *Salmonella* contamination. Federal egg grading standards are entirely silent on the issues addressed by AB 1437. AB 1437 is thus wholly outside of the scope of the EPIA preemption clause.

    Plaintiffs next cite *Koretoff v. Vilsack* for the proposition that "[a]rguably, salmonella contamination also falls within the USDA's definition of 'quality' set forth in 7 C.F.R. § 57.1."

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 8 -   Case No. 2:14-cv-00341-KJM-KJN

DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

Opp. at 37 (citing 841 F.Supp.2d 1 (D.D.C. 2012), *affirmed* 707 F.3d 394 (D.C. Cir. 2013)). But the *Koretoff* court never found that *Salmonella* contamination fits within the USDA definition of "quality." To the contrary, the *Koretoff* court found that the term "quality," absent a statutory definition, was inherently ambiguous, warranting *Chevron* deference to the agency's definition. 841 F. Supp. 2d at 9-12. Here, however, the EPIA does define the relevant "official standards" of "quality" as the Federal egg grading standards. 21 U.S.C. § 1033(r). And under that definition, *Salmonella* regulation is not a "standard" of "quality."

*Fifth*, Plaintiffs torture the text and purpose of the EPIA. Plaintiffs claim that "Congress intended the EPIA to impose uniform national standards for eggs related to the quality or condition of being adulterated with salmonella." Opp. at 38 (emphasis omitted). But neither the EPIA nor its history says that. And the EPIA does not supply the standards that would be necessary if Congress intended it to displace all state regulation. Plaintiffs cite 21 U.S.C. § 1033 to assert that "Congress defined 'adulterated' to include salmonella contamination." *Id*. But 21 U.S.C. § 1033 never mentions *Salmonella*. And the statute conspicuously *does not* preempt state regulation of adulterated eggs. It regulates the identification of adulterated eggs within federally inspected plants, and preempts any contrary state regulation of the "premises, facilities, and operations" *of those plants*. 21 U.S.C. § 1052(a). Outside of an "official plant," state law is preempted only as to grading standards and certain temperature and labeling requirements. Congress certainly knew how to say that all state regulation of shell egg adulteration is preempted if it wanted to. But Congress chose not to preempt state *Salmonella* laws like AB 1437.

That conclusion is not undermined by the legislative testimony that Plaintiffs cite. They only cite the testimony of the Assistant Secretary of Agriculture to one committee in one house of Congress. Opp. at 38-39.[7] And that testimony confirms that the EPIA preemption clause refers to the "Federal grade standards" for eggs, not the USDA definitions as Plaintiffs contend. Opp. at 38 (quoting H.R. Rep. No. 91-1670 (Dec. 3, 1970)). The EPIA's text reveals an attempt to delicately balance the benefits of a uniform national market with the benefits of state-law assistance in

---

[7] *But see South Carolina v. Regan*, 465 U.S. 367, 377 n.16 (1984) ("Even if Assistant Secretary Surrey [testifying before Congress] viewed the 1966 amendment [one way], there is nothing in the legislative history of that amendment to support the view that Congress shared that belief.").

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 9 -                                             Case No. 2:14-cv-00341-KJM-KJN
DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

achieving the EPIA's goals. 21 U.S.C. § 1052(b). Plaintiffs cannot use snippets of legislative testimony to undermine Congress' purpose of ensuring a role for state law.[8]

### 2. The EPIA Does Not Impliedly Preempt AB 1437.

Plaintiffs' Opposition barely mentions implied preemption, simply citing *Campbell v. Hussey* for the proposition that "[w]here Congress has expressly declared a policy of national uniformity with respect to the standards of quality and condition of an agricultural product ... such legislation preempts the field." Opp. at 40 (citing 368 U.S. 297, 300-02 (1962)). But the *Campbell* Court never mentioned "standards of quality and condition." The Court merely held that Congress preempted the field of tobacco grading by establishing "official standards" for grading and labeling tobacco. *Id.* at 302. Similarly, here, Congress may have preempted the *field of egg grading* by establishing "official standards" for grading eggs. But AB 1437 does not regulate this field: it exclusively regulates the sale of inhumanely and dangerously produced eggs – a field the EPIA does not regulate and allows the states to control. Plaintiffs' implied preemption argument fails.

## III. CONCLUSION

This Court should grant HSUS' motion to dismiss Plaintiffs' complaint for lack of standing or failure to state a claim.

Dated: June 5, 2014

SCHIFF HARDIN LLP

By: */s/ Bruce A. Wagman*
     Bruce A. Wagman

J. SCOTT BALLENGER
LATHAM & WATKINS LLP

PETER A. BRANDT
REBECCA CARY
THE HUMANE SOCIETY OF THE
UNITED STATES

*Counsel for Defendant-Intervenor
The Humane Society of the United States*

SF\321071136.1

---

[8] Plaintiffs' citation to *Nat'l Meat Assn. v. Harris*, 132 S.Ct. 965 (2012) is even more off point. Opp. at 41. The preemption clause in *Nat'l Meat Assn.* only applied to requirements "within the scope" of the Federal Meat Inspection Act that related to slaughterhouse "premises, facilities and operations." 21 U.S.C. § 678. The EPIA has a similarly-worded preemption clause, 21 U.S.C. §1052(a), but it is not the preemption provision upon which Plaintiffs rely. Plaintiffs rely on 21 U.S.C. §1052(b), which only preempts state laws "in addition to or different than" federal egg grading standards – which AB 1437 has nothing to do with.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 10 -   Case No. 2:14-cv-00341-KJM-KJN
DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM