J. ANDREW HIRTH (*pro hac vice*)
Deputy General Counsel
OFFICE OF THE ATTORNEY GENERAL OF MISSOURI
P.O Box 899
Jefferson City, Missouri 65102
(573) 751 – 0818
(573) 751 – 0774 (fax)
andy.hirth@ago.mo.gov
*Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT CALIFORNIA

| | |
|---|---|
| THE STATE OF MISSOURI, ex rel., Chris Koster, Attorney General; THE STATE OF NEBRASKA, ex rel. Jon Bruning, Attorney General; THE STATE OF OKLAHOMA, ex rel. E. Scott Pruitt, Attorney General; THE STATE OF ALABAMA, ex rel. Luther Strange, Attorney General; THE COMMONWEALTH OF KENTUCKY, ex rel. Jack Conway, Attorney General; and TERRY E. BRANSTAD, Governor of the State of Iowa,<br><br>Plaintiffs,<br>v.<br><br>KAMALA D. HARRIS, solely in her official capacity as Attorney General of California; and KAREN ROSS, solely in her official capacity as Secretary of the California Department of Food and Agriculture,<br><br>Defendants,<br><br>THE HUMANE SOCIETY OF THE UNITED STATES and THE ASSOCIATION OF CALIFORNIA EGG FARMERS,<br><br>Defendant-Intervenors. | Case No. 2:14-cv-00341-KJM-KJN<br><br>**PLAINTIFFS' RESPONSE TO AMICUS CURIAE BRIEFS IN SUPPORT OF THE DEFENDANTS' AND DEFENDANT-INTERVENORS' PENDING MOTIONS TO DISMISS/FOR JUDGMENT ON THE PLEADINGS**<br><br>Courtroom: 3, 15th floor<br>Judge: Hon. Kimberly J. Mueller<br>Action Filed: 02/03/2014 |

# INTRODUCTION

Two coalitions of amici curiae[1] have filed briefs in support of Defendants' and Defendant-Intervenors' pending motions to dismiss Plaintiffs' constitutional challenges to AB1437 and §1350. For the most part, the amicus briefs repeat the arguments presented in the pending motions themselves, but three points warrant additional response by Plaintiffs.

## I. California's ostensible food safety rationale for AB1437 and §1350 is not dispositive.

The central arguments advanced in both amicus briefs can be summarized by the following syllogism:

(a) Protecting public health and preventing animal cruelty are legitimate state interests.

(b) AB1437 and §1350 *purport* to protect public health and prevent animal cruelty.

(c) THEREFORE, AB1437 and §1350 serve legitimate state interests.

For example, Amici I argue that Plaintiffs "accusations of protectionism are fantasy" because "[a]ccording to the legislation itself, the purpose of AB1437 is 'to protect California Consumers from the deleterious, health, safety, and welfare effects of the sale and consumption of eggs derived from egg-laying hens that are exposed to significant stress and *may* result in increased exposure to disease pathogens including salmonella.'" Amici I Br. at 9 (quoting Cal. Health & Safety Code § 25995(e)) (emphasis added).

However, courts are not bound by legislative statements of purpose or legislative disclaimers. *Stone v. Graham*, 449 U.S. 39, 41 (1980). "[T]he mere recitation of a benign, compensatory purpose is not an automatic shield which protects against any inquiry into the actual purposes underlying a statutory scheme." *Weinberger v. Wiesenfeld*, 420 U.S. 636, 648 (1975). In determining the legislative purpose of a statute, courts may consider evidence of the

---

[1] In its order granting leave to file amicus curiae briefs, the Court adopted the shorthand "Amici I" in reference to Amici Animal Legal Defense Fund, Compassion Over Killing, Inc., and Farm Sanctuary, Inc.; and "Amici II" in reference to the Center for Food Safety, Consumers Union, Food & Water Watch, Food Animal Concerns Trust, Healthy Food Action, the Institute for Agriculture and Trade Policy, and Public Justice, P.C . *Missouri v. Harris*, 2:14-CV-00341-KJM, 2014 WL 2987284, at *1 (E.D. Cal. July 1, 2014). Plaintiffs use the same shorthand to differentiate the briefs of Amici in this response.

