Diane L. McGimsey (SBN 234953)
mcgimseyd@sullcrom.com
Edward E. Johnson (SBN 241065)
johnsonee@sullcrom.com
Janet Y. Galeria (SBN 294416)
galeriaj@sullcrom.com
Jonathon D. Townsend (SBN 293918)
townsendj@sullcrom.com
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
Telephone:     (310) 712-6600
Facsimile:      (310) 712-8800

*Attorneys for Amici Curiae Animal Legal Defense Fund, Compassion Over Killing, Inc. and Farm Sanctuary, Inc.*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE STATE OF MISSOURI, ex rel., Chris Koster, Attorney General; THE STATE OF NEBRASKA, ex rel. Jon Bruning, Attorney General; THE STATE OF OKLAHOMA, ex rel. E. Scott Pruitt, Attorney General; THE STATE OF ALABAMA, ex rel. Luther Strange, Attorney General; THE COMMONWEALTH OF KENTUCKY, ex rel. Jack Conway, Attorney General; and TERRY E. BRANSTAD, Governor of the State of Iowa,<br><br>                    Plaintiffs,<br><br>          v.<br><br>KAMALA D. HARRIS, solely in her official capacity as Attorney General of California; KAREN ROSS, solely in her official capacity as Secretary of the California Department of Food and Agriculture,<br><br>                    Defendants. | Case No. 2:14-cv-00341-KJM-KJN<br><br>***AMICI'S* REPLY IN SUPPORT OF *AMICUS CURIAE* BRIEFS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Date:     August 11, 2014<br>Time:    2:00 p.m.<br>Judge:   Kimberly J. Mueller |

Pursuant to the Court's July 8, 2014 Order, *Amici curiae*[1] collectively submit this reply in further support of their *amici* briefs and in response to Plaintiffs' Response to *Amicus Curiae* Briefs in Support of the Defendants' and Defendant-Intervenors' Pending Motions to Dismiss/For Judgment on the Pleadings ("Response," ECF Dkt. No. 75).

## ARGUMENT

### I.   *AMICI I*'S ARGUMENT

*Amici I's* brief established that AB 1437 furthers legitimate and important state interests that outweigh any burden on interstate commerce that Plaintiffs have adequately alleged,[2] and that Plaintiffs failed to plead any facts that would permit the Court to draw a reasonable inference that the California Legislature's stated purposes for passing AB 1437 were pretextual. Plaintiffs' Response misstates the standard of review, ignores *Amici I*'s discussion of the legislative history, and fails to distinguish the cases cited in *Amici I*'s brief, which unequivocally hold that States have a legitimate interest in preventing complicity in practices that they deem cruel to animals.

*First*, Plaintiffs misstate the standard of review on a motion to dismiss by claiming that "the only question before this Court is whether Plaintiffs' allegations—that AB1437 and §1350 are protectionist measures intended to handicap out-of-state egg producers—would, if proved, offend the Commerce Clause." (Response at 3.) Under well-settled Supreme

---

[1] Because Plaintiffs filed a consolidated brief responding to both *Amicus* briefs, for the sake of simplicity *Amici* are likewise filing a consolidated brief. *Amici* follow both the Court and Plaintiffs in referring to Animal Legal Defense Fund, Compassion Over Killing, Inc., and Farm Sanctuary, Inc. as "*Amici I*" and Center for Food Safety, Consumers Union, Food & Water Watch, Food Animal Concerns Trust, Healthy Food Action, the Institute for Agriculture and Trade Policy, and Public Justice P.C. as "*Amici II*."

[2] Plaintiffs mischaracterize *Amici I*'s argument as a "blanket claim that the state's legitimate interest in preventing cruelty to animals 'outweighs *any* alleged burden on interstate commerce.'" (Response at 4.) (emphasis in original). *Amici I* need not demonstrate that California's legitimate state interests outweigh any conceivable burden on interstate commerce, but, instead, that Plaintiffs have not adequately alleged any burden that clearly outweighs California's interests in this case. *See Pike* v. *Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) ("Where [a] statute regulates even-handedly to effectuate a legitimate local public interest, and its effect on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is *clearly* excessive in relation to the putative local benefits.") (emphasis added).