– 2 –   (Case No. 2:14-cv-00341-KJM-KJN)

historical context of the Act, *Epperson v. Arkansas*, 393 U.S. 97, 107-09 (1968), and the specific sequence of events leading up to passage of the Act, *Village of Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 267-68 (1977). Here, Plaintiffs have alleged that the historical context and the specific sequence of events leading up to passage of AB1437 belie the statute's recitation of a benign, public health purpose. Am. Compl. ¶¶ 58-75. Indeed, documents from the law's legislative history, incorporated into the Amended Complaint, expressly criticize the statute's proffered rationale as unsupported by scientific evidence. *See* Am. Compl. Exs. K, L, and M. At this stage of the litigation, Plaintiffs are not required to *prove* that California had an improper purpose. To survive a motion to dismiss or for judgment on the pleadings, we need only have *alleged* facts that, if proved, could support such a finding.

Plaintiffs agree with Amici that California has a legitimate state interest in protecting the health of Californians and preventing cruelty to animals within its borders. But we disagree that either of these interests was the impetus for AB1437 and §1350, or that either interest is advanced by them. Instead, Plaintiffs have alleged that California enacted these provisions to protect California's egg producers from the market effects of Prop 2 by regulating their out-of-state competitors' means of productions. The Court need not—indeed, should not—decide now which of these alleged purposes actually motivated California to pass AB1437 and §1350. To resolve the pending motions, the only question before this Court is whether Plaintiffs' allegations—that AB1437 and §1350 are protectionist measures intended to handicap out-of-state egg producers—would, if proved, offend the Commerce Clause. For the reasons set forth in Plaintiffs' previously filed Memorandum in Opposition [Docket # 54], the answer to that question is Yes. Amici's insistence that AB1437 and §1350 actually promote food safety and animal welfare rather tha, protect California egg farmers demonstrates that *purpose matters*. The Court should permit Plaintiffs the opportunity to prove that purpose at trial.

II.     **California has no legitimate state interest in the welfare of animals beyond its borders.**

In the opening section of their brief, Amici I cite two Supreme Court cases for the proposition that "States have a legitimate state interest in 'protecting public health and

preventing cruelty to animals.'" Amici I Br. at 3 (quoting *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) and *Hughes v. Oklahoma*, 441 U.S. 322, 337 (1979). Based on these cases, Amici I make the sweeping assertion that "[e]ach of those interests outweighs *any* alleged burden on interstate commerce." *Id.* (emphasis added). Amici I never discuss what regulations were at issue in those cases or make any effort to compare them with AB1437 or §1350, likely because the Supreme Court decided they were unconstitutional. *Church of Lukumi Babalu Aye* is a religion freedom case whose only relevance here is to support Plaintiffs' contention that a law's stated purpose is not always its true purpose. 508 U.S. at 542 (holding that ordinances ostensibly premised on animal welfare were actually aimed at suppressing minority religious beliefs). Andy *Hughes* involved a successful dormant Commerce Clause challenge to a state fishing regulation, belying Amici I's blanket claim that the state's legitimate interest in preventing cruelty to animals "outweighs *any* alleged burden on interstate commerce."

Plaintiffs do not dispute that California may use its police power to regulate the housing of farm animals *in California* through measures like Prop 2 even though increasing California egg farmers' production costs may inhibit their ability to export their eggs to other states. But California has no "local" animal welfare interest in regulating the housing of farm animals in Missouri, Iowa, Oklahoma, Nebraska, Alabama, and Kentucky. And even if it did, it is hard to understand how that interest would outweigh the tremendous burden on interstate commerce of banning the sale of more than 4 *billion* out-of-state eggs each year.

None of the cases cited by Amici I warrant dismissal of the case before this Court. In *Pac. Nw. Venison Producers v. Smitch,* the Ninth Circuit upheld a Washington law that banned the "importation, holding, possession, propagation, sale, transfer or release" of "deleterious exotic wildlife." 20 F.3d 1008, 1010 (9th Cir. 1994). There, the district court granted summary judgment—not a motion to dismiss—because even after full discovery, the plaintiffs "failed to offer evidence that could legally support the inference . . . that the state's purported interests were not its actual interests." *Id.* By contrast, Plaintiffs here have already submitted evidence, attached to our Amended Complaint, that could legally support an inference that California's

purported rationale for AB1437 and §1350 is pretextual, and we have not yet had a chance to conduct discovery.