-1-

Court precedent, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp* v. *Twombly*, 550 U.S. 544, 570 (2007); *Starr* v. *Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief . . . ."). Thus, it is not enough to make "naked assertion[s] devoid of further factual enhancement." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Rather, the complaint must plead "factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plaintiffs have not met this burden. Plaintiffs have failed to allege any facts (as opposed to speculation or conclusions) that would permit this Court to draw a reasonable inference that the California Legislature's stated purposes for passing AB 1437 were pretextual and that California actually intended to discriminate against out-of-state egg producers. As explained in the *Amici I* brief and further below, Plaintiffs' complaint falls far short of "nudg[ing] [Plaintiffs'] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

*Second*, Plaintiffs fail to address *Amici I*'s discussion of the legislative history of AB 1437. (Response at 1-2.) It is well-established that "[t]he party challenging a regulation bears the burden of establishing that a challenged statute has a discriminatory purpose or effect under the Commerce Clause." *Rocky Mountain Farmers Union* v. *Corey*, 730 F.3d 1070, 1097 (9th Cir. 2013). Where, as here, a party relies on circumstantial evidence to claim the legislature's stated objectives are pretextual, the party must overcome a high bar. *Rocky Mountain*, 730 F.3d at 1097-98 (holding that a court must "assume that the objectives articulated by the legislature are the actual purposes of the statute, unless an examination of the circumstances *forces* [it] to conclude that they could not have been a goal of the legislation") (emphasis added); *Alliance of Auto Mfrs.* v. *Gwadosky*, 430 F.3d 30, 39 (1st Cir. 2005).

In their opening brief, *Amici I* explained why each piece of legislative history cited in the Complaint was consistent with the Legislature's stated objectives to prevent animal cruelty and protect public health. (Dkt. No. 72, at 9-13.) Plaintiffs' Response does not even attempt to rebut these points. Despite Plaintiffs' claims to the contrary, merely alleging "that AB 1437 and §1350 are protectionist measures intended to handicap out-of-state egg producers" is

-2-

not equivalent to alleging specific facts that, if true, would "force [this] court to conclude" that protecting health and preventing animal cruelty could not have been the goal of AB 1437. *Rocky Mountain*, 730 F.3d at 1097-98. Plaintiffs' failure to point to specific factual allegations that meet this burden confirms that they made no such allegations.

*Third,* Plaintiffs' attempt to distinguish the cases cited in *Amici I*'s brief fails. Under Ninth Circuit law, California has a legitimate interest in preventing complicity in a practice that California views as unethical, even if the affected animals live outside of California's borders. *See Ass'n des Eleveurs de Canards et d'Oies du Quebec* v. *Harris*, 729 F.3d 937, 952 (9th Cir. 2013) ("[T]he sales ban in California may discourage the consumption of products produced by force feeding birds and prevent complicity in a practice that it deemed cruel to animals"); *Chinatown Neighborhood Ass'n* v. *Harris*, Case No. 12-cv-03759-WHO, 2014 WL 1245047, at *9 (N.D. Cal. Mar. 25, 2014) (finding that California has a legitimate interest in regulating in-state consumption of shark fins that came from sharks killed outside of California). Plaintiffs contend that *Ass'n des Eleveurs* and *Chinatown Neighborhood Ass'n* are distinguishable because those cases involved a "complete ban" on shark fins and fois gras, while AB 1437 does not impose "a complete ban on all shell eggs." (Response at 5-6.) But nothing in *Ass'n des Eleveurs* or *Chinatown Neighborhood Ass'n* suggests that their holdings were so limited, and Plaintiffs' distinction is without any legal significance. Not all eggs are produced by hens confined in battery cages, and California is not required to ban the sale of *all* shell eggs in order to protect California consumers from being complicit in a particular practice deemed cruel.

Plaintiffs also attempt to distinguish *Cresenzi Bird Importers, Inc.* v. *State of N.Y.*, arguing that *Cresenzi* concerned protecting wild birds and the California Legislature could not have been motivated by an interest in protecting animals because "the laws apply only to shell eggs" and not eggs that are "cracked open outside of California and poured into a carton of liquid eggs or baked into cakes." (Response at 5-6.) Again, Plaintiffs miss the point. *Cresenzi* unequivocally holds that a State may have a legitimate interest in out-of-state animals. *Cresenzi Bird Importers, Inc.* v. *State of New York*, 658 F. Supp. 1441, 1447 (S.D.N.Y. 1987). Here, California has a legitimate interest in protecting hens whose eggs are sold in California, and it is

-3-

1  not Constitutionally required to adopt only the broadest measure possible to further that interest.
2  States may reasonably decide to take incremental steps to protect animals. *McDonald* v. *Bd. of*
3  *Election Comm'rs of Chicago*, 394 U.S. 802, 808 (1969) ("[A] legislature traditionally has been
4  allowed to take reform one step at a time, addressing itself to the phase of the problem which
5  seems most acute to the legislative mind; and a legislature need not run the risk of losing an
6  entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover
7  every evil that might conceivably have been attacked.") (internal quotation marks and citations
8  omitted).[3]