In *Chinatown Neighborhood Ass'n v. Harris*, a district court dismissed a Commerce Clause challenge to California statute that made it "unlawful for any person to possess, sell, offer for sale, trade, or distribute a shark fin." Case No. 12-CV-03759-WHO, 2014 WL 1245047, at *1 (N.D. Cal. Mar. 25, 2014) (quoting Cal. Fish & Game Code §§ 2021 and 2021.5). The shark fin law challenged in that case effected a *complete ban* on the sale or possession of *all* shark fins, regardless of how they were procured. WL 1245047, at *7 ("An import ban that simply effectuates a complete ban on commerce in certain items is not discriminatory, as long as the ban on commerce does not make distinctions based on the origin of the items."); *Pac. Nw. Venison Producers v. Smitch*, 20 F.3d at 1012 (same). By contrast, AB1437 and §1350 do not impose a complete ban on all shell eggs. These regulations prohibit the sale of *certain* shell eggs, which as it happens can only be legally produced outside of California. Moreover, the sales restriction is based not on any inherent quality of the shell eggs themselves but solely on their means of production.

In *Cresenzi Bird Importers, Inc. v. State of N.Y.*, the district court upheld a New York law that provided, "no person shall sell live wild birds ... unless such birds were born and raised in captivity." 658 F. Supp. 1441, 1443 (S.D.N.Y. 1987) (quoting N.Y. Env. Conservation Law § 11–1728). Rejecting the plaintiff bird dealers' claim that the law burdened the interstate market for wild birds, the district court held that "[t]he State has an interest in cleansing its markets of commerce which the Legislature finds to be unethical. Moreover, a state may constitutionally conserve wildlife elsewhere by refusing to accept local complicity in its destruction." *Id.* at 1447. But AB1437 and §1350 have nothing to do with conserving wildlife or refusing to accept local complicity in its destruction, as would laws prohibiting the sale of ivory or rhinoceros horns. Nor is there the least bit of evidence that California enacted AB1437 and §1350 to "cleanse the market of [eggs] which [its] Legislature funds to be unethical." For one thing, the laws apply only to shell eggs. The same egg laid by the same chicken housed in the same conventional cage

in Missouri may still be sold in California under AB1437 and §1350 as long it is cracked open outside of California and poured into a carton of liquid eggs or baked into cakes.

Amici I also cite *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, for the proposition that California has a legitimate state interest in preventing complicity in a practice that it deems cruel to animals. 729 F.3d 937, 952-53 (9th Cir. 2013). As in *Cresenzi* and *Chinatown Neighborhood Ass'n*, the statute at issue in *Ass'n des Eleveurs de Canards* effects a complete ban on the sale of a disfavored product—foie gras—regardless of where it was made. Moreover, that appeal involved a denial of a motion for preliminary injunction, in which the burden was on the plaintiff to raise "serious questions" about the law's constitutionality. Affirming the district court's denial of preliminary relief, the Ninth Circuit held only that, "[a]t this stage in the proceedings, Plaintiffs have not shown that the effect of § 25982 is a complete import and sales ban on foie gras." *Id.* at 949-50. The Ninth Circuit did *not* hold that such a showing was impossible. Nor did it grant the relief that Defendants and their Amici seek from this Court—a dismissal of the entire case with prejudice.

Finally, Amici I make the outrageous suggestion that Plaintiffs' Commerce Clause claim, if successful, will result in the legalization of child pornography. Amici I Br. at 8. Amici's attempt to draw a moral equivalence between the sexual exploitation of children and farming practices used by 95% of American farmers today is as offensive as it is absurd. Their analogy fails for a multitude of reasons, not the least of which is that mere possession of child pornography is itself a crime while the possession of shell eggs—however they are produced—is not.

III. **The Court should disregard Amici II's attempt to bolster the pending motions to dismiss/for judgment on the pleadings with evidence outside the pleadings.**

Amici II appear less interested in arguing the legal issues bearing on Defendants' Motion to Dismiss than in prematurely litigating the scientific merits of Plaintiffs' case. Of the 12-page Argument section of their brief, Amici II devote nine pages to the *factual basis* for California's purported food-safety rationale for enacting AB1437 and §1350. Amici II quote from or cite no fewer than 69 documents in those nine pages—ranging from academic journal articles to screeds

against industrial farming—as *evidence* that banning conventional chicken cages will lower the risk of salmonella infection in consumers. Some of these articles may eventually find their way into the reports or testimony of the parties' experts, but none of the sources cited by Amici II is attached to or even mentioned in the Amended Complaint. As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The Federal Rules expressly provide:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). As of this filing, the Court has not notified Plaintiffs that it intends to convert any of the three pending motions into motions for summary judgment. But even if it were to do so, the scientific literature and exhibits attached to the Amended Complaint contradict Amici's sources and, at the very least, raise a genuine dispute of material fact as the purpose and effect of AB1437 and §1350. The *only* question for the Court to decide at this stage of the litigation is whether *the facts alleged in the Amended Complaint*, if true, would state a claim on which relief can be granted. Additional facts and evidence submitted with the briefs of amici curiae are outside the pleadings and irrelevant to the pending motions.

## CONCLUSION

Even if Amici were correct that California enacted the challenged regulation solely to promote food safety and prevent animal cruelty, their arguments should not result in dismissal. Plaintiffs have further alleged (a) that these putative local benefits are substantially outweighed by the burdens AB1437 and §1350 impose on interstate commerce under *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970); and (b) that California's attempt to regulate salmonella prevention is "different from and in addition to" the Federal Egg Products Inspection Act ("EPIA"), 21 U.S.C. § 1032 et seq., and thus preempted by the EPIA. Amici I reference *Pike* only in passing and make no mention of Plaintiff's preemption argument at all. Amici II don't even cite *Pike*, and

1  their cursory discussion of Plaintiffs' preemption claim essentially concedes that AB1437 and
2  §1350's salmonella prevention measures are "different from and in addition to" those
3  promulgated under the EPIA. In short, Amici provide the Court ample reason to deny
4  Defendants' and Defendant-Intervenors' motions to dismiss or for judgment on the pleadings.

July 15, 2014                                    Respectfully submitted,

CHRIS KOSTER                                     COLEMAN & HOROWITT LLP
Attorney General of Missouri

   /s/ J. Andrew Hirth                           /s/ Sherrie M. Flynn
J. ANDREW HIRTH                                  SHERRIE M. FLYNN
Deputy General Counsel                           499 West Shaw, Suite 116
(pro hac vice)                                   Fresno, California 93704
P.O Box 899                                      Telephone: (559) 248-4820
Jefferson City, Missouri 65102                   Facsimile: (559) 248-4830
(573) 751 – 0818                                 Attorneys for Plaintiffs
(573) 751 – 0774 (fax)
andy.hirth@ago.mo.gov                            TERRY E. BRANSTAD
Attorneys for Plaintiff                          Governor of the State of Iowa
State of Missouri                                THOMAS J. MILLER
                                                 Attorney General of Iowa

JON BRUNING                                          /s/ Jacob J. Larson
Attorney General of Nebraska                     DAVID R. SHERIDAN
                                                 Assistant Attorney General
   /s/ Blake Johnson                             JACOB J. LARSON, AT0009804
BLAKE JOHNSON                                    Assistant Attorney General
Assistant Attorney General                       (pro hac vice)
(pro hac vice)                                   Lucas State Office Building
Nebraska Department of Justice                   321 E. 12th St., Ground Flr.
2115 State Capitol                               Des Moines, Iowa 50319
Lincoln, NE 68509                                Phone: (515) 281-5351
(402) 471 – 1912                                 Fax: (515) 242-6072
blake.johnson@nebraska.gov                       E-mail: jacob.larson@iowa.gov
Attorneys for Plaintiff                          Attorneys for Plaintiff
State of Nebraska                                Terry E. Branstad,
                                                 Governor of the State of Iowa

– 8 –                                            (Case No. 2:14-cv-00341-KJM-KJN)

JACK CONWAY
Attorney General of Kentucky

/s/ Sean J. Riley
Deputy Attorney General
(*pro hac vice*)
700 Capital Avenue, Suite 118
Frankfort, KY 40601
(502) 696-5300
sean.riley@ag.ky.gov
*Attorneys for Plaintiff*
*Commonwealth of Kentucky*

LUTHER STRANGE
Attorney General of Alabama

/s/ Robert D. Tambling
ROBERT D. TAMBLING
Chief, Environmental Section
(*pro hac vice*)
501 Washington Avenue
Montgomery, Alabama 36104
334-242-7445
rtambling@ago.state.al.us
*Attorneys for Plaintiff*
*State of Alabama*

E. Scott Pruitt, OBA#15828
Oklahoma Attorney General

/s/ P. Clayton Eubanks
Tom Bates, OBA# 15672
First Assistant Attorney General
P. Clayton Eubanks, OBA #16648
Deputy Solicitor General
(*pro hac vice*)
313 NE 21st Street
Oklahoma City, OK 73105
(405) 522-8992
clayton.eubanks@oag.ok.gov
*Attorneys for Plaintiff*
*State of Oklahoma*

CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2014, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**PLAINTIFFS' RESPONSE TO AMICUS CURIAE BRIEFS IN SUPPORT OF THE DEFENDANTS' AND DEFENDANT-INTERVENORS' PENDING MOTIONS TO DISMISS/FOR JUDGMENT ON THE PLEADINGS**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ J. Andrew Hirth
J. ANDREW HIRTH