## II.     *AMICI II*'S ARGUMENT

With regard to *Amici II's* brief, Plaintiffs overstate the role of amici and distort the Court's Order allowing amici to participate at this stage.  Amici are not parties to litigation—rather, the "classic" role of an amicus is fulfilled by "assisting in a case of general public interest, supplementing the efforts of counsel, and drawing the court's attention to law that escaped consideration." *Miller-Wohl Co.* v. *Comm'r of Labor & Industry*, 694 F.2d 203, 204 (9th Cir. 1982).  This includes helping to explain complex or technical scientific issues. *See Nat'l Wildlife Fed'n* v. *Nat'l Marine Fisheries Serv.*, CV 01-640-RE, 2005 U.S. Dist. LEXIS 16657, at *14-*15 (D. Or. Apr. 8, 2005).  Hence, courts "normally" allow an amicus to participate "when the amicus has unique *information* or perspective that can help the court *beyond* the help that the lawyers for the parties are able to provide." *Community Ass'n for Restoration of the Env't* v. *Deruyter Brothers Dairy*, 54 F. Supp. 2d 974, 975 (E.D. Wash. 1999) (allowing amici to participate, expressly to provide assistance on both factual and legal issues) (emphasis added); *see also Westlands Water Dist.* v. *United States*, CV-F-93-5327-OWW, 1994 U.S. Dist. LEXIS 6276, at *9 (E.D. Cal. Apr. 28, 1994) (allowing amicus to provide "background").

---

[3]  Plaintiffs' hyperbolic claim that *Amici I* "attempt[ed] to draw a moral equivalence between the sexual exploitation of children and farming practices used by 95% of American farmers today" is incorrect and unnecessarily inflammatory.  (Response at 6.) *Amici I*'s brief such drew no equivalence—it simply made the point, which Plaintiffs cannot dispute, that a State may enact legislation to further its ethical judgment, even though the legislation may have the incidental effect of imposing that ethical judgment outside of the State.

-4-

1   Here, the Court granted *Amici II's* motion on the basis that their brief would
2  "provide[] *information* . . . about the association between foodborne illness and the use of battery
3  cages, as well as the critical role that AB 1437 fulfills in protecting consumers from unnecessary
4  and preventable risks of contracting foodborne illness."  (Order, ECF No. 70 (emphasis added)
5  (internal quotations omitted).)  The Court's express purpose in allowing *Amici II* to participate
6  was to "*supplement*[] the parties' efforts by drawing the court's attention to the issue of whether
7  the challenged provisions further a legitimate state interest," in order to "enable the court to
8  make a well-informed decision on the motions to dismiss and on the legal sufficiency of
9  plaintiffs' first amended complaint."  *Id*. at *12 (emphasis added).  *Amici II* could not perform
10  this role in a vacuum, necessitating reference to scientific information.

11   Further, Plaintiffs' own exhibits reveal the existence of studies on the
12  relationships between flock size, stocking density, and *Salmonella*.  *See* Ex. I to First Amended
13  Complaint, ECF No. 13-9.  In fact, several studies that *Amici II* cite are cited in Plaintiffs' Ex. I.
14  Two of *Amici II's* cited studies are named in AB 1437 itself.  Just as "the court has the ability to
15  glean any useful information from [an amicus] filing without being swayed by any pure
16  advocacy," *Pickup* v. *Brown*, No. CIV-S-12-2497 KJM-EFB, 2012 U.S. Dist. LEXIS 166682, at
17  *5 (E.D. Cal. Nov. 21, 2012), it has the ability to use *Amici II's* brief to provide background and
18  context and inform its judgment, without relying on facts and evidence outside the pleadings.

19   Despite Plaintiffs' suggestion to the contrary, *Amici II* have not exceeded the
20  traditional, limited role that this Court has allowed or would normally allow at this stage.

21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

## **CONCLUSION**

For all the foregoing reasons, *Amici* respectfully submit that Plaintiffs' First Amended Complaint should be dismissed.

Dated:  July 22, 2014.                    Respectfully submitted,

/s/ Diane L. McGimsey
Diane L. McGimsey (SBN 234953)
Edward E. Johnson (SBN 241065)
Janet Y. Galeria (SBN 294416)
Jonathon D. Townsend (SBN 293918)
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
Telephone:    (310) 712-6600
Facsimile:    (310) 712-8800

*Attorneys for Amici Curiae Animal Legal Defense Fund, Compassion Over Killing, Inc. and Farm Sanctuary, Inc.*

Paige M. Tomaselli (SBN 237737)
ptomaselli@centerforfoodsafety.org
CENTER FOR FOOD SAFETY
303 Sacramento St., 2nd Floor
San Francisco, California 94111
Telephone:    (415) 826-2770
Facsimile:    (415) 826-0507

*Attorneys for Amici Curiae Center for Food Safety, Consumers Union, Food & Water Watch, Food Animal Concerns Trust, Healthy Food Action, Institute for Agriculture and Trade Policy, and Public Justice